ROGER W. CLARK, ESQ. (#108982)
ROBERT D. GOLDBERG, ESQ. (#137356)
CLARK, GOLDBERG & MADRUGA
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Tel: (310)478-0077 Fax: (310) 478-0099

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATER, INC., a California corporation | **CASE NUMBER** |
| PLAINTIFF(S) | **CV08-00218 JSL (SSx)** |
| v. | |
| EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC., and DOES 1-10, inclusive, | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __ROBERT D. GOLDBERG, ESQ.__, whose address is __11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **JAN 14 2008** _____

By: *Natalie Longoria*
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

ORIGINAL

ROGER W. CLARK, ESQ. (#108982)   Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)   Email: rgoldberg@cgold.cc
**CLARK, GOLDBERG & MADRUGA**
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Telephone: (310) 478-0077   Facsimile: (310) 478-0099

Attorneys for Plaintiff, **WATER, INC.**

FILED
2008 JAN 14  PM 12: 10
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CAL.
LOS ANGELES

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC. and DOES 1 to 10, inclusive, <br><br> Defendant(s) | CASE NO.: <br> **CV08- 00218 JSL(SSx)** <br> **COMPLAINT OF WATER, INC. FOR:** <br> **1) VIOLATION OF SHERMAN ANTI-TRUST ACT, 15 U.S.C. §1** <br> **2) VIOLATION OF CLAYTON ACT** <br> **3) VIOLATION OF THE CAL. FRANCHISE RELATIONS ACT** <br> **4) VIOLATION OF CARTWRIGHT ACT** <br> **5) VIOLATION OF THE UNFAIR PRACTICES ACT** <br> **6) VIOLATION OF UNFAIR COMPETITION LAW** <br> **7) BREACH OF CONTRACT** <br> **8) DECLARATORY RELIEF** <br> **9) INTENTIONAL INTERFERENCE WITH CONTRACT** <br> **10) NEGLIGENT INTERFERENCE WITH CONTRACT** <br> **11) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br> **12) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br> **13) INJUNCTIVE RELIEF** <br> **14) ESTOPPEL** <br> **[JURY TRIAL REQUESTED]** |

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 Fax

1

Plaintiff, WATER, INC, a California corporation (hereinafter referred to as "WATER"), hereby brings this Complaint against EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC. (sometimes referred to herein as "DEFENDANTS"), and DOES 1 to 10, and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action brought under the Sherman Anti-Trust Act, 15 U.S.C. §1, Clayton Act, 15 U.S.C. §14, and state claims for monetary damages and equitable relief under supplemental jurisdiction. This Court has federal question jurisdiction over the subject matter of this action pursuant to Title 18 U.S.C. §1964 and 28 U.S.C. Section 1331. Jurisdiction also exists under § 1332 based upon complete diversity of citizenship as WATER is a citizen of California. WATER is a corporation organized and existing under the laws of the California with its principal place of business in the State of California. WATER is a distributor of water filtration devices and water delivery systems located within the State of California and sells its products to consumers in California, and in its EVERPURE distributorship territory in the Western United States. WATER conducts its business in the State of California, generates revenues from operations in the State of California, and supervises its employees in the State of California. Defendants EVERPURE, LLC and EVERPURE, INC. are citizens of Illinois. Defendant PENTAIR is a corporation organized and existing under the laws of

2

Minnesota, with its principal place of business located in Golden Valley, Minnesota. Defendant EVERPURE, LLC maintains its corporate headquarters at Hanover Park, Illinois, and PENTAIR, INC. maintains its corporate headquarters at Golden Valley, Minnesota. The amount in controversy exceeds $75,000.00 (Seventy-Five Thousand Dollars) exclusive of interest and costs. This court accordingly has jurisdiction of this action.

2.　　Venue in this District is proper under Title 18 U.S.C. §1965 as WATER is headquartered this District. Venue in this District is also appropriate under Title 28, U.S.C., Section 1391(a) since a substantial part of the events giving rise to this action occurred within this District, including the sale of Everpure products and water delivery systems.

**THE PARTIES**

3.　　Plaintiff WATER is a corporation incorporated under the laws of the State of California, and which at all relevant times has had its principal place of business at 1044 E. Del Almo Blvd, Carson, California 90746.

4.　　Defendant EVERPURE, LLC is a limited liability company which maintains its principal place of business at 1040 Muirfield Drive, Hanover Park, Illinois

3

80133. Upon information and belief, EVERPURE, LLC is the success-in-interest of EVERPURE, INC. Hereinafter, both companies shall be collectively referred to as "EVERPURE"

5.      WATER is informed and believes, and on that basis alleges, that EVERPURE and PENTAIR are alter egos of each other. Hereinafter, both companies shall collectively be referred to as "EVERPURE" or "Defendants". WATER is further is informed and believes that there exists a unity of interest between and among these defendants so that it would be unjust to recognize any legal distinction between them or differentiate one from another. PENTAIR has so dominated and controlled EVERPURE that the wrongdoing of each should be imputed to the other.

6.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when same is ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that plaintiff's injuries as herein alleged are proximately caused by such defendants.

//

4

7.    Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each of the defendants was the agent and/or employee and/or joint venturer and/or partner of each of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of such agency/employment/joint venture/partnership and with the permission and consent of his/her co-cross-defendants. Moreover, plaintiff alleges that defendants EVERPURE, PENTAIR and DOES 1 to 10, conspired together regarding the unlawful restraint of trade and competition as more specifically alleged herein. By entering into an agreement, express or implied, regarding the unlawful restraint of trade and competition, each defendant is liable for the acts of his co-conspirators and the resulting damages to plaintiff. Moreover, DOES 1 to 10, aided and abetted Defendants regarding the unlawful restraint of trade and competition by knowingly by knowingly providing substantial assistance as more specifically alleged herein.

**FACTUAL BACKGROUND**

8.    Beginning in 1979, WATER began serving as a distributor of EVERPURE water filtration products in California and other western states under a verbal "hand shake" agreement. Under the verbal agreement as reaffirmed from time to time by the conduct of the parties, no restrictions were placed on WATER'S right to sell other products not associated with EVERPURE, including without limitation WATER'S own product line. The marks are sometimes collectively referred to as "Ever Brands" herein.

9.    Since 1980, WATER has marketed in commerce products designed, among other things, to provide instant hot or chilled water to the faucet through the use of small tanks placed under the sink.  These products include water systems that brew, soften and dispense water through a dedicated faucet.    WATER used the marks EVERHOT, EVERCOLD and EVERBREW, among others, to market these products in commerce.

10.    WATER first placed its products into commerce as follows: EVERHOT in 1980, EVERCOLD in September 1989, and EVERBREW in August of 1996.  WATER has sold its EVERHOT, EVERCOLD and EVERBREW products continuously since they were introduced into the marketplace.  WATER is the owner of these registered trademarks, or is authorized to use these trademarks in commerce.

11.    WATER entered into the "Select Master Distributor Agreement, Residential Products" dated July 1, 1996 with Everpure, Inc. (hereinafter "the Distributor Agreement").  Under the Distributor Agreement, WATER was designated as the western regional wholesale distributor of Everpure, LLC, a company that manufactures water treatment products under the trade name "Everpure."    Pursuant to the Distributor Agreement, WATER was appointed as the exclusive distributor of Everpure products in seven Western States.  The Distributor Agreement requires that WATER purchase all of its water treatment products from EVERPURE, and not engage in any business that competes or is substantially similar to products manufactured by EVERPURE.

6

12.    Prior to entering into the Distributor Agreement with EVERPURE, defendant EVERPURE, INC. knew and was informed that WATER was using the trademarks EVERHOT, EVERCOLD and EVERBREW in commerce. At all relevant times alleged herein Defendants, and each of them, encouraged WATER to sell the EVERPURE water filtration device as part of a product package that included these WATER products in order to increase the sales of Defendants' EVERPURE products, and expressly and implicitly approved of the sale of the EVERPURE water filtration device as part of this product package offered by WATER.

13.    After entering into the Distributor Agreement, and in reliance upon the approval, authorization and consent of Defendants, and each of them, to sell the EVERPURE water filtration device as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, WATER commenced selling and has continuously sold to the present date the EVERPURE water filtration device as part of a package with its EVERHOT, EVERCOLD and EVERBREW products.

14.    After the completion of the initial five year term on February 10, 2001, the Distributor Agreement automatically renewed for two additional five year terms. The most recent renewal of the Distributor Agreement occurred February 10, 2006 pursuant to Section 2 of the agreement.

//

7

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

15.     After execution of the Distributor Agreement, and two successive five year renewal periods, WATER continued to sell its EVERHOT, EVERCOLD and EVERBREW products within its EVERPURE distributorship territory with the tacit knowledge and consent of EVERPURE.

16.     With the knowledge and consent of EVERPURE and PENTAIR, EVERPURE water filters have been sold as part of a package complimenting the EVERHOT, EVERCOLD and EVERBREW products.

17.     In order to coordinate the sale of EVERPURE filtration products, WATER shared with EVERPURE and PENTAIR its proprietary marketing plan for its EVERHOT, EVERCOLD and EVERBREW products.     WATER disclosed its confidential marketing plan to EVERPURE solely to assist other EVERPURE residential distributors marketing of EVERPURE water filtration products.

18.     Upon information and belief, EVERPURE and PENTAIR have misappropriated WATER'S marketing plan to distribute new products that it has begun to sell under the EVERPURE mark in direct competition with WATER'S "Ever Brand" products. These products, which compete directly with EVERHOT and EVERCOLD are not manufactured by EVERPURE, but have been recently added to EVERPURE'S product line.

8

19.    After PENTAIR, INC. acquired a controlling interest in EVERPURE in or around 2003-2004, it began to expand the products available for sale by its Master Distributors.  Among these products, were products that performed the same or similar function as WATER'S EVERHOT and EVERCOLD products.  None of these new products offered by EVERPURE were manufactured by EVERPURE.  Moreover, notwithstanding the addition of these products to its product line, PENTAIR and EVERPURE allowed the Distributor Agreement to renew in February of 2006 for an additional five year term, and implicitly and expressly authorized WATER to continue to sell EVERPURE water filtration devices as part of a package with EVERHOT, EVERCOLD, and EVERBREW.

20.    On October 31, 2007, EVERPURE and PENTAIR as a pretext to prevent WATER from selling EVERHOT, EVERCOLD and EVERBREW, and instead mandating that it sell competing products under the mark EVERPURE, falsely claimed that WATER had committed multiple breaches of the Distributor Agreement.

21.    At the time EVERPURE and PENTAIR claimed that WATER had committed breaches of the Distributor Agreement, they knew such allegations were false.

22.    With the intention to coerce WATER, EVERPURE and PENTAIR notified WATER that the Distributor Agreement would terminate as of January 1, 2008, and to

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 Fax

return all confidential materials, and cease selling EVERPURE products if it did not

agree to cease all sales of its EVERHOT, EVERCOLD and EVERBREW products.

23.    EVERPURE had no right to unilaterally terminate the Distributor

Agreement in this manner, but solely employed the threatened termination to coerce and

compel WATER to cease its sale of its products in the marketplace.

24.    EVERPURE and PENTAIR attempted to compel and coerce WATER to

abandon its sales of its EVERHOT, EVERCOLD and EVERBREW products in

exchange for payments worth only a small fraction of the value of these products in the

marketplace, and in this way attempted to unlawfully suppress competition and vastly

increase its sales volume and market share.

25.    When WATER requested EVERURE and PENTAIR to produce facts to

support its allegations of breach of the Distributorship Agreement, Defendants failed and

refused to do so, but continued to insist that WATER abandon all sales of its products not

marketed under the EVERPURE mark.

26.    As a direct and proximate result of the unlawful conduct of defendants, and

each of them, WATER'S ability to sell EVERPURE products to its customers will be

impaired at the loss of its business, reputation, goodwill and revenues.

10

27.     WATER is informed, and believes, and thereon alleges that each of the acts hereinabove committed by Defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of WATER as defined by California Civil Code Section 3294. WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing Defendants, and deterring future conduct by them as hereinbefore alleged, in a sum according to proof at time of trial.

## FIRST CLAIM FOR RELIEF

### (For Violations of the Sherman Anti-Trust Act, 15 U.S.C. §1 and §2

### against all Defendants)

28.     Plaintiff repeats, re-pleads and re-alleges the allegations contained in each and every preceding paragraph as though set forth in full.

29.     Defendants conduct, and each of them, threaten illegal constraints on trade in violation of Section 1 of the 15 U.S.C. §1. Section 1 provides, *inter alia*:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

11

**(Count One – Illegal Tying Agreement)**

30.     Defendants scheme, as alleged herein, constitutes an illegal tying arrangement wherein Defendants threatened to withhold WATER'S use of the EVERPURE trade name and sale of EVERPURE filtration products to WATER, if WATER did not agree to cease the sale of EVERHOT, EVERCOLD and EVERBREW products and commence distributing defendants' competing products instead.

31.     Defendants' scheme threatens to restrain competition in the marketplace, and thereby effect a "not insubstantial" amount of commerce by this arrangement.

**(Count Two – Illegal Horizontal Territorial Restraint On Trade)**

32.     Moreover, Defendants scheme, as alleged herein, constitutes an illegal horizontal territorial restraint on trade. Defendants demand that WATER cease selling its products in its distributorship territory where it has previously sold product since 1981, and offer only the newly listed EVERPURE products instead would impose an unreasonable restraint on trade, reduce competition in the marketplace through the use of coercive tactics.

//

//

//

//

33.    By coercing WATER to cease offering its competing products that have traditionally been sold at lower cost to retailers than defendants' products, Defendants have also engaged or threatened to engage in illegal price fixing in the market place in violation of the Sherman Anti-Trust Act.

**(Count Three – Refusal to Deal)**

34.    Defendants, and each of them, have engaged in a concerted refused to deal and sell EVERPURE filtration products to WATER in order to eliminate competition for products which compete directly with WATER'S Ever Brand products.

**(Count Four – Monopolize the Market)**

35.    Defendants, through their conduct, acts and omissions as further alleged herein have attempted to monopolize the market for water delivery systems sold by WATER through coercive tactics.

36.    Defendants have employed threats and intimidation to reduce competition and obtain an unfair advantage in commerce through monopolization of the market.

//

//

//

//

13

**(Remedies)**

37.     Pursuant to 15 U.S.C. §26, WATER seeks to enjoin and restrain Defendants, and each of them,  from engaging in the illegal constraints on trade in violation of federal law; including without limitation, 1)  withholding for sale EVERPURE products under the Distributor Agreement; 2) terminating the Distributor Agreement; 3) any interference with WATER'S sale of EVERPURE products to retailers and customers;  and 4) any interference with WATER'S sale of its Ever Brand products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

38.     WATER also seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. Section 15.

39.     To the extent Defendants refuse to sell EVERPURE products to WATER, or otherwise prohibit or interefere with WATERS' ability to supply EVERPURE products, or its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

//

//

## SECOND CLAIM FOR RELIEF

## (For Violation of Clayton Act 15 U.S.C. § 14 against all Defendants)

40.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

41.     15 U.S.C. Section 14 of the Clayton Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities whether patented or unpatented, for use, consumption, or resale within the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies or other commodities of a competitor or competitors of the lessor

//

//

//

15

or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

42.    Defendants, and each of them, are in violation of the Clayton Act, 15 U.S.C §14 by refusing to sell EVERPURE filtration products to WATER unless WATER agrees to cease selling competing product in the marketplace, and instead sell only EVERPURE water delivery products.  Defendant has employed coercive tactics in order to obtain competitive advantages and restrain trade.

43.    Defendants conduct threatens a constraint on trade and amounts to price fixing, in order to obtain competitive advantage for its own products.

44.    Defendants, and each of them, have tied the sales of EVERPURE filtration products to WATER and the right of WATER to use the EVERPURE marks conditional upon WATER'S ceasing its sales of its proprietary products which compete in the marketplace with new products recently listed by EVERPURE.

//

//

//

16

**(Remedies)**

45.    Pursuant to 15 U.S.C. §26, WATER seeks to enjoin and restrain Defendants, and each of them, from engaging in the illegal constraints on trade in violation of federal law; including without limitation, 1) withholding for sale EVERPURE products under the Distributor Agreement; 2) terminating the Distributor Agreement; 3) any interference with WATER'S sale of EVERPURE products to retailers and customers; and 4) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers. WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

46.    WATER also seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. Section 15.

47.    To the extent Defendants refuse to sell EVERPURE products to WATER, or otherwise prohibit or interefere with WATERS' ability to supply EVERPURE products, or its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

//

//

### THIRD CLAIM FOR RELIEF

### (For Violation of the California Franchise Relations Act,

### California Business & Professions Code, Section 2000 against

### all Defendants )

48.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.


49.    Defendants conduct, as alleged more specifically herein, constitutes violation of Section 20020 by failing to provide good cause for termination of the Distributor Agreement, and proper notice of termination

### (Remedies)

50.    WATER seeks to enjoin and restrain Defendants, and each of them, from: 1) withholding for sale EVERPURE products under the Distributor Agreement; 2) terminating the Distributor Agreement; 3) any interference with WATER'S sale of EVERPURE products to retailers and customers; and 4) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.

//

//

//

18

51.    To the extent Defendants refuse to sell EVERPURE products to WATER, or otherwise prohibit or interefere with WATER'S ability to supply EVERPURE products, or its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

## FOURTH CLAIM FOR RELIEF

**(For Violation of the Cartwright Act, Cal. Business & Professions Code §16700**

**Against All Defendants)**

52.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

53.    Defendants refusal to deal or continue to sell EVERPURE filtration products to WATER as long as WATER continues to offer for sale its own proprietary water delivery systems, EVERHOT, EVERCOLD, and EVERBREW, is unlawful and discriminatory resulting in the restraint of trade in violation of the Cartwright Act.

54.    WATER also seeks treble damages under Section 16750 of the Cartwright Act.

//

//

19

**(Remedies)**

55.    Pursuant to Section 16750, WATER seeks to enjoin and restrain Defendants, and each of them, from: 1) withholding for sale EVERPURE products under the Distributor Agreement; 2) terminating the Distributor Agreement; 3) any interference with WATER'S sale of EVERPURE products to retailers and customers;  and 4) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.

56.    To the extent Defendants refuse to sell EVERPURE products to WATER, or otherwise prohibit or interefere with WATER'S ability to supply EVERPURE products, or its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities

57.    WATER is entitled to prejudgment interest under Section 16761 for any and all damages proximately caused by defendants, as alleged herein.

//

//

//

//

//

## FIFTH CLAIM FOR RELIEF

### (For Violation of the Unfair Practices Act, Cal. Business & Professions Code

### Section 17000 Against All Defendants)

58.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

59.    Defendants refusal to deal and continue to sell EVERPURE filtration products to WATER as long as WATER continues to offer for sale its own proprietary water delivery systems, EVERHOT, EVERCOLD, and EVERBREW, is unlawful and discriminatory resulting in the restraint of trade in violation of the UPA.

60.    Defendants, through its conduct, have attempted to monopolize the market for water delivery systems sold by WATER through its coercive tactics in further violation of the UPA.

61.    Defendants, and each of them, have employed threats and intimidation to reduce competition and obtain an unfair advantage in commerce in violation of Section 17046.

62.    WATER also seeks treble damages under Section 17082 of the Cartwright Act, and the recovery of its attorney's fees and costs.

21

<strong>(Remedies)</strong>

63.    Pursuant to Section Business & Professions Code Sections 17070 and 17078, WATER seeks to enjoin and restrain Defendants, and each of them,  from: 1) withholding for sale EVERPURE products under the Distributor Agreement; 2) terminating the Distributor Agreement; 3) any interference with WATER'S sale of EVERPURE products to retailers and customers;   and 4) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.

64.    To the extent Defendants refuse to sell EVERPURE products to WATER, or otherwise prohibit or interefere with WATER'S ability to supply EVERPURE products, or its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

<strong><u>SIXTH CLAIM FOR RELIEF</u></strong>

<strong>(For Violation of the Unfair Competition Act, Cal. Business & Professions Code Section 17200 against All Defendants)</strong>

65.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

66.    Defendants, and each of them, have engaged in a pattern and practice of unlawful, fraudulent, unfair and deceptive business activities, as further alleged herein. Defendants, and each of them, have violated the anti-trust statutes alleged herein, as well as their legal duties owed to WATER, as further alleged herein.  Moreover, without WATER'S consent and authorization, Defendants, and each of them, have misused and otherwise misappropriated WATER'S confidential and proprietary marketing plan for its own use, and sale of products directly competing with WATER'S line of products EVERHOT, EVERCOLD, and EVERBREW.

67.    As a direct and proximate result of these unlawful, fraudulent, unfair and deceitful business activities, as alleged herein, WATER is threatened with imminent harm, and likely will suffer damages as alleged herein.  WATER seeks restitution and disgorgement on behalf of itself and all others similarly situated all revenues earned by Defendants acquired by such unfair competition as described herein.

68.    WATER is informed, and believes, and thereon alleges that the conduct of Defendants alleged herein is continuous and ongoing, and that the public in general faces harm and injury as a result of these unlawful, fraudulent, unfair and deceptive practices.

69.    On behalf of itself and others similarly situated, WATER seeks to enjoin and restrain Defendants from engaging in the unfair and fraudulent business practices

23

alleged herein pursuant to California Business & Professions Code §17203; and obtain all other remedies available under law to prevent Defendants' unlawful, fraudulent, unfair and deceptive business practices alleged herein.

70.    On behalf of itself and others similarly situated, WATER seeks restitution and disgorgement of all money paid to Defendants related to violations of the Unfair Competition Act.

## SEVENTH CLAIM FOR RELIEF

### (For Breach of Contract against All Defendants)

71.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

72.    As more particularly alleged herein, Plaintiff and Everpure, Inc. entered into the Distributor Agreement on July 1, 1996 and the term was renewed for successive five year periods. A copy of the Distributor Agreement is attached hereto as Exhibit "1". On or about October 31, 2007, Defendants notified WATER that the Distributor Agreement would terminate on January 1, 2008, based upon alleged breaches of contract. Plaintiff, however, did not commit any of the alleged breaches, and Defendants had no basis to terminate the Distributor Agreement early, before the end of the current five year term.

//

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

73.     Pursuant to Schedule B to the Distributor Agreement, Defendants were required to give WATER at least one year notice of non-renewal prior to the next five year renewal period.  At all relevant times, Defendants have failed to give WATER the sufficient notice prior to terminating the Distributor Agreement.

74.     WATER has performed all covenants, conditions, and obligations imposed upon it pursuant to the contract, or has otherwise been excused from performance under the contract.

75.     As a direct and proximate result of Defendants' breaches of contract as alleged herein, WATER is subject to imminent harm and shall sustain damages as more particularly set forth herein, and in an amount to be proven at trial.

76.     Pursuant to Section 7.2(b), WATER is entitled to recover from Defendants its attorney's fees and costs for EVERURE'S breach of its obligations under the Distributor Agreement given the reciprocity of such a provision.

## EIGHTH CLAIM FOR RELIEF

### (For Declaratory Relief against All Defendants)

77.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

78.    An actual controversy has arisen between the parties to the Distributor Agreement in that plaintiff contends that the Distributor Agreement remains in full force and effect, that it has complied with the terms and conditions of the Distributor Agreement and that the Distributor Agreement has not been properly terminated by Defendants.  On the other hand, Defendants have given plaintiff written notice claiming that plaintiff has breached the Distributor Agreement, which plaintiff denies, and claiming improperly that they have terminated the Distributor Agreement as of January 1, 2008,  before the expiration of the full contract term, and without one year's notice prior to the end of the renewal term.

79.    Defendants dispute Plaintiff's claim that the Distributor Agreement remains in force and effect, and deny that Plaintiff has any right to continue to purchase EVERPURE products from Defendants, or make use of the EVERPURE marks. Defendants insist that the Distributor Agreement terminated on January 1, 2008.

80.    WATER desires a judicial determination of the rights and liabilities of WATER and Defendants under the Distributor Agreement, and a declaration that it has not breached the Distributor Agreement, as alleged by Defendants, and that Defendants' purported termination of the Distributor Agreement is without any basis, or force and effect, and that Defendants are in breach of contract by purporting to give the baseless

notice of termination, and refusing to recognize the contract; and that WATER is entitled to full performance under the terms of the Distributor Agreement.

## NINTH CLAIM FOR RELIEF

### (For Intentional Interference with Contractual Relations against All Defendants)

81.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

82.     At all relevant times mentioned herein, Defendants, and each of them, owed Plaintiff a duty to act reasonably and prudently and to refrain from injuring Plaintiff or its reputation, or interfering with its contractual relationships or prospective contractual relationships.  Upon information and belief, Defendants knew and were made aware that WATER had contractual agreements with retailers, consumers and wholesalers for EVERPURE products sold under the Distributor Agreement.  In fact, the very purpose of the Distributor Agreement, as known to Defendants, was for WATER to enter into contracts with retails, wholesalers and consumers for the sale of EVERPURE products.

83.     Defendants, and each of them, have intentionally withheld the sale of EVERPURE water filtration products under the terms of the Distributor Agreement.  At all relevant times, Defendants knew, or had reason to know, that premature termination

27

of the Distributor Agreement would prevent WATER from marketing its products, and further result in the termination of WATER'S contractual relationships with its business partners and customers.

84.   Upon information and belief, Defendants have notified or intend to notify third parties that it has terminated the Distributor Agreement, and as a result of this notification,   WATER'S contractual relationships with its retailers, wholesalers and consumers have been impaired or terminated.

85.   As a direct and proximate cause of defendants acts and omissions as alleged herein, WATER has suffered the loss of sales from its retailers, wholesalers and consumers, and damage to its business reputation and goodwill in an amount to be proven at time of trial.

86.   Upon information and belief, Defendants, and each of them, have terminated the Distributor Agreement maliciously, and upon information and belief have maliciously notified third parties and business contacts of WATER regarding the alleged termination. WATER is informed, and believes, and thereon alleges that each of the acts hereinabove alleged to have been committed by Defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of WATER as defined by California Civil Code Section 3294.   WATER is

28

therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing Defendants, and deterring future conduct by them as hereinbefore alleged, in a sum according to proof at time of trial.

## TENTH CLAIM FOR RELIEF

### (For Negligent Interference with Contractual Relations against All Defendants)

87.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

88.     At all relevant times mentioned herein, Defendants, and each of them, owed Plaintiff a duty to act reasonably and prudently and to refrain from injuring Plaintiff or its reputation, or interfering with its contractual relationships or prospective contractual relationships.   Upon information and belief, Defendants knew or should have that WATER had contractual agreements with retailers, consumers and wholesalers for EVERPURE products sold under the Distributor Agreement.  In fact, the very purpose of the Distributor Agreement, as known to Defendants, was for WATER to enter into contracts with retails, wholesalers and consumers for the sale of EVERPURE products.

89.     Defendants, and each of them, have withheld the sale of EVERPURE water filtration products under the terms of the Distributor Agreement.  At all relevant times, Defendants knew, or had reason to know, that premature termination of the Distributor

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

1   Agreement would prevent WATER from marketing its products, and further result in the

2   termination of WATER'S contractual relationships with its business partners and

3

4   customers.

5

6       90.    Upon information and belief, Defendants negligently and without

7

8   justification or good cause, notified third parties that it has terminated the Distributor

9   Agreement, and as a result of this notification, WATER'S contractual relationships with

10   its retailers, wholesalers and consumers have been impaired or terminated.

11

12

13       91.    As a direct and proximate cause of the negligence of defendants as alleged

14

15   herein, WATER has suffered the loss of sales from its retailers, wholesalers and

16   consumers, and damage to its business reputation and goodwill in an amount to be

17   proven at time of trial.

18

19

20   **ELEVENTH CLAIM FOR RELIEF**

21   **(For Negligent Interference with Prospective Economic Advantage against All**

22

23   **Defendants)**

24       92.    Plaintiff repeats, repleads and realleges the allegations contained in each and

25   every preceding paragraph as though set forth in full.

26

27   //

28   //

30

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

93.    Defendants, and each of them, knew or should have known of the economic relationships between WATER and its retailers, wholesalers and consumers, for EVERPURE water filtration products. Defendants knew or should have known that WATER could not make sales of the EVERPURE filtration products to its retailers, wholesalers and consumers after Defendants terminated the Distributor Agreement, and upon information and belief, negligently and without due cause or justification notified third parties, including WATER'S retailers, wholesalers and consumers, that it had terminated the Distributor Agreement, and that WATER was no longer an authorized distributor of EVERPURE products.

94.    As a direct and proximate result of the negligence of Defendants, WATER has been denied the benefits of its economic relationships developed for the sale of its EVERPURE products, and WATER has suffered damages in an amount to be determined prior to or at the time of trial.

## TWELFTH CLAIM FOR RELIEF

### (For Intentional Interference with Prospective Economic Advantage against All Defendants)

95.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

31

96.    Defendants, and each of them, knew or should have known of the economic relationships between WATER and its retailers, wholesalers and consumers, for EVERPURE water filtration products. Defendants knew or should have known that WATER could not make sales of the EVERPURE filtration products to its retailers, wholesalers and consumers after Defendants terminated the Distributor Agreement, and upon information and belief, intentionally and willfully notified third parties, including WATER'S retailers, wholesalers and consumers, that it had terminated the Distributor Agreement, and that WATER was no longer an authorized distributor of EVERPURE products, when it knew that it had no valid basis to terminate the Distributor Agreement.

97.    As a direct and proximate result of the intentional conduct of Defendants, WATER has been denied the benefits of its economic relationships developed for the sale of its EVERPURE products, and WATER has suffered damages in an amount to be determined prior to or at the time of trial.

98.    Upon information and belief, Defendants, and each of them, have terminated the Distributor Agreement maliciously, and upon information and belief have maliciously notified third parties and business contacts of WATER regarding the alleged termination. WATER is informed, and believes, and thereon alleges that each of the acts hereinabove alleged to have been committed by Defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of

32

the rights of CHARTER as defined by California <u>Civil Code</u> Section 3294. WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing Defendants, and deterring future conduct by them as hereinbefore alleged, in a sum according to proof at time of trial.

## THIRTEENTH CLAIM FOR RELIEF

### (For Preliminary and Permanent Injunction against All Defendants)

99.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

100.    WATER changed its position to its detriment in reliance upon the conduct and representations of Defendants that WATER sell the EVERPURE water filtration device as part of a package of the EVERHOT, EVERCOLD and EVERBREW products sold by WATER. Based upon Defendants' conduct and representations, WATER reasonably believed that it had full authorization to continue to sell the EVERPURE filtration device as part of a package of its products as it had done before and after it entered into the Distributor Agreement, and the successive renewals of the Distributor Agreement.

//

//

//

101. Therefore, Defendants must be enjoined and estopped from suddenly changing course and prohibiting WATER from selling the EVERPURE filtration device as part of a package of products as it has done for over two dozen years.

102. Should WATER be forced to immediately cease the use of the EVERPURE filtration device as part of a package of its EVERHOT, EVERCOLD and EVERBREW products, it would be unable to deliver its products to its customers for which orders are currently pending, and are anticipated.

103. Furthermore, pursuant to the terms of the Distributor Agreement, WATER is authorized to sell the EVERPURE filtration system, as it has done for the past 11 years. Defendants' termination of the Distributor Agreement is a violation and breach of the agreement, and threatens WATER with imminent harm.

104. In reliance on its right to sell the EVERPURE water filtration device as part of a package of WATER'S products, WATER established markets for the products, developed marketing plans, and expended substantial resources all based upon its ability to offer the package of products in the marketplace.

//

//

//

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

105.    The California Unfair Competition Law, California, Business & Professions Code, Section 17200 *et seq.,* forbids unlawful, unfair or fraudulent business practices. The conduct of Defendants is unlawful in that said conduct violates the terms of the Distributor Agreement, and federal and state anti-trust laws, as alleged herein.

106.    The conduct of Defendants is unfair in that Defendants led WATER to believe, all to the detriment of WATER, that it had full authority and consent to sell the EVERPURE water filtration device as part of a package of products offered by WATER. WATER requests an injunction under the authority of Section 17203 of the California, Business & Professions Code, and the federal and state anti-trust statutes.

107.    Unless Defendants are restrained and enjoined by this court, WATER will not only suffer loss of immediate revenue, but will also suffer irreparable injury to its reputation and good will and therefore cease its ability to do business.

108.    WATER faces the imminent threat of irreparable injury for which it cannot be adequately compensated in damages. WATER requests that a preliminary and permanent injunction issue to prevent such injury, and shall enjoin defendants and their employs, agents, representatives, subsidiary and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from 1) ceasing the sale of EVERPURE water filtration products to WATER under the terms of the Distributor

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

Distributor Agreement; 2) terminating the Distributor Agreement under the early termination provisions based upon WATER'S sale of competing products such as EVERHOT, EVERCOLD or EVERBREW and 3) advising third parties that WATER is no longer authorized to sell EVERPURE products, or is no longer an EVERPURE Master Distributor, or that WATER'S Master Distributorship has been terminated.

109.    WATER has no adequate remedy at law to prevent the irreparable harm described above, which is not readily ascertainable by any legal measure of damages.

110.    The issuance of an injunction would not be adverse to the public interest because it would preserve competition in the market place. In fact, the public interest overwhelmingly supports the issuance of this injunction.

111.    Moreover, a preliminary and permanent injunction would prevent further derogation of WATER'S rights, and the threatened interference with WATER'S contractual relations, and the loss of prospective business advantage with customers.

## FOURTEENTH CLAIM FOR RELIEF

### (For Estoppel against All Defendants)

112.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

113.  As alleged herein, WATER and Defendants are parties to the Distributor Agreement.

114.  As alleged herein, for years before and after the parties executed the Distributor Agreement and after its successive renewals, Defendants approved, ratified, authorized consented to, and acquiesced in WATER'S sale of EVERPURE filtration devices as part of WATER'S package of EVERHOT, EVERCOLD and EVERBREW products.

115.  On October 31, 2007, Defendants wrote to WATER and claimed that WATER had breached the Distributor Agreement by marketing its EVERCOLD, EVERHOT and EVERBREW products, and offering these products as part of a package with the EVERPURE water filtration device.

116.  WATER changed its position to its detriment in reliance upon the conduct and representations of Defendants that WATER was authorized and permitted to sell the EVERPURE water filtration device as part of a package of the EVERHOT, EVERCOLD and EVERBREW products offered by WATER.  Based upon Defendants' conduct and representations, WATER reasonably believed that it had full authorization to continue to

//

//

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

sell the EVERPURE filtration device as part of a package of its products as it had done before and after it entered into the Distributor Agreement, and the successive renewals of the Distributor Agreement.

117.   Therefore, Defendants must be estopped from asserting any breach of the Distributor Agreement by WATER based upon WATER'S sale of its EVERHOT, EVERCOLD, and EVERBREW products, and WATER'S sale of these products in a package with its Ever Brand products.  Defendants must not be permitted to suddenly change course all to the detriment and prejudice of WATER.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff WATER, INC. requests the entry of judgment against EVERPURE, LLC, EVERPURE, INC. and PENTAIR, INC and DOES 1 TO 10 as follows :

## AS TO THE FIRST CLAIM FOR RELIEF

1.   For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.   Treble Damages

3.   For attorney's fees and costs

4.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

## AS TO THE SECOND CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      Treble Damages

3.      For attorney's fees and costs

4.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

## AS TO THE THIRD CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      For attorney's fees and costs

3.      For an order enjoining defendants, and each of them, from illegally terminating the Distributor Agreement.

## AS TO THE FOURTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

39

2.      For punitive and exemplary damages.

3.      For attorney's fees and costs

4.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

5.      For treble damages.

## AS TO THE FIFTH CLAIM FOR RELIEF

1.      For general, special and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      Attorney's fees and costs

3.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

4.      For treble damages.

## AS TO THE SIXTH CLAIM FOR RELIEF

1.      For restitution of all amounts paid; together with pre-judgment interest thereon at the legal rate.

2.      For an order enjoining defendants, and each of them, from engaging in the unlawful, fraudulent, unfair and deceptive business activities alleged,

//

//

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

**AS TO THE SEVENTH CLAIM FOR RELIEF**

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.    For Attorney's fees and costs

**AS TO THE EIGHTH CLAIM FOR RELIEF**

1.    For a judicial declaration that: 1) WATER not breached the Distributor Agreement, as alleged by Defendants; 2) that Defendants' purported termination of the Distributor Agreement is without any basis, or force and effect; 3) that Defendants are in breach of contract by purporting to give the baseless notice of termination, and refusing to recognize the contract; and that 4) WATER is entitled to full performance under the terms of the Distributor Agreement.

2.    For Attorney's fees and costs of suit.

**AS TO THE NINTH CLAIM FOR RELIEF**

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.    For exemplary and punitive damages.

//

//

//

41

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## AS TO THE TENTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

## AS TO THE ELEVENTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

## AS TO THE TWELFTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      For exemplary and punitive damages.

## AS TO THE THIRTEENTH CLAIM FOR RELIEF

1.      For a preliminary and permanent injunction enjoining defendants and their employees, agents, representatives, subsidiaries and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from 1) ceasing the sale of EVERPURE water filtration products to WATER under the terms of the Distributor Agreement; 2) terminating the Distributor Agreement under the early termination provisions based upon WATER'S sale of competing products such as EVERHOT, EVERCOLD or EVERBREW and 3) advising third parties that WATER is

42

no longer authorized to sell EVERPURE products, or is no longer an EVERPURE Master Distributor, or that WATER'S Master Distributorship has been terminated.

    2.      For attorney's fees.

## AS TO THE FOURTEENTH CLAIM FOR RELIEF

    1.      For an order determining that Defendants, and each of them, are estopped to claim breach of contract as a basis to terminate the Distributor Agreement based upon WATER'S sale of EVERHOT, EVERPURE, and EVERBREW separately or as part of a package with EVERPURE water filtration products.

    2.      For attorney's fees.

## AS TO ALL CAUSES OF ACTION

    1.      Costs of suit;

    2.      Such other relief as the Court may deem proper.

    3.      For any and all other and further relief as this Court deems just and proper.

DATED: January \|\|, 2008        CLARK, GOLDBERG & MADRUGA

By: _____
      ROGER W. CLARK
      ROBERT D. GOLDBERG
      Attorneys for Plaintiff
      WATER, INC.

F:\WORK\07-1782\COMPLAINT_005.DOC

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

43

## **REQUEST FOR TRIAL BY JURY**

Plaintiff WATER, INC. hereby requests trial by jury in the above caption action.

DATED: January ___, 2008                    CLARK, GOLDBERG & MADRUGA

By: _____
     ROGER W. CLARK
     ROBERT D. GOLDBERG
     Attorneys for Plaintiff
     WATER, INC.

F:\WORK\07-1782\COMPLAINT_005.DOC

CLARK, GOLDBERG & MADRUGA
· ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

44

# Exhibit "1"



Everpure, Inc.
660 Blackhawk Drive
Westmont, Illinois 60559-0005
708 654 4000
FAX 708 654 1115

## SELECT MASTER DISTRIBUTOR AGREEMENT
### <u>RESIDENTIAL PRODUCTS</u>

**MASTER DISTRIBUTOR:**       Water, Inc.

**ADDRESS:**       321 Coral Circle

El Segundo, CA   90245-4681

**FORM OF ORGANIZATION:**       A California Corporation

**EFFECTIVE DATE:**       July 1, 1996

## PREMISES

A. Everpure, Inc. ("Everpure") manufactures and sells water treatment systems for residential consumer use primarily through a nationwide system of specially selected master distributors ("Select Master Distributor(s)"). It appoints Select Master Distributors based on their capability to perform the functional role of inventorying product and selection, training and management of distribution outlets to sell to residential consumers and provide after-sale service.

B. Everpure authorizes its Select Master Distributors to cover defined geographic territories and, generally, to purchase all their requirements for water treatment products from Everpure, for the purpose of assuring effective competition against the products of other manufacturers and to protect the performance and reputation of its products.

C. Master Distributor desires to obtain a continuing source of supply of Everpure, water treatment products at a functional discount consistent with its distribution responsibilities and to enter into this Select Master Distributor Agreement, Residential Products ("Agreement").

## TERMS OF AGREEMENT

## Section 1  Appointment.

1.1   Authorization/Products.   By this Agreement, Everpure appoints Master Distributor to the benefits and responsibilities of a Select Master Distributor for the Everpure, brand consumer products identified on Schedule A ("Products").

1.2   Authorized Territory/Channels of Distribution.  Master Distributor is authorized to promote, resell, otherwise distribute and arrange service for Products only in the geographic territory ("Territory") and only to the channels of distribution identified on Schedule A for sale to residential consumers in the Territory.

1.3   Exclusive Appointment.   Except for programs described in Section 4.3 (Multiple Territory Programs), Everpure will not appoint any other Select Master Distributor to be responsible for the promotion, resale or servicing of Products through authorized channels of distribution in the Territory.

1.4   Reservation of Rights.   Everpure reserves all rights not expressly granted by this Agreement.

## Section 2  Term.

This Agreement will begin on the Effective Date and continue for the initial term identified on Schedule B. Thereafter, it will renew automatically for successive renewal terms also identified on Schedule B, unless either party gives the other prior notice of non-renewal within the period set forth on Schedule B.

## Section 3  Order Administration.

3.1   Prices, Terms and Conditions of Sale.  Prices applicable to purchases under this Agreement will be as set forth in Everpure's Select Master Distributor price list, as it is in effect from time to time.  Everpure may not increase prices except upon 30 days prior written notice.  Order acceptance, payment requirements and other terms and conditions of sale are set forth on Schedule C.  If purchase orders submitted by Master Distributor contain conflicting terms, this Agreement will supersede and control.

3.2   Quarterly Orders.   At least 15 days prior to the start of each three month period designated by Everpure, Master Distributor will place a firm order for its expected requirements of Products to be shipped during such period.

3.3   Forecasts.   Distributor will submit to Everpure a nonbinding forecast of its expected twelve month Product purchase requirements at the time it places its quarterly order.

3.4   Inventory.  Master Distributor will maintain an inventory of Products sufficient to fill the

2

expected demand for immediate and regular purchases from potential residential consumers in its Territory. Everpure may establish minimum inventory levels under Section 5.1(d) (Minimum Purchase Requirements).

#### Section 4  Certain Obligations of Everpure.

**4.1  Sale of Everpure Products.**  Everpure will fill Master Distributor's requirements for Products to at least forecasted levels, in accordance with the terms of this Agreement, as long as Master Distributor is in full compliance with its obligations under this Agreement.

**4.2  Multiple Territory/National Account Programs.**  From time to time, Everpure will review and assist in developing opportunities for its Select Master Distributors to assist on a local basis with the promotion, order fulfillment or service of multiple territory accounts. Master Distributor acknowledges that from time to time Everpure may sell products through other channels, different brands or multiple territory or national accounts who distribute Everpure products into the Territory separately from participation by Master Distributor.

**4.3  Compliance with Laws Regulating Product Performance.**  Everpure will take full responsibility for complying with any applicable federal or state product registration, testing or certification requirements for Products that it makes available for distribution in the Territory. Upon request, Everpure will provide Master Distributor with documentation of such compliance.

**4.4  Manufacturer Warranty.**  Everpure will warrant Products as described in its standard residential consumer warranty.

**4.5  Distribution Policies.**  From time to time, Everpure will issue policies ("Distribution Policies") covering the details of the ongoing relationship established by this Agreement, among which are requirements relating to minimum order and shipment quantities, warranty administration, trademark identification and usage, credit and collections, insurance and merchandising programs.

#### Section 5  Certain Obligations of Master Distributor.

**5.1  Sales and Service Efforts.**

**(a)  Development of Channels of Distribution.**  Master Distributor will exercise vigorous and diligent efforts to establish and train distribution outlets to sell Products in its authorized channels of distribution to residential consumers in its Territory.

**(b)  Distribution Controls.**  Master Distributor will take full responsibility, subject to consultation with Everpure, for control of distribution outlets that it appoints, for consistency with this Agreement.

**(c)  Post-sale Service.**  Master Distributor will take full responsibility for arranging any required installation, warranty labor and preventive and remedial maintenance of Products purchased under this Agreement.

**(d)  Minimum Purchase Requirements.**  In consultation with Master Distributor, Everpure will establish "Minimum Purchase Requirements" for purchases and inventory based on its estimate of the anticipated demand for Products in the Territory.  While Minimum Purchase Requirements are not purchase commitments, they are notice to Master Distributor of the minimum performance Everpure expects. Failure to meet Minimum Purchase Requirements may serve as cause for early termination under Section 9 (Termination).

**(e)  Reports.**  From time to time, Everpure may require Master Distributor to provide written reports of its sales and service efforts within its Territory.

**5.2  Purchase Requirements.**  Master Distributor will purchase from Everpure all its requirements for water treatment products that it distributes in the Territory, except as otherwise approved in writing by Everpure.

**5.3  Restriction on Conflicting Activities.**  During the term of this Agreement, Master

Distributor will keep free from interests in or activities of enterprises whose business conflicts or interferes with the supply or service of Everpure products in the United States. Master Distributor will not have any interest in or engage in any business, directly or indirectly, selling water filtration products that are competitive or substantially similar to products manufactured by Everpure or in servicing such competitive or similar products, except for interest of less than 5% in a publicly traded company. Master Distributor will require that its employees, partners (if a partnership), and officers, directors and principal shareholders (if a corporation) also observe obligations at least as restrictive as the restrictions of this Section 5.3.

5.4  Insurance. Master Distributor will maintain comprehensive general, product and contractual liability insurance policies with responsible carriers for at least the policy limits defined in the applicable Everpure Distribution Policy. Master Distributor will arrange to name Everpure as an additional insured.

5.5  Compliance with Laws/Good Business Practices. Master Distributor will operate in full compliance with all applicable laws and conform its promotion, sale and service practices to the highest standards of honesty, integrity and fair dealing. Everpure reserves the right to approve all promotion practices, advertising or literature, and to require Master Distributor to comply with any applicable industry or trade association review guidelines or approval process relating to advertising or promotional materials.

5.6  Consumer Affairs/Legal Proceedings. Master Distributor will take full responsibility for residential consumer and distribution outlet inquiries and complaints in its Territory, and will notify Everpure promptly of any threatened or commenced legal proceeding or government investigation relating to Products or to Master Distributor or Everpure.

5.7  Confidentiality. Master Distributor will not use or disclose any information identified by Everpure as confidential, except in accordance

with the prior written directions of Everpure, and will use best efforts to prevent any unauthorized use or disclosure by any of its channels of distribution. Master Distributor's obligations under this paragraph will survive any termination of this Agreement.

5.8  Distribution Policies. Master Distributor will comply with the Distribution Policies issued by Everpure under Section 4.6 (Distribution Policies). However, it will not be obligated to any change in Distribution Policies except upon 30 days prior written notice and an opportunity during that period to terminate this Agreement under Section 9.1 (Early Termination).

## Section 6  Intellectual Property.

Master Distributor acknowledges the validity and ownership by Everpure of the registered trademarks "Everpure" and the wavy "E" design, and will respect the rights of Everpure and its related companies in their other trademarks, trade names and other designations, patents, copyrights and trade secrets. Master Distributor will use such intellectual property only as authorized by Everpure. Master Distributor will not use separate trademarks or other trade dress on Products, except as authorized by Everpure.

## Section 7  Relationship of the Parties/Indemnification.

7.1  Independent Contractor/Acknowledgements. Master Distributor is an independent contractor and agrees to identify itself as independently owned and operated in all dealings with the public. It is not authorized to act or create liability on behalf of Everpure. Each party acknowledges that it is not relying on any representations of the other and that its business success is dependent largely on its own business abilities and efforts; that this Agreement is not intended to create a franchise or business opportunity venture regulated under any federal or state law; that the business conducted by each party may evolve and change over time; and that its obligations under

4

this Agreement are essential and reasonable requirements to achieve the intention of the parties.

7.2 Indemnification.

(a) By Everpure. Everpure will defend, indemnify and hold Master Distributor and its agents, officers and directors harmless from all loss and liability arising from legal proceedings instituted against them alleging that Master Distributors sale or distribution of Products in accordance with this Agreement infringes any third party's patent or trademark rights or copyright, provided Master Distributor promptly notifies and tenders the defense to Everpure.

(b) By Master Distributor. Master Distributor will indemnify and hold Everpure and its related companies, agents, officers and directors harmless from all loss, liability and costs (including attorney's fees) arising from any breach by Master Distributor of its obligations under this Agreement, or from improper application,installation or servicing of Products by its channels of distribution.

7.3 Limitation of Liability. Except as required by Section 7.2 (Indemnification), neither party will be liable to the other for incidental, consequential, special, or punitive damages of any nature. In no event will either party be liable for compensation, reimbursement or other damages for loss of prospective profits or anticipated sales or service revenue resulting from termination of this Agreement.

Section 8   Assignment, Change in Control/-Management.

Since this Agreement requires personal services from Master Distributor, it may not be assigned in any manner by operation of law or otherwise by Master Distributor without the prior written consent of Everpure. Master Distributor will notify Everpure in advance in the event of any sale of its business or change in control or general management. Everpure may assign this Agreement and be released from liability to Master Distributor upon notice, provided the as-

signee is financially responsible and capable of performing under the Agreement and expressly assumes Everpure's obligations.

Section 9   Termination.

9.1 Early Termination.

(a) By Master Distributor. During its term, this Agreement may be terminated by Master Distributor if it notifies Everpure within 30 days of receiving notice of a Distribution Policy change that it does not accept, provided it has consulted with Everpure and Everpure insists on the change.

(b) By Everpure. During its term, this Agreement may be terminated by Everpure upon notice if Master Distributor:

(1) Fails to make any payment when due after notice from Everpure and 10 days opportunity to cure;

(2) Engages in conduct that is likely to deceive the public as to the source, nature or quality of products or services offered by Master Distributor or is likely to impair the name, trademark or reputation of Everpure.

(3) Makes a transfer not in compliance with Section 8 (Assignment) or undergoes a change in ownership, capitalization or general management that Everpure reasonably believes impairs its interest under this Agreement; or

(4) Fails to meet Minimum Purchase Requirements;

(c) By Either Party. During its term, this Agreement may be terminated by either party upon notice if the other party:

(1) Has become insolvent because it is unable to pay its debts as they become due in the ordinary course of business or because its current liabilities exceed its current assets, or if proceedings are initiated by or against such party under any bankruptcy or insolvency laws or for reorganization, receivership, dissolution,

liquidation or if it makes an assignment for the benefit of creditors; or

(2) Fails to cure any breach of this Agreement not more particularly described in this Section 9.1, after notice from the other party and 30 days opportunity to cure.

9.2 Return of Confidential Information/Trade Information. Upon any termination or expiration of this Agreement, Master Distributor will return to Everpure all confidential materials it has received from Everpure. Except as approved by Everpure in writing, it will also no longer represent itself as an Everpure distributor, discontinuing the use of any material using Everpure trade marks or other trade identification and notifying publishers of telephone directories where it has listed or advertized the Everpure name or marks.

### Section 10 General Provisions.

10.1    Notices.    Notices pertaining to this Agreement must be in writing and given in a manner to confirm acceptance. Notices must and be delivered in person or by U.S. mail, courier service or facsimile transmission, to the President of the other party at the address set forth in this Agreement. When this Agreement requires Master Distributor to notify Everpure, a copy must be sent to Everpure's Law Department at the same address.

10.2    Excusable Delays.    Except for Master Distributor's obligation to pay Everpure, neither party will be liable for delays or non-performance caused by fire, flood, inclement weather, explosion, accident, energy shortage, labor disputes, war, riots, sabotage, terrorism or government law or regulation, or for other causes beyond its control, but the delaying party will exercise all reasonable efforts to cure and minimize the extent of the delay.

10.3    Entire Agreement.    This Agreement includes all referenced Schedules and Distribution Policies and constitutes the entire agreement between the parties. Any oral or other written understandings relating to the subject matter of

this Agreement are no longer effective and are superseded by this Agreement.

10.4 Changes in Distribution Policies/Amendments. Everpure may revise Distribution Policies upon 30 days prior notice to Master Distributor. Otherwise, this Agreement may not be amended, modified or supplemented except in writing and signed by an authorized officer of each party.

10.5 No Third Party Beneficiary. Nothing in this Agreement confers any rights or remedies on any person or legal entity not a party to this Agreement.

10.6 Waiver. The observation or performance of any condition or obligation imposed upon a party under this Agreement may be waived only in writing by an authorized officer and only to the extent stated in such writing.

10.7 Severability. If any term or provision of this Agreement is declared invalid by a court of competent jurisdiction in a final ruling from which no appeal is taken, it will be severable if the operation of the remaining terms and provisions are unimpaired or if the court replaces the invalid term or provision by such valid term or provision as comes closest to the intention of the parties.

10.8 Successors and Assignees. This Agreement is binding upon the respective, permitted successors in interest, assignees, executors, administrators and heirs of the parties.

10.9 Governing Law, Consent to Jurisdiction, Cumulative Remedies. This Agreement is made in and will be construed under the laws of the State of Illinois, where the executive offices of Everpure are located.    Since Everpure and Master Distributor have a significant interest in consistent interpretation of this Agreement, and Everpure expects to have Select Master Distributors throughout the United States, Everpure and Master Distributor irrevocably submit, and waive any objection either may have, to personal jurisdiction or venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located

in Illinois. All remedies provided in this Agreement are cumulative and, except for forum selection under this Section, are in addition to any remedy otherwise available under applicable federal, state or local law.

**ACKNOWLEDGED AND AGREED:**

EVERPURE

By: _____

Printed Name: _____

Title: _____

Date of Signature: _____7/8/96_____

MASTER DISTRIBUTOR

By: _____

Printed Name: ____MAJOR AVIGNON____

Title: ____PRESIDENT____

Date of Signature: ____7-1-96____

7

3108854385  WATER INC./PPD                          905 P09/13 SEP 07 '99  10:26

## SCHEDULE A

### TO

### SELECT MASTER DISTRIBUTOR AGREEMENT
### RESIDENTIAL PRODUCTS

**MASTER DISTRIBUTOR:**     **Water, Inc.**

**EFFECTIVE DATE
OF AGREEMENT:**     **July 1, 1996**

**Products/Prices:**        Identified in Everpure's currently effective Master Price List - Residential
                            Markets

**Authorized Channels of Distribution:**

Plumbing Wholesalers
Independent Plumbers*
Independent Kitchen Remodelers*
Builder Suppliers
Builders
Independent Appliance Stores*
Independent Hardware Stores*
Water Treatment Dealers
Independent Bottled Water Purveyors*

* This channel identifies single outlets, individual outlets of larger chains, and regional chains
whose outlets are entirely within the Territory.

**Schedule Date:**        **February 10, 1996**

## SCHEDULE B

### to

## SELECT MASTER DISTRIBUTOR AGREEMENT
### RESIDENTIAL PRODUCTS

MASTER DISTRIBUTOR:        **Water, Inc.**

EFFECTIVE DATE
OF AGREEMENT:              **July 1, 1996**

**Territory:**  Entire states of Arizona, California, Colorado, Montana, Nevada, New Mexico, Utah, and Wyoming.

All of Idaho except for these 9 counties:

| | |
|---|---|
| Benewah | Latah |
| Bonner | Lewis |
| Boundary | Nez Perce |
| Clearwater | Shoshone |
| Kootenai | |

The following 3 counties of Texas:   El Paso
                                     Hudspeth
                                     Culberson

**Initial Term:  5 Years**

**Renewal Term:  5 Years**

**Notice Period for Non-Renewal:  1 Year**

Schedule Date:              **February 10, 1996**

## SCHEDULE C

### to

### SELECT MASTER DISTRIBUTOR AGREEMENT
### RESIDENTIAL PRODUCTS

**MASTER DISTRIBUTOR:**      Water , Inc.

**EFFECTIVE DATE
OF AGREEMENT:**      July 1, 1996

**Shipping Terms:**      F.O.B. Westmont, IL, for Everpure supplied merchandise.
F.O.B. point of origin for Companion Products supplied
directly by participating manufacturers.

**Payment Terms:**      All invoicing for any given month will be paid by the end
of the month following, i.e., July, 1996 invoices will be
paid by the end of August, 1996.

**Returned Goods:**      All returns must be approved by Everpure, Inc. in advance.
Restocking charges may apply.  Everpure's most current
Returned Goods Policy is available upon request from the
Everpure Technical Service Department.

**Limited Warranties:**      Everpure warrants its residential products against
manufacturer's defects for one year from date of purchase
by the end user, or to its distributors for 18 months
from date of manufacture.  For complete warranty statements,
refer to the Everpure consumer warranty supplied with each
product, or the Everpure commercial warranty available
upon request from the Everpure Technical Service Department.

Schedule Date:    July 1, 1996

FORM3\DIST\SELECTMD.EVP

3108854383 WATER INC. PPB 905 P.12/13 SEP 07 '99 10:27



Everpure, Inc.
660 Blackhawk Drive
Westmont, Illinois 60559-9005
708 654 4000
FAX 708 654 1115

May 10, 1996

Mr. Major Avignon
Water, Inc.
321 Coral Circle
El Segundo, CA 90245

Re: Supplement to Water, Inc. Select Master Distribution Agreement

Dear Major:

This letter will confirm the supplemental agreements we have reached to our Agreement for Water, Inc. Everpure recognizes that given the historically successful performance of Water, Inc., its comparatively large Territory, and the extended initial term of your Agreement it is appropriate to supplement our standard form in certain respects as it applies to Water, Inc.

**Section 4.2**    **Multiple Territory/National Account Programs** (Supplemental)
Everpure will consult in advance with Distributor before introducing any Everpure brand program into the Territory through channels other than Distributor. We will endeavor to include Water, Inc. in any such program, and if Water Inc. reasonably believes its sales opportunities will be adversely impacted, adjust Minimum Purchase Requirements accordingly.

**Section 5.1(a)**    **Development of Channels of Distribution** (Supplemental)
As between Everpure and Distributor, Distributor will take responsibility for conducting or arranging education of sales and installation personnel as required for the proper application of Products for their general intended use.

**Section 8**    **Assignment** (Supplemental)
Everpure will not unreasonably withhold its consent to assignment of this Agreement to a successor enterprise. Change in ownership of Water, Inc. will not affect this Agreement, provided Major Avignon or other manager reasonably acceptable to Everpure, continues to own a controlling interest and the requirements of Section 5.3 are maintained.

Section 9.1(b)(4)  <u>Early Termination by Everpure</u> (Supplemental)
Everpure will not have a right to terminate this Agreement for failure to meet Minimum Purchase Requirements unless it has given Distributor notice and at least a 30 day period to bring its purchases up to the required levels.

Section 10.3  <u>Entire Agreement</u> (Supplemental)
This Agreement also includes the provisions of this Supplement.

If you agree to the above supplemental provisions, please sign and return a copy of this letter to me with the signed Agreement.

Very truly yours,

Jim Bove

Everpure, Inc.

By _____

Title _____

Date ___7/8/96___

Water, Inc.

By _____

Title _____

Date ___2-1-96___

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge J. Spencer Letts and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV08- 218 JSL (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

=========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

I (a) PLAINTIFFS (Check box if you are representing yourself ☐)
WATER, INC., a California corporation

DEFENDANTS
EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC.. and DOES 1 to 10, inclusive

(b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

(c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
CLARK, GOLDBERG & MADRUGA
11400 W. Olympic Blvd., Suite 1150
Los Angeles, CA 90064
Tel: (310) 478-0077    Fax: (310) 478-0099

Attorneys (If Known)
ROGER W. CLARK, ESQUIRE (#108982)
ROBERT D. GOLDBERG, ESQUIRE (#137356)

II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT: JURY DEMAND: ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☐ Yes ☑ No    ☑ MONEY DEMANDED IN COMPLAINT: $ In excess of $75,000.00

VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Sherman Anti-Trust Act, 15 U.S.C. §1 and §2; Clayton Act, 15 U.S.C. §14; California Franchise Relations Act, California Buss. & Professions Code, §2000; Cartwright Act, Cal. Buss. & Professions Code §16700; Cal. Buss. & Professions Code, §§ 17000, 17200; Breach of Contract:

VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS / PERSONAL INJURY | TORTS / PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☑ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending |  | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV |  | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare |  | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise |  | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY |  | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation |  | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure |  |  | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment |  |  | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |
|  | ☐ 290 All Other Real Property |  |  |  |  |

VIII(a). IDENTICAL CASES: Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

FOR OFFICE USE ONLY:    Case Number:

CV-71 (07/05)                    CIVIL COVER SHEET                    Page 1 of 2

CV08-00218

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII (b). RELATED CASES: Have any cases been previously filed that are related to the present case? ☑No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
Los Angeles County

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
None ILLINOIS

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
Los Angeles County

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date __January 14, 2008__

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |