**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CALIFORNIA 90071-2300
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

CHRISTOPHER J. HECK, BAR NO. 174647
CHECK@FOLEY.COM

**OF COUNSEL**
BRIAN W. MCGRATH
KELLI A. TAFFORA
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
TELEPHONE:     414.271.2400
FACSIMILE:     414.297-4900
BMCGRATH@FOLEY.COM
KTAFFORA@FOLEY.COM

ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation,<br><br>                 Plaintiff,<br><br>     vs.<br><br>EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC.,<br><br>                 Defendants. | CASE NO:  CV 08-00218 JSL (SSX)<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO:  (1) DISMISS FOR IMPROPER VENUE PURSUANT TO RULE 12(B)(3); OR, IN THE ALTERNATIVE, (2) TRANSFER VENUE TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406(A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>[Declaration Of Michael Madsen And Exhibits Filed And Served Concurrently]<br><br>Date:          June 9, 2008<br>Time:          1:00 p.m.<br>Courtroom: 4<br><br>Judge:  The Hon. J. Spencer Letts |

DEFENDANTS' MOTION TO DISMISS OR TRANSFER
CASE NO.:  CV08-00218 JSL (SSX)

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2008, at 1:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 4 of the above-entitled court, located at 312 North Spring Street, Los Angeles, California, 90012, defendants Everpure, Inc., Everpure, LLC and Pentair, Inc. ("Everpure"), will move for an order:

(1)    dismissing this action, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(3) for improper venue; or

(2)    in the alternative, transferring venue of this action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Northern District of Illinois, where Everpure's executive offices are located and the parties contractually agreed to resolve all disputes pursuant to a forum selection clause.

This motion will be made pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, 28 U.S.C. § 1406(a), on the ground that the distribution agreement between Water and Everpure that is at issue contains an express forum-selection clause providing that the exclusive jurisdiction for any disputes between the parties is in the State of Illinois.

This motion will be based upon this notice, the attached memorandum of points and authorities, the declaration of Michael Madsen and exhibits thereto, the entire file in this action, and such other argument and evidence as may be presented at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place, via telephone on May 12, 2008, between Roger W. Clark of Clark, Goldberg & Madruga (counsel for Water) and Christopher J. Heck, of Foley & Lardner LLP (counsel for Everpure).  During that telephone

1

conference, counsel for the parties were not able to reach a resolution of the issue presented by this motion that would eliminate the need for a hearing.

Dated:  May 19, 2008

FOLEY & LARDNER LLP
CHRISTOPHER J. HECK


By:  /s/
        CHRISTOPHER J. HECK

OF COUNSEL:

BRIAN W. MCGRATH
KELLI A. TAFFORA
FOLEY & LARDNER LLP
777 EAST WISCONSIN AVENUE
MILWAUKEE, WISCONSIN 53202
PHONE: 414.271.2400
FACSIMILE: 414.297.4900

Attorneys for Defendants
Everpure, Inc., Everpure, LLC and
Pentair, Inc.

LACA_1726599.1

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................1

II.     FACTS ........................................................................................................1

III.    LEGAL STANDARD ................................................................................3

IV.     ARGUMENT ..............................................................................................4

        A.      THIS **CASE** SHOULD BE DISMISSED UNDER RULE 12(b)(3)
                FOR IMPROPER VENUE...................................................................4

                (1)     Dismissal is Appropriate Because the Forum Selection Clause
                        Provides that Illinois is the Only Appropriate Venue...........................5

                (2)     The Forum Selection Clause Covers all Claims in Water's
                        Complaint.............................................................................6

                (3)     The Forum Selection Clause is Valid and Enforceable.............8

        B.      WATER CANNOT AVOID THE APPLICATION OF THE FORUM
                SELECTION CLAUSE BY PLEADING A FRANCHISE CLAIM..............9

                (1)     Water Does Not Meet the Statutory Definition of a
                        "Franchise."...........................................................................10

                (2)     Water's Own Pleading Indicates that the Relationship is Not a
                        Franchise. ..............................................................................14

        C.      IN THE ALTERNATIVE, THIS CASE SHOULD BE
                TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS
                PURSUANT TO 28 U.S.C. §1406(A) FOR IMPROPER VENUE. ............16

V.      CONCLUSION ..........................................................................................17

i

LACA_1726599.1

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**FEDERAL CASES**

4

*Argueta v. Banco Mexicano,* 87 F.3d 320 (9th Cir. 1996)..........................................................3-4

5

*Bense v. Interstate Battery Sys.,* 683 F.2d 718 (2d Cir. 1982)........................................................7

6

*Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. State of Alaska*, 682 F.2d 797 (9th Cir. 1982) .............4

7

*Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762 (9th Cir. 1989) ....................................................5

8

*Doe v. Network Solutions,* No. C 07-05115 JSW, 2008 U.S. Dist. LEXIS 7397

9

    (N.D. Cal. Jan. 22, 2008) ........................................................................................ 3-4, 6, 12

10

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336 (9th Cir. 1997) ..............................4,10

11

*Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) ......................................5

12

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904 (6th Cir. 1999) ................................13

13

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (2000)........................................................ 9-10, 14

14

*Kelso Enters. v. M/V Wisida Frost*, 8 F.Supp.2d 1197, 1207 (C.D. Cal. 1998) ...........................4

15

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ..............................................................8

16

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509 (9th Cir. 1988).................................. 4-6, 8

17

*Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373 (7th Cir. 1998) .................................10

18

*Multimin USA, Inc. v. Walco Int'l*, No. CV F 06-0226 AWI SMS, 2006 U.S. Dist. LEXIS

19

    33624, at *16-17 (E.D. Cal. Apr. 7, 2006).........................................................................4, 14

20

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)......................................3-4

21

*Nat'l Micrographics Sys. v. Canon U.S.A., Inc.*, 825 F. Supp. 671 (D.N.J. 1993) .......................16

22

*Premier Wine & Spirits of S.D. v. E. &J. Gallo Winery,* 644 F. Supp. 1431

23

    (E.D. Cal. 1986) ........................................................................................................................13

24

*Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987) ..........................................6-7

25

*TAAG Linhas Aereas de Angola v. Transamerica Airlines,* 915 F.2d 1351 (9th Cir. 1990) ..........4

26

*Turner v. Thorworks Indus., No.* CIV. 5-05-02653 WBS KJM, 2006 U.S. Dist. LEXIS

27

    21668 (E.D. Cal. Mar. 28, 2006) .........................................................................................5, 14

28

ii

LACA_1726599.1

1

2  **FEDERAL STATUTES**

3  28 U.S.C. § 1406(A) ................................................................... 1, 3-4, 16-17

4

5  **STATE STATUTES**

6  Cal. Bus. & Prof. Code § 20001 ................................................................. 11

7  Cal. Bus. & Prof. Code § 20007 ................................................................. 14

8  Cal. Bus. & Prof. Code § 20009 ................................................................. 12

9

10  **RULES**

11  Federal Rule of Civil Procedure, Rule 12(b)(3) ............................................. Passim

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS OR TRANSFER
CASE NO.:  CV08-00218 JSL (SSX)

LACA_1726599.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This motion can be quickly decided by looking at a single clause in the parties' Select Master Distributor Agreement (the "Agreement"): the forum selection clause.  The Agreement is attached to the Complaint as Exhibit 1.  Paragraph 10.9 of the Agreement provides that Water and Everpure **irrevocably submit to** and waive any objection either may have to **venue in state and federal courts of Illinois**.  (*See* Ex. 1 to Compl.).  Venue in Los Angeles is thus improper.  This case should be dismissed pursuant to Rule 12(b)(3) or, in the alternative, transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(A), where the parties contractually agreed to resolve all disputes pursuant to the forum selection clause.

## II.    FACTS

Water, Inc. ("Water") has been an Everpure distributor since 1979.  The most current Agreement was entered into on July 1, 1996.  (Compl. ¶ 11.)[1]  Water is a wholesale distributor of water filtration devices and water delivery systems.  (*Id*. ¶ 1.)  Under the terms of the Agreement, Water distributes Everpure products in seven western states.  (*Id*. ¶ 11.)  Water must purchase all of its water treatment products from Everpure and is prohibited from engaging in any business that competes with or is substantially similar to the products manufactured by Everpure.  (*Id*.; Ex. 1 to Compl. at §§ 5.2 and 5.3.)  Among other things, the Agreement also requires Water to operate in compliance with all applicable laws and to conform its sales practices to the highest standards of honesty, integrity and fair dealing; to respect the validity and ownership by Everpure of the registered trademarks of Everpure; and, to refrain from engaging in conduct that is likely to

---

[1] A copy of the Agreement is attached to the Complaint as Exhibit 1.

DEFENDANTS' MOTION TO DISMISS OR TRANSFER
CASE NO.:  CV08-00218 JSL (SSX)

LACA_1726599.1

deceive the public as to the source, nature or quality of products or services offered by Water, or that is likely to impair the name, trademark or reputation of Everpure. (*Id.* §§ 5.2, 5.3, 5.5, 5.8, 6 and 9.1(b)(2).).

As Water acknowledges in its own Complaint, Water has developed its own "proprietary marketing plan" for its business and sells products that directly compete with Everpure. (*See* Compl. ¶¶ 9, 17.) Although Water twists the facts, its allegations in paragraphs 19 and 20 of the Complaint make clear that Water is selling products that compete with Everpure products, and Water is not buying all of its water treatment products from Everpure. Although Water attempts to place a gloss on these facts that support its arguments, these allegations correctly assert that the scope of the dispute between the parties is whether Water's competitive activities constitute a breach of the Agreement.

Further, Water's allegations establish that on October 31, 2007, Everpure notified Water that Water was in breach of the Agreement. (*Id.* ¶ 20.). Water disputes Everpure's statement that Water is in breach, and all of the claims in Water's Complaint stem from that dispute. Thus, the critical issue between the parties is whether or not Water's competitive activities and failures to abide by the Agreement terms constitute a breach of the Agreement and grounds for termination. Each of Water's 14 enumerated claims is dependent on the Agreement and the resolution of that dispute.

By initiating this suit in Los Angeles, Water has ignored the forum selection clause in its Agreement. The Agreement unequivocally provides that the parties "**irrevocably submit**, and waive any objection either may have, **to** personal jurisdiction or **venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois**." (*Id.* at Ex. 1, ¶ 10.9 (emphasis added).) The Complaint correctly alleges that Everpure's offices are at 1040 Muirfield Drive, Hanover Park, Illinois, 80133.

(Compl. at ¶ 4.)  Those offices are within the Northern District of Illinois.  *See* http://pacer.psc.uscourts.gov/psco/cgi-bin/district.pl.

The forum selection clause further states that "[a]ll remedies provided in this Agreement are cumulative and, **except for forum selection under this Section**, are in addition to any remedy otherwise available under applicable federal, state or local law".  (Compl., Ex. 1 at ¶ 10.9 (emphasis added).)  Because Water is located in Southern California while the defendants are located in Illinois and Minnesota, Water's strategic reason for choosing to file in Los Angeles is apparent:  to attempt to gain a tactical advantage and to drive up the defendants' litigation costs.  Water should not be rewarded for its forum-shopping, as it previously agreed that Illinois was the only proper venue.

In sum, the parties' forum selection clause mandates that venue for the parties' dispute is Illinois.  This Court should therefore:

- Dismiss this action because of improper venue, pursuant to Federal Rule of Civil Procedure, Rule 12(b)(3); or

- Transfer venue of this action to the Northern District of Illinois, pursuant to 28 U.S.C. § 1406(a).

## III.    LEGAL STANDARD

"A motion to dismiss for improper venue based on the enforcement of a forum selection clause is governed by Rule 12(b)(3)."  *See Doe v. Network Solutions,* No. C 07-05115 JSW, 2008 U.S. Dist. LEXIS 7397, at *11-12 (N.D. Cal. Jan. 22, 2008) (*citing Argueta v. Banco Mexicano,* 87 F.3d 320, 324 (9th Cir. 1996)).  "[A] motion under Rule 12(b)(3) does not require that the pleadings be accepted as true, and the Court can consider facts outside the pleadings."  *Id*. at *12.  The Court "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party."  *Id*. (*citing Murphy v. Schneider Nat'l.*

LACA_1726599.1

*Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).  This Court has the authority to either dismiss the improperly-filed action; or "if it be in the interest of justice" transfer the case to the proper district.  28 U.S.C. § 1406(a); *see also Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. State of Alaska*, 682 F.2d 797, 799 (9th Cir. 1982).

## IV.    ARGUMENT

Water's complaint should be dismissed because it has been brought in a venue contrary to the one specified in the forum selection clause contained in the Agreement.  The forum selection clause provides that Illinois is the only appropriate venue, it covers all of Water's claims, and is valid and enforceable.  In the alternative to dismissing, this case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a).

### A.    THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(3) FOR IMPROPER VENUE.

Federal courts in this circuit have held that when parties to a contract have agreed on a specific venue, that agreement cannot be avoided, and an action filed in a venue other than the one specified in the contract must be dismissed.  *See, e.g., Argueta*, 87 F.3d at 324-26 (dismissing action pursuant to 12(b)(3) because a forum selection clause dictated another venue); *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336 (9th Cir. 1997) (dismissing action based on a "prima facie valid" forum selection clause); *Kelso Enters. v. M/V Wisida Frost*, 8 F.Supp.2d 1197, 1207 (C.D. Cal. 1998) (dismissing pursuant to 12(b)(3) because of forum selection clause); *Doe*, 2008 U.S. Dist. LEXIS 7397, at *12 (stating that "[f]orum selection clauses are *prima facie* valid.") (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988)); *TAAG Linhas Aereas de Angola v. Transamerica Airlines,* 915 F.2d 1351 (9th Cir. 1990); *Multimin USA, Inc. v. Walco Int'l*, No. CV F 06-0226 AWI SMS, 2006 U.S. Dist. LEXIS 33624, at *16-17 (E.D. Cal. Apr. 7, 2006) (enforcing forum selection clause in a distribution

relationship); *Turner v. Thorworks Indus.,* No. CIV. 5-05-02653 WBS KJM, 2006 U.S. Dist. LEXIS 21668, at *9, 12-13 (E.D. Cal. Mar. 28, 2006) (enforcing forum selection clause in a franchise relationship).

### (1)    Dismissal is Appropriate Because the Forum Selection Clause Provides that Illinois is the Only Appropriate Venue.

Dismissal pursuant to Rule 12(b)(3) is appropriate in this case, because the forum selection clause provides that Illinois is the only appropriate jurisdiction for disputes between Water and Everpure.  When the term "venue" is used with mandatory language, the designated state or district is the exclusive forum.  *See Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989).  In this case, the forum selection clause contained in the agreements states that the parties "**irrevocably submit,** and waive any objection either may have, **to** personal jurisdiction or **venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois.**" (Compl.,  Ex. 1 at ¶ 10.9 (emphasis added).)  This mandatory language necessitates a finding that venue in the contractually-designated forum of Illinois is exclusive and mandatory.

Having consented to the Illinois forum when it signed the Agreement, Water cannot now avoid the clear language of the forum selection clause.  A party cannot attempt to "change the bargain" of the contract and "contradict the policy of enforcing forum selection clauses" by objecting to venue after entering into a contract.  *See Manetti-Farrow,* 858 F.2d at 515.  A forum selection clause waives the parties' right to complain about its own inconvenience in litigating in the designated venue.  *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).  As such, Illinois is the only proper venue for disputes between Water and Everpure, and the Court should dismiss this case.

///

1    **(2)    The Forum Selection Clause Covers all Claims in Water's**

2    **Complaint.**

3    The language of the forum selection clause covers all claims alleged by

4    Water in this action.  The complete clause states as follows:

5    This Agreement is made in and will be construed under

6    the laws of the State of Illinois, where the executive

7    offices of Everpure are located.  Since Everpure and

8    [Water] have a significant interest in consistent

9    interpretation of this Agreement, and Everpure expects to

10    have Select Master Distributors throughout the United

11    States, Everpure and [Water] irrevocably submit, and

12    waive any objection either may have, to personal

13    jurisdiction or venue in the state and federal courts of

14    applicable subject matter jurisdiction where Everpure's

15    executive offices are located in Illinois.  All remedies

16    provided in this Agreement are cumulative and, except

17    for forum selection under this Section, are in addition to

18    any remedy otherwise available under applicable federal,

19    state or local law.

20    (*See* Compl., Ex. 1 at ¶ 10.9.).  The parties agreed to waive "**any objection**" to

21    venue in Illinois and they further agreed to "**irrevocably submit**" to venue in

22    Illinois.  (*Id.*)  It therefore governs "all causes of action arising directly or

23    indirectly from the business relationship evidenced by the contract."  *Stewart Org.,*

24    *Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987).

25    A forum selection clause in a contract applies to tort and unfair competition

26    claims as well as contract claims.  *See Manetti-Farrow,* 858 F.2d at 514; *see also*

27    *Doe*, 2008 U.S. Dist. LEXIS 7397, at *13.  Tort claims are covered by the forum

28

6

LACA_1726599.1

selection clause if they are related to the rights and duties under the contract, such that resolution of the tort claims is related to interpretation of the contract. *See id.* Similarly, antitrust claims — including those arising from the termination of an agreement — can fall within a forum selection clause, especially when "the gist" of the action is the parties' contractual relationship. *See Bense v. Interstate Battery Sys.,* 683 F.2d 718, 720 (2d Cir. 1982); *Stewart Org.*, 810 F.2d at 1070-71.

In this case, each and every one of Water's claims surrounds, involves, and depends on the Agreement. Claims One, Two, Four, Five and Six allege that Everpure's decision to stop selling products to Water under the Agreement amounts to illegal restraints on trade and seek as a remedy an injunction that prohibits Everpure from terminating the Agreement.[2] (*See* Compl.) Thus, the resolution of these claims will depend upon the resolution of the dispute between Water and Everpure under paragraphs 5.2 and 5.3 of the Agreement. The Third and Eighth Claims also allege an unlawful termination of the Agreement and also seek as a remedy an injunction that prohibits Everpure from terminating the Agreement. (*Id.*) The seventh claim is a direct claim for breach of the Agreement. The tort claims in Claims Nine through Twelve all also allege that Everpure's termination of the Agreement tortiously interfered with Water's business expectancies and contractual relations. (*Id.*) Claims Thirteen and Fourteen again seek to enjoin or "estop[]" Everpure from terminating the Agreement. (*Id.*) The Agreement, and in particular, the interpretation of Paragraphs 5.2, 5.3, 5.5, 5.8, 6 and 9.1(b)(2) of the Agreement, is the linchpin of every claim made by Water.

If Water's claims, which stem directly from the parties' contractual relationship, are not covered by the forum-selection clause, the entire purpose of

---

[2] Although Everpure sent a notice of breach on October 31, 2007, Everpure has <u>not</u> terminated the contract. (Madsen Decl. ¶¶ 3-4, Ex. A). Water's attorneys have conceded in writing that Everpure rescinded the notice of termination. (*Id.* ¶ 5; Ex. B.).

7

LACA_1726599.1

designating a forum in advance would be defeated.  As the Agreement itself provides, because Everpure has master distributors throughout the United States, and the parties have a significant interest in consistent interpretation of the Agreement, it is in the parties' best interest to have all disputes dealing with interpretation of the Agreement in a single forum.  The parties have agreed that such forum is the Northern District of Illinois.

### (3)    The Forum Selection Clause is Valid and Enforceable.

Forum selection clauses are presumed valid.  They will be enforced unless it clearly would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *See M/S Bremen v. Zapata Off-Shore Co.*,  407 U.S. 1, 15 (1972); *Manetti-Farrow,* 858 F.2d at 512.  As such, the party opposing enforcement of the forum selection clause bears a "heavy burden of proof" and, in order to avoid the forum selection clause, must demonstrate that the contractually-chosen forum is so "gravely difficult" and inconvenient that, for all practical purposes, the party will be deprived of his or her day in court.  *M/S Bremen,* 407 U.S. at 18; *Manetti-Farrow,* 858 F.2d at 514-15.

The standards set forth by the Supreme Court in *Bremen* for invalidating a forum selection clause are intentionally strict.  When the choice of forum is made after arms' length negotiation by experienced and sophisticated businessmen, it should be enforced except in the most egregious of circumstances.  *See M/S Bremen,* 407 U.S. at 12.  That reasoning applies here to bar Water from asserting that the forum selection clause is somehow invalid.  Water knew at the time it signed the Agreement that it would have to litigate any disputes with Everpure in Illinois.  For Water to now claim that the forum selection clause is unfair is disingenuous, especially as it has, for many years, reaped the benefits of other provisions of the Agreement.

The selected forum is logical.  Everpure is located in Illinois, and the

Agreement is to be construed according to Illinois state law.  As a company that transacts business nationwide, Everpure has a legitimate interest in knowing exactly what law would govern its disputes and the location where those disputes would be resolved.  *See id.*  at 13-14.  Finally, the Illinois forum is not "gravely difficult" for Water.  Water transacts business all over the Western United States, and can raise any and all claims it has against Everpure in Illinois.  The forum selection clause is therefore not unreasonable, and the Court should give full force and effect to the parties' previously negotiated choice.

## B.    WATER CANNOT AVOID THE APPLICATION OF THE FORUM SELECTION CLAUSE BY PLEADING A FRANCHISE CLAIM.

Water cannot avoid the forum selection clause merely by adding a claim under the California Franchise Relations Act ("CFRA").  (*See* Compl., Third Claim for Relief.).  In *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (2000), the Ninth Circuit held that a forum selection clause that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court directly contravenes the state's public policy and is void.  However, the *Jones* case is inapplicable for at least three reasons –first and foremost being that the relationship between the parties is not a franchise, but a pure supplier/distributor relationship.

Second, the reasoning behind the *Jones* decision is inapplicable here.  The *Jones* court discussed that the reason the CFRA voided forum selection clauses was because:

> [f]ew franchisees can easily afford to defend or prosecute
> their actions in another state. . ..  Moreover, these
> provisions are usually part of the standard contract which
> the franchisee is offered on a "take-it or leave-it" basis.

LACA_1726599.1

In the absence of arms length negotiations and equal

bargaining position, such terms are usually

unconscionable.

*Id*. at 498 n.15.  Water is a multi-million dollar company who was represented by

counsel in the signing of the Agreement.  (Madsen Decl. ¶¶ 6-7.)

Third, the Agreement at issue is a multi-state territory agreement that should

not be subject solely to California public policy.  Water acknowledges in its own

pleading that it is a *distributor* in seven western states.  (*See* Compl. ¶ 11).

Schedule B to the Agreement lists ten states in which Water distributes Everpure

product.   (Complaint, Ex. 1 at Schedule B.).  Such a mulit-state territory

relationship is entirely unlike the franchise relationship at issue in the *Jones* case.

The CFRA should not be interpreted to mandate that all other states adhere to

California law when there is a multi-state relationship.  *See Morley-Murphy Co. v.

Zenith Elecs. Corp.*, 142 F.3d 373, 379-80 (7th Cir. 1998) (discussing how

extraterritorial application of Wisconsin's Fair Dealership Law would violate the

Commerce Clause of the U.S. Constitution).

Water's attempt to avoid its contractual obligations by claiming protection

of the CFRA must be viewed in light of the *Jones* warning that "[t]he party

challenging the forum selection clause bears a 'heavy burden' of establishing the

existence of one of the . . . grounds for rejecting its enforcement."  211 F.3d at 497

(citing *Fireman's Fund Ins. Co.*, 131 F.3d at 1338).  The remaining argument

under this section will focus on the foremost reason that the *Jones* case does not

apply –because the statutory definition, as well as Water's own allegations in the

Complaint, show that Water is not a "franchise."

### (1)    Water Does Not Meet the Statutory Definition of a "Franchise."

The statutory definition of "franchise" shows that Water is not an Everpure

LACA_1726599.1

franchisee.  The CFRA defines a "franchise" as follows:

> [A] contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> (a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
>
> (b) The operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
>
> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Bus. & Prof. Code § 20001.  Water and Everpure are not regulated by the CFRA, because  Water does not distribute Everpure's products "under a marketing plan or system prescribed in substantial part" by Everpure and because Water was not required to pay a franchise fee. (Madsen Decl. ¶¶ 8-9.).

**a)      Water does not distribute Everpure's products under a marketing plan or system prescribed in substantial part by Everpure.**

"If no marketing plan or system is prescribed and the franchisee is left entirely free to operate the business according to the franchisee's own marketing plan or system, the agreement is not a franchise."  *See* Commissioner's Release:  3-F (Revised June 22, 1994)  When Does an Agreement Constitute a " Franchise"? at http://www.corp.ca.gov/press/commisser/releases /3-F.asp, at 2.a (last visited May

11

LACA_1726599.1

14, 2008); *see also* Cal. Bus. & Prof. Code § 20009 ("The regulations, releases, guidelines and interpretive opinions of the Commissioner of Corporations under the Franchise Investment Law (Division 5 (commencing with Section 31000) of Title 4 of the Corporations Code) regarding whether or not an agreement constitutes a "franchise" within the meaning of that law shall be prima facie evidence of the scope and extent of coverage of the definition of "franchise" under this chapter. . .."). There can be no dispute that Water does not operate under a marketing plan prescribed by Everpure, let alone a plan substantially prescribed by Everpure.

Of all of those traditional ways in which a franchisor can prescribe a franchisee's marketing plan[3], Everpure does none of them. For example, the vast majority of Water's advertising expenses are paid for by Water and such advertising is not subject to approval by Everpure. (Madsen Decl., ¶ 10.)[4] Everpure does not regulate, and is not even knowledgeable about, Water's pricing. (*Id*. ¶ 11.) Water is allowed to sell to any customer located within the Territory that it wishes and does not have to follow any type of sales script. (*Id*. ¶ 12.) Water is also allowed royalty-free use of Everpure's trademarks. (*Id*. ¶ 13.) Finally, Water is responsible for, and prescribes all of its own marketing and advertising. (*See* Compl. ¶¶ 17-18, 66, 104.)

---

[3] In determining whether this factor applies, courts will generally look to see whether the franchisor places any strict regulations on the franchises in to "advertising, signs, sales pitches, and sources of supply, or concerning the appearance of the licensee's business premises and the fixtures and equipment utilized therein, uniforms of employees, hours of operation, housekeeping, and similar decorations." (Commissioner's Release, at 2.c) "Furthermore, the ability of the franchisor to control the essential decision making process of a franchisee's business, such as through a majority ownership interest in the business or by appointing a majority of the members of a committee that is responsible for making important decisions relating to sales, marketing, merchandising, personnel, etc., is indicative of a marketing plan prescribed by the franchisor." (*Id*.)

[4] On a motion to dismiss for improper venue, the Court can consider matters outside the Complaint. *See Doe*, 2008 U.S. Dist. LEXIS 7397, at *12.

DEFENDANTS' MOTION TO DISMISS OR TRANSFER
CASE NO.:  CV08-00218 JSL (SSX)

LACA_1726599.1

Water and Everpure are two autonomous companies that have a supplier-distributor relationship. This is not the type of relationship that the CFRA is intended to protect. *See, e.g., Premier Wine & Spirits of S.D. v. E.&J. Gallo Winery,* 644 F. Supp. 1431 (E.D. Cal. 1986) (holding that a typical supplier-distributorship relationship, where the distributor sells competitors' products and there is no franchise fee, is not a franchise relationship under either South Dakota or California law). Here, Water is operating as a separate and distinct corporate entity from Everpure; Water is not operating its business under Everpure's name. Water completely maintains its own business identity. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 910-11 (6th Cir. 1999) (where dealer had control over hours and days of operation, hired and trained employees subject to its own policies, set its own sales goals, and exercised control over the day-to-day business decisions, the dealer was a business that functioned independently and was not a franchisee). Water's claim under the CFRA is simply a last-ditch attempt to avoid complying with the forum selection clause.

### b)    Water did not pay a franchise fee.

The relationship between Water and Everpure is also not a "franchise" under the CFRA for the additional and separate reason that Water was never required to pay a franchise fee. (Madsen Decl. ¶ 9.) The CFRA defines a "franchise fee," in relevant part, as follows:

> [A]ny fee or charge that a franchisee . . . is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including, but not limited to, any payment for goods and services. However, the following shall not be considered the payment of a franchisee fee:
> (a) The purchase or agreement to purchase goods at a

13

bona fide wholesale price if no obligation is imposed

upon the purchaser to purchase or pay for a quantity of

goods in excess of that which a reasonable

businessperson normally would purchase by way of a

starting inventory or supply or to maintain a going

inventory or supply. . ..

(d) The payment, directly or indirectly, of a franchise fee

which, on an annual basis, does not exceed the sum of

one hundred dollars ($100).

Cal. Bus. & Prof. Code § 20007.  There is no allegation of a fee in the Complaint, and Water labels itself as a "wholesale distributor."  (Compl. at ¶ 11.).

Because Water was not required to pay a franchise fee, the Agreement is not regulated by the CFRA, the *Jones* case is inapplicable, and the case should be dismissed.  *See Multimin USA,* 2006 U.S. Dist. LEXIS 33624, at *16-17 (refusing to apply the reasoning of the *Jones* case in a distribution relationship); *see also Turner*, 2006 U.S. Dist. LEXIS 21668, at *13 (dismissing claims despite state's "interest in interpreting and applying California Franchise Investment Laws" and holding that a party should be equitably estopped from claiming the benefits of the contract while simultaneously attempting to avoid the burden of a forum selection clause).

**(2)     Water's Own Pleading Indicates that the Relationship is Not a Franchise.**

In addition to failing to meet the statutory definition of a "franchise," Everpure's pleading shows that the relationship is not a franchise.  In the very first paragraph of its Complaint, Water states that it is "a *distributor* of water filtration devices and water delivery systems located within the State of California and sells its products to consumers in California, and in its EVERPURE *distributorship*

14

LACA_1726599.1

territory in the Western United States."  (*See* Compl. ¶ 1) (emphasis added). Paragraph eight of the complaint states that Water "began serving as a *distributor* of EVERPURE water filtration products."  (*Id*. ¶ 8).  Paragraph eleven states that Water was "designated as the western regional *wholesale distributor* of Everpure, LLC."  (*Id*. ¶ 11).  Water refers to itself as a Distributor throughout its Complaint.[5] Nowhere in the complaint (even in the section dealing with its franchise claims!) does Water allege that is a franchisee.  Of the entire forty-four page complaint, the word "franchise" only appears twice- once in the pleading caption on page 1 and once in the title of the claim for violation of the CFRA on page 18.

In addition to its failure to even plead that it is a franchisee, the actual allegations themselves show that the relationship between Water and Everpure is an independent distribution relationship.  Throughout the complaint, Water discusses, and seeks to protect, its own independent business line and products. (*See, e.g.,* ¶¶ 9-10, 12-13, 15-17, 19, 24, 100-104, and 114-116.).  Water also pleads that it developed its own "proprietary marketing plan" and "confidential

---

[5] Such understanding is consistent with section 7.1 of the Agreement in which the parties expressly agreed that the relationship was not a franchise and that Water was an independent contractor responsible for its own business success.  That section states as follows:

> Independent Contractor/Acknowledgments. *[Water] is an independent contractor and agrees to identify itself as independently owned and operated in all dealings with the public.*  It is not authorized to act or create liability on behalf of Everpure. Each party acknowledges that it is not relying on any representations of the other and that *its business success is dependent largely on its own business abilities and efforts; that this Agreement is not intended to create a franchise or business opportunity venture regulated under any federal or state law*; that the business conducted by each party may evolve and change over time; and that its obligations under this Agreement are essential and reasonable requirements to achieve the intention of the parties.

(*See* Ex. 1 to Compl., ¶ 7.1) (emphasis added).

LACA_1726599.1

marketing plan" that *it* shared with Everpure, and not vice versa.  (*See* ¶¶ 17, 66, 104.).  Water goes as far as to accuse Everpure of misappropriating Water's marketing plan.  (*See* ¶ 18).  Finally, all of the antitrust claims surround Water's sale of "competing products."  (*See, e.g.,* ¶¶ 30-36, 42-44, 53, 59, 100).  Those allegations show that the relationship between Everpure and Water was not a franchise.

C.    **IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. §1406(A) FOR IMPROPER VENUE.**

If the Court declines to dismiss Water's complaint, it should, alternatively, transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a).  28 U.S.C. § 1406(a) and Rule 12(b)(3) are essentially interchangeable, except insofar as section 1406(a) gives the court the option to transfer venue in lieu of dismissal.  *See Nat'l Micrographics Sys. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 680 n.14 (D.N.J. 1993).  Everpure's executive offices are located in the Northern District of Illinois.  (Madsen Decl. ¶ 15.)  Therefore, should the Court not dismiss this action, the Court should transfer it to the Northern District of Illinois, the venue the parties voluntarily agreed to per their Agreement.

///

///

///

///

///

///

///

///

16

LACA_1726599.1

**V.    CONCLUSION**

For the foregoing reasons, this Court should dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  In the alternative, the Court should transfer venue of this action to the Northern District of Illinois, pursuant to 28 U.S.C. § 1406(a).

Dated:  May 19, 2008

FOLEY & LARDNER LLP
CHRISTOPHER J. HECK


By:  /s/
CHRISTOPHER J. HECK

OF COUNSEL:

BRIAN W. MCGRATH
KELLI A. TAFFORA
FOLEY & LARDNER LLP
777 EAST WISCONSIN AVENUE
MILWAUKEE, WISCONSIN 53202
PHONE: 414.271.2400
FACSIMILE: 414.297.4900

Attorneys for Defendants
Everpure, Inc., Everpure, LLC and Pentair, Inc.

17

1

**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
2
TELEPHONE:    213.972.4500
FACSIMILE:    213.486.0065

3

CHRISTOPHER J. HECK, BAR NO. 174647
CHECK@FOLEY.COM

4

OF COUNSEL
5
BRIAN W. MCGRATH
KELLI A. TAFFORA
6
FOLEY & LARDNER LLP
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
7
TELEPHONE:    414.271.2400
FACSIMILE:    414.297-4900

8
BMCGRATH@FOLEY.COM
KTAFFORA@FOLEY.COM

9
Attorneys for Defendants

10
## UNITED STATES DISTRICT COURT

11
## CENTRAL DISTRICT OF CALIFORNIA

12
## LOS ANGELES

13

| WATER, INC., a California corporation, | Case No:  CV 08-00218 JSL (SSx) |
|---|---|
| Plaintiff, | [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(3) |
| vs. | |
| EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC., | |
| Defendants. | Judge:        Hon. J. Spencer Letts |

14

15

16

17

18

19

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

[PROPOSED] ORDER
CV08-00218JSl (SSx)

1
2
3
4
5
6
7

  This matter came on for hearing on June 9, 2008 on Defendants Everpure, Inc., Everpure, LLC and Pentair, Inc.'s Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3); or, in the alternative, to Transfer Venue to the U.S. District Court for the Northern District of Illinois Pursuant to 28 U.S.C. § 1406(A). Oral arguments were heard by the Court on June 9, 2008.  Plaintiff was represented by its counsel, Roger W. Clark of Clark, Goldberg & Madruga.  Defendants were represented by their counsel, Christopher J. Heck of Foley & Lardner LLP.

8
9
10
11
12

  Based upon all the files, records and proceedings herein, including all the pleadings, briefs and other documents filed with the Court, as well as the arguments of counsel, and good cause appearing, IT IS ORDERED that Defendants' Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3) is Granted in all respects and that Plaintiff's case is dismissed.

13
14

Dated:  June , 2008

15
16
17

_____

Hon. J. Spencer Letts, District Court Judge

18
19
20
21
22
23
24
25
26
27
28

2

LACA_1726713.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

[PROPOSED] ORDER
CV08-00218JSI (SSx)