ROGER W. CLARK, ESQ. (#108982)      Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)  Email: rgoldberg@cgold.cc
JAMES N. KAHN, ESQ. (#231062)       Email: jkahn@cgold.cc
**CLARK, GOLDBERG & MADRUGA**
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Tel: (310) 478-0077  Fax: (310) 478-0099

Attorneys for Plaintiff, **WATER, INC.**

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation, )<br><br>Plaintiff, )<br><br>vs. )<br><br>EVERPURE, INC., EVERPURE, LLC, )<br>PENTAIR, INC. and DOES 1 to 10, )<br>inclusive, )<br><br>Defendant(s) ) | CASE NO.: CV08-00218 ABC (SSx)<br><br>**FIRST AMENDED COMPLAINT OF WATER, INC. FOR:**<br>**1) VIOLATION OF SHERMAN ANTI-TRUST ACT, 15 U.S.C. §1**<br>**2) VIOLATION OF CLAYTON ACT**<br>**3) VIOLATION OF THE LANHAM ACT; 15 U.S.C. SECTION 1125(A)**<br>**4) VIOLATION OF CARTWRIGHT ACT**<br>**5) VIOLATION OF THE UNFAIR PRACTICES ACT**<br>**6) VIOLATION OF UNFAIR**<br>**7) ESTOPPEL**<br>**8) DECLARATORY RELIEF**<br>**9) INTENTIONAL INTERFERENCE WITH CONTRACT**<br>**10) NEGLIGENT INTERFERENCE WITH CONTRACT**<br>**11) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**12) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**13) INJUNCTIVE RELIEF**<br><br>**[JURY TRIAL REQUESTED]** |

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

1

Plaintiff, WATER, INC, a California corporation (hereinafter referred to as "WATER"), hereby brings this Complaint against EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC. (sometimes referred to herein as "DEFENDANTS"), and DOES 1 to 10, and alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action brought under the Sherman Anti-Trust Act, 15 U.S.C. §1, Clayton Act, 15 U.S.C. §14, and state claims for monetary damages and equitable relief under supplemental jurisdiction.  This Court has federal question jurisdiction over the subject matter of this action pursuant to Title 18 U.S.C. §1964 and 28 U.S.C. Section 1331.  Jurisdiction also exists under § 1332 based upon complete diversity of citizenship as WATER is a citizen of California.   WATER is a corporation organized and existing under the laws of the California with its principal place of business in the State of California.   WATER is a distributor of water filtration devices and water delivery systems located within the State of California and sell its products to consumers in California, and in the Western United States. WATER conducts its business in the State of California, generates revenues from operations in the State of California, and supervises its employees in the State of California.  Defendants EVERPURE, LLC and EVERPURE, INC. are citizens of Illinois.   Defendant PENTAIR is a corporation organized and existing under the laws of Minnesota, with its principal place of business

2

located in Golden Valley, Minnesota. Defendant EVERPURE, LLC maintains its corporate headquarters at Hanover Park, Illinois, and PENTAIR, INC. maintains its corporate headquarters at Golden Valley, Minnesota. The amount in controversy exceeds $75,000.00 (Seventy-Five Thousand Dollars) exclusive of interest and costs. This court accordingly has jurisdiction of this action.

2.    Venue in this District is proper under Title 18 U.S.C. §1965 as WATER is headquartered this District. Venue in this District is also appropriate under Title 28, U.S.C., Section 1391(a) since a substantial part of the events giving rise to this action occurred within this District, including the sale of Everpure products and water delivery systems.

**THE PARTIES**

3.    Plaintiff WATER is a corporation incorporated under the laws of the State of California, and which at all relevant times has had its principal place of business at 1044 E. Del Almo Blvd, Carson, California 90746.

4.    Defendant EVERPURE, LLC is a limited liability company which maintains its principal place of business at 1040 Muirfield Drive, Hanover Park, Illinois 80133. Upon information and belief, EVERPURE, LLC is the success-in-interest of

3

EVERPURE, INC. Hereinafter, both companies shall be collectively referred to as "EVERPURE"

5. WATER is informed and believes, and on that basis alleges, that EVERPURE and PENTAIR are alter egos of each other. Hereinafter, both companies shall collectively be referred to as "EVERPURE" or "Defendants". WATER is further is informed and believes that there exists a unity of interest between and among these defendants so that it would be unjust to recognize any legal distinction between them or differentiate one from another. PENTAIR has so dominated and controlled EVERPURE that the wrongdoing of each should be imputed to the other.

6. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when same is ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that plaintiff's injuries as herein alleged are proximately caused by such defendants.

//

//

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

7.    Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each of the defendants was the agent and/or employee and/or joint venturer and/or partner of each of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of such agency/employment/joint venture/partnership and with the permission and consent of his/her co-cross-defendants. Moreover, plaintiff alleges that defendants EVERPURE, PENTAIR and DOES 1 to 10, conspired together regarding the unlawful restraint of trade and competition as more specifically alleged herein. By entering into an agreement, express or implied, regarding the unlawful restraint of trade and competition, each defendant is liable for the acts of his co-conspirators and the resulting damages to plaintiff. Moreover, DOES 1 to 10, aided and abetted defendants regarding the unlawful restraint of trade and competition by knowingly by knowingly providing substantial assistance as more specifically alleged herein.

## FACTUAL BACKGROUND

8.    Beginning in 1979, WATER began serving as the exclusive distributor of EVERPURE water filtration products in California and other Western states, including Arizona, Colorado, Montana, Nevada, New Mexico, Utah, Wyoming and parts of Idaho and Texas (hereinafter "Western states") under a verbal "hand shake" agreement. Under the verbal agreement as reaffirmed from time to time by the conduct of the parties, WATER had the exclusive use of the trade mark "Everpure" to market and sell filtration

products in the Western states, and WATER was unrestricted in its use of the "Everpure" mark in conjunction with the sale of its own proprietary product line of products. WATER'S trademarks, such as "EVER HOT", "EVER COLD" and "EVER BREW", associated with its proprietary line of products are sometimes collectively referred to herein as "Ever Brands".

9.     Since 1980, WATER has marketed in commerce products designed, among other things, to provide instant hot or chilled water to the faucet through the use of small tanks placed under the sink. These products include water systems that brew, soften and dispense water through a dedicated faucet.   WATER used the marks EVERHOT, EVERCOLD and EVERBREW, among others, to market these products in commerce.

10.     WATER first placed its products into commerce as follows: EVERHOT in 1980, EVERCOLD in September 1989, and EVERBREW in August of 1996. WATER has sold its EVERHOT, EVERCOLD and EVERBREW products continuously since they were introduced into the marketplace. WATER is the owner of these registered trademarks, or is authorized to use these trademarks in commerce. The trademark registration number of EVERCOLD with the U.S. Patent and Trademark office is 76348721 with a registration date of February 4, 2003. The trademark registration number of EVERBREW with the U.S. Patent and Trademark Office is 2695072 with a registration date of March 11, 2003. WATER a licensee of Bradford White Corporation

for the trademark EVERHOT, with registrations number 500,197, 1,056,545 and 2,989,441. *See* Exhibit "1".

11.    At the request of Everpure, Inc, WATER agreed to sign a written agreement in July 1, 1996 with Everpure, Inc. (hereinafter "the Distributor Agreement") which reduced to writing some, but not all of the business relationship between the parties. The Distributor Agreement did not reduce to writing the verbal agreements between the parties, ratified by practice and performance, of WATER'S right to the use of the "Everpure" trademark to market, distribute and sell water filtration products in combination with its own "Ever Brands" as it had done continuously since 1979. Water gave notice of termination of the Distributor Agreement on May 22, 2008.

12.    At all relevant times alleged herein, defendant EVERPURE, INC. knew and was informed that WATER was using the trademarks EVERHOT, EVERCOLD and EVERBREW in commerce. At all relevant times alleged herein defendants, and each of them, encouraged WATER to market, distribute and sell the EVERPURE water filtration devices under the trademark "Everpure" as part of a product package of Ever Brands products in order to increase the sales of Defendants' EVERPURE products, and expressly and implicitly approved of the marketing, distribution and sale of the EVERPURE water filtration device under the trademark "Everpure" as part of this product package offered by WATER. At all relevant times, EVERPURE, INC. ratified

WATER'S use of the trademark "Everpure" to market, distribute and sell its Ever Brands products as part of a package of products with the "Everpure" filtration devices, and otherwise acquiesced in WATER'S exclusive use of the "Everpure" trademark in this manner in the Western states for almost thirty years.

13.    In reliance upon the approval, authorization and consent of Defendants, and each of them, to sell, market and distribute the EVERPURE water filtration devices under the trademark "Everpure" as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, WATER commenced selling, marketing and distributing the products in conjunction with the "Everpure" mark  and has continuously and exclusively sold, marketed and distributed to the present date the EVERPURE water filtration devices under the mark "Everpure" in the Western states as part of a package with its EVERHOT, EVERCOLD and EVERBREW products.

14.    Over the years that WATER had developed its marketing plan which incorporated the "Everpure" trademark as an integral part and linchpin of its promotion and marketing of the package of Ever Brands products,  Defendants, and each of them, through their statements and conduct, led WATER to understand and believe that it had the right to use of the "Everpure" mark together with the Ever Brands and that such right had been  "grandfathered in" over time.

//

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

15.    In further reliance upon the approval, authorization and consent of Defendants, and each of them, to sell, market and distribute EVERPURE water filtration devices under the trademark "Everpure" as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, and based upon the statements and conduct of EVERPURE that WATER'S right to use of the "Everpure" mark with its Ever Brands had been "grandfathered in", WATER expended millions of dollars in marketing, promotions, and advertising the "Everpure" trademark.

16.    At all relevant times, WATER continued to sell, market and distribute its EVERHOT, EVERCOLD and EVERBREW products together as part of a package with the EVERPURE water filtration devices under the trademark "Everpure" within the Western states as it had done since 1979 with the full knowledge, consent, and approval of EVERPURE.

17.    As it had done since 1979, WATER, at all times with the full knowledge, consent, and approval of EVERPURE and PENTAIR, continued to market, distribute and sell EVERPURE water filters using the trademark "Everpure" as part of a package complimenting WATER'S EVERHOT, EVERCOLD and EVERBREW products.

18.    In further reliance upon the approval, authorization and consent of Defendants, and each of them, to sell, market and distribute EVERPURE water filtration

devices under the trademark "Everpure" as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, and based upon the statements and conduct of EVERPURE that WATER'S right to use of the "Everpure" mark together with the Ever Brands had been "grandfathered in", WATER developed methods of distribution of the product and a proprietary marketing plan around which it developed its business.

19.    In further reliance upon the statements and conduct of defendants, and each of them, which led WATER to reasonably believe that it would have the right to use the "Everpure" mark as long as it wanted in association with its package of Ever Brands products, and in order to coordinate the sale of EVERPURE filtration products, WATER shared with EVERPURE and PENTAIR its proprietary marketing plan for its EVERHOT, EVERCOLD and EVERBREW products.    WATER disclosed its confidential marketing plan to EVERPURE solely to assist other EVERPURE residential distributors marketing of EVERPURE water filtration products. Defendants, and each of them, induced WATER to share its proprietary marketing plan, through its statements and conduct intended to lead WATER to believe that it would have the right to the indefinite use of the "Everpure" trademark in association with the package of Ever Brands products.

//

//

20.    In further reliance upon its reasonable belief that it would have the right to the use of the "Everpure" trademark as long as it wanted, WATER entered into a license agreement with Bradford White for the use of the trademark EVER HOT for a substantial and material sum.    WATER would not have entered into the license agreement if it had know it would not be able to use the "Everpure" mark.

21.    Through WATER'S use of the trademark "Everpure" in commerce over the past 29 years in the Western states, the trademark has come to be associated in the market place with Water, Inc. and Water, Inc's Ever Brands products.

22.    Upon information and belief, EVERPURE and PENTAIR have misappropriated WATER'S marketing plan to distribute new products that it has begun to sell under the EVERPURE mark in direct competition with WATER'S "Ever Brands" products.    These products, which compete directly with EVERHOT and EVERCOLD are not manufactured by EVERPURE, but have been recently added to EVERPURE'S product line.

23.    After PENTAIR, INC. acquired a controlling interest in EVERPURE in or around 2003-2004, it began to expand the products available for sale by its Master Distributors.    Among these products, were products that performed the same or similar function as WATER'S EVERHOT and EVERCOLD products.    Moreover,

11

notwithstanding the addition of these products to its product line, PENTAIR and EVERPURE implicitly and expressly authorized, encouraged and consented to WATER'S marketing, distribution and sale of EVERPURE water filtration devices under the mark "Everpure" as part of a package with EVERHOT, EVERCOLD, and EVERBREW.

24.     EVERPURE and PENTAIR attempted to compel and coerce WATER to abandon its sales of its EVERHOT, EVERCOLD and EVERBREW products in exchange for payments worth only a small fraction of the value of these products in the marketplace, and in this way attempted to unlawfully suppress competition and vastly increase its sales volume and market share.

25.     Upon information and belief, Defendants, and each of them, have contacted WATER'S established customers, and attempted to coerce and threaten these customers not to do business with WATER or it would not sell its products to them.

26.     Upon information and belief, Defendants, and each of them, are using or intend to use the trademark "Everpure" in the Western states in association with similar products that WATER had marketed under the trademark "Everpure" for thirty years. Upon information and belief, these products are inferior in design and function to products WATER has sold under the trademark "Everpure." As a direct and proximate

12

result of the conduct of defendants, and each of them, Defendants sale of water chillers and instant hot product under the trademark "Everpure" has the likelihood of creating confusion in the marketplace, and damage WATER'S reputation and goodwill in its Ever Brands trademarks. Unless restrained and enjoined, WATER will be irreparably harmed.

27.    Upon information and belief, the threats and coercion of Defendants, and each of them, are the direct and proximate cause of damages to WATER, and the loss of revenue. Moreover, unless restrained and enjoined, these threats and coercion will likely continue, and unless restrained and enjoined will forseeably cause harm to plaintiff.

28.    WATER is informed, and believes, and thereon alleges that each of the acts hereinabove committed by defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of WATER as defined by California Civil Code Section 3294.  WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing defendants, and deterring future conduct by them as herein alleged, in a sum according to proof at time of trial.

//

//

//

//

13

## FIRST CLAIM FOR RELIEF

### (For Violations of the Sherman Anti-Trust Act, 15 U.S.C. §1 and §2 against all Defendants)

29.    Plaintiff repeats, re-pleads and re-alleges the allegations contained in each and every preceding paragraph as though set forth in full.

30.    Defendants conduct, and each of them, threaten illegal constraints on trade in violation of Section 1 of the 15 U.S.C. §1.  Section 1 provides, *inter alia*:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

31.    Defendants, through their conduct, acts and omissions as further alleged herein have attempted to monopolize the market for water delivery systems sold by WATER through coercive tactics.

32.    Defendants have employed threats and intimidation to reduce competition and obtain an unfair advantage in commerce through monopolization of the market.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

**(Remedies)**

33.     Pursuant to 15 U.S.C. §26, WATER seeks to enjoin and restrain Defendants, and each of them,  from engaging in the illegal constraints on trade in violation of federal law; including without limitation, any interference with WATER'S sale of its Ever Brands products EVERHOT, EVERCOLD or EVERBREW to retailers or customers, or any other product.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

34.     WATER also seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. Section 15.

35.     To the extent Defendants prohibit or interefere with WATERS' ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

**SECOND CLAIM FOR RELIEF**

**(For Violation of Clayton Act 15 U.S.C. § 14 against all Defendants)**

36.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

15

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

37.     15 U.S.C. Section 14 of the Clayton Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities whether patented or unpatented, for use, consumption, or resale within the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

38.     Defendants, and each of them, are in violation of the Clayton Act, 15 U.S.C §14 by refusing to sell its products to existing WATER customers unless these customers agree to stop purchasing product from WATER, and  cease selling WATER'S Ever Brands in the marketplace, and instead sell only the EVERPURE water delivery

16

products.    Defendant has employed coercive tactics in order to obtain competitive advantages and restrain trade.

39.    Defendants conduct threatens a constraint on trade and amounts to price fixing, in order to obtain competitive advantage for its own products.

40.    Defendants, and each of them, have tied the sales of its products to WATER'S existing customers upon WATER'S existing customers' agreement to cease purchasing WATER'S proprietary Ever Brands products which compete in the marketplace with new products recently listed by EVERPURE.

**(Remedies)**

41.    Pursuant to 15 U.S.C. §26, WATER seeks to enjoin and restrain Defendants, and each of them, from engaging in the illegal constraints on trade in violation of federal law; including without limitation, 1) withholding for sale its products or any other coercive acts in order to prevent or prohibit WATER'S existing customers from doing business with WATER;    and 2) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers. WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

42.    WATER also seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. Section 15.

43.    To the extent Defendants refuse to do business with WATER'S existing customers in order to prevent them from doing business with WATER, or otherwise prohibit or interefere with WATERS' ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

## THIRD CLAIM FOR RELIEF

**(For Violation of the Lanham Act, 15 U.S.C. Section 1125(a)**

**Against All Defendants)**

44.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

45.    As alleged herein, WATER is the owner of the EVERCOLD and EVERBREW trademarks, and a licensee of the EVERHOT trademark. WATER has also been the exclusive licensee of the trademark "Everpure" when used in association with the Ever Brands products in the Western states for the past 29 years.

//

18

46.    Upon information and belief, Defendants, and each of them, are using or intend to use the trademark "Everpure" in the Western states in association with products that are likely to cause confusion among the public with the Ever Brands products WATER has marketed under the trademark "Everpure" for thirty years.    Upon information and belief, these products are inferior in design and function to products WATER has sold under the trademark "Everpure." As a direct and proximate result of the unlawful conduct of defendants, and each of them, Defendants sale of water chillers and instant hot product under the trademark "Everpure" has the likelihood of creating confusion in the marketplace, and damage WATER'S reputation and goodwill.  Unless restrained and enjoined, WATER will be irreparably harmed.


47.    Plaintiff is also entitled to recover from defendants under the statute its reasonable attorneys fees and costs expended to enjoin violations of the act.


**FOURTH CLAIM FOR RELIEF**

**(For Violation of the Cartwright Act, Cal. Business & Professions Code §16700**

**Against All Defendants)**


48.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

19

49.    Defendants refusal to deal or continue to sell its line of products to WATER'S existing customers if they continue to do business with WATER is unlawful and discriminatory resulting in the restraint of trade in violation of the Cartwright Act.

50.    WATER also seeks treble damages under Section 16750 of the Cartwright Act.

**(Remedies)**

51.    Pursuant to Section 16750, WATER seeks to enjoin and restrain Defendants, and each of them, from any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.

52.    To the extent Defendants refuse to do business with WATER customers in order to prevent them from doing business with WATER or otherwise prohibit or interefere with WATER'S ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants' illegal activities in an amount to be proven at time of trial.

53.    WATER is entitled to prejudgment interest under Section 16761 for any and all damages proximately caused by defendants, as alleged herein.

## FIFTH CLAIM FOR RELIEF

**(For Violation of the Unfair Practices Act, Cal. Business & Professions Code**

**Section 17000 Against All Defendants)**

54.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

55.    Defendants refusal to deal with WATER customers who do business with WATER is unlawful and discriminatory resulting in the restraint of trade in violation of the UPA.

56.    Defendants, through its conduct, have attempted to monopolize the market for water delivery systems sold by WATER through its coercive tactics in further violation of the UPA.

57.    Defendants, and each of them, have employed threats and intimidation to reduce competition and obtain an unfair advantage in commerce in violation of Section 17046.

58.    WATER also seeks treble damages under Section 17082 of the Cartwright Act, and the recovery of its attorney's fees and costs.

21

**(Remedies)**

59.    Pursuant to Section Business & Professions Code Sections 17070 and 17078, WATER seeks to enjoin and restrain Defendants, and each of them,  from: 1) withholding for sale its products or any other  coercive acts in order to prevent or prohibit WATER'S existing customers from doing business with WATER;   2) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers; and 3) creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.


60.    To the extent Defendants refuse to do business with WATER customers in order to prevent them from doing business with WATER or otherwise prohibit or interefere with WATER'S ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants' illegal activities in an amount to be proven at time of trial.

//

//

//

22

## SIXTH CLAIM FOR RELIEF

**(For Violation of the Unfair Competition Act, Cal. Business & Professions Code Section 17200 against All Defendants)**

61.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

62.    Defendants, and each of them, have engaged in a pattern and practice of unlawful, fraudulent, unfair and deceptive business activities, as further alleged herein. Defendants, and each of them, have violated the anti-trust statutes alleged herein, as well as their legal duties owed to WATER, as further alleged herein. Moreover, without WATER'S consent and authorization, Defendants, and each of them, have misused and otherwise misappropriated WATER'S confidential and proprietary marketing plan for its own use, and sale of products directly competing with WATER'S line of products EVERHOT, EVERCOLD, and EVERBREW.

63.    As a direct and proximate result of these unlawful, fraudulent, unfair and deceitful business activities, as alleged herein, WATER is threatened with imminent harm, and likely will suffer damages as alleged herein. WATER seeks restitution and disgorgement on behalf of itself and all others similarly situated all revenues earned by Defendants acquired by such unfair competition as described herein.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

64.    WATER is informed, and believes, and thereon alleges that the conduct of Defendants alleged herein is continuous and ongoing, and that the public in general faces harm and injury as a result of these unlawful, fraudulent, unfair and deceptive practices.

65.    On behalf of itself and others similarly situated, WATER seeks to enjoin and restrain Defendants from engaging in the unfair and fraudulent business practices alleged herein pursuant to California Business & Professions Code §17203; and obtain all other remedies available under law to prevent Defendants' unlawful, fraudulent, unfair and deceptive business practices alleged herein.

66.    On behalf of itself and others similarly situated, WATER seeks restitution and disgorgement of all money paid to Defendants related to violations of the Unfair Competition Act.

**SEVENTH CLAIM FOR RELIEF**

**(For Estoppel against All Defendants)**

67.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

//

//

24

68.    As alleged herein, for almost 30 years WATER used the trademark "Everpure" in association with its package sale of Ever Brands products in the Western states. WATER was the exclusive user of the "Everpure" mark used in association with the Ever Brands products.

69.    In reliance on the right to use the "Everpure" mark in association with its Ever Brands products, WATER changed its position and expended millions of dollars promoting the mark, and entered a license agreement worth substantial sums for the right to use the mark Ever Hot. Moreover, WATER created a proprietary marketing plan for sale of the Ever Brands products in conjunction with the "Everpure" mark.

70.    Moreover, based upon the statements and conduct of defendants, and each of them, WATER was led to believe that it had the exclusive right to use the "Everpure" mark indefinitely in association with its Ever Brands products in the Western states.

71.    WATER changed its position to its detriment in reliance upon the conduct and representations of Defendants. Based upon Defendants' conduct and representations, WATER reasonably believed that defendants would not use the mark "Everpure" in the Western states to market products that would cause a likelihood of confusion in the marketplace with the Ever Brands.

25

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

72.   Therefore, Defendants must be estopped from creating a likelihood of confusion among the public by marketing competing and substantial similar product in the Western states under the same name, "Everpure", the same mark WATER has used for almost thirty years in relation to its Ever Brands products.   Estoppel is just and appropriate to protect WATER's Ever Brands marks.  Defendants must not be permitted to suddenly change course all to the detriment and prejudice of WATER.

## EIGHTH CLAIM FOR RELIEF

### (For Declaratory Relief against All Defendants)

73.   Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

74.   An actual controversy has arisen between the parties regarding Defendants' use of the mark "Everpure" in association with products that create a likelihood of confusion, by being substantially similar and competing with WATER'S Ever Brands products in the Western states.  WATER contends that defendants' use of "Everpure" in association with products that compete with the Ever Brands will harm WATER's Ever Brands marks and cause confusion in the marketplace, resulting in irreparable harm to WATER'S reputation and goodwill.   On the other hand, upon information and belief, Defendants deny plaintiff has any such rights.

75.    WATER desires a judicial determination of the rights and liabilities of WATER and Defendants with respect to Defendants' right to use of the mark "Everpure" when used in association with products that will create a likelihood of confusion in the marketplace with WATER'S Ever Brands products that plaintiff has offered for sale in the Western states for almost 30 years under the mark "Everpure."

## NINTH CLAIM FOR RELIEF

## (For Intentional Interference with Contractual Relations against All Defendants)

76.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

77.    At all relevant times mentioned herein, Defendants, and each of them, owed Plaintiff a duty to act reasonably and prudently and to refrain from injuring Plaintiff or its reputation, or interfering with its contractual relationships or prospective contractual relationships. Upon information and belief, Defendants knew and were made aware that WATER had contractual agreements with retailers, consumers and wholesalers for its Ever Brands products.

//

//

27

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

1    78.    Defendants, and each of them, have intentionally interfered with WATER'S

2    contractual and business relationships by threatening Plaintiff's existing customers that it

3
4    would not do business with them if they purchased plaintiff's Ever Brands and would

5    prevent WATER from selling its products, and further result in the termination  of

6    WATER'S contractual relationships with its business partners and customers.

7

8

9    79.    As a direct and proximate cause of defendants acts and omissions as alleged

10   herein, WATER has suffered the loss of sales from its retailers, wholesalers and

11
12   consumers, and damage to its business reputation and goodwill in an amount to be

13   proven at time of trial.

14

15

16   80.    WATER is informed, and believes, and thereon alleges that each of the acts

17   hereinabove alleged to have been committed by Defendants were intentional and also

18
19   constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of

20   the rights of WATER as defined by California Civil Code Section 3294.    WATER is

21   therefore entitled to and herein seeks an award of punitive and exemplary damages for

22
23   the purposes of punishing Defendants, and deterring future conduct by them as

24   hereinbefore alleged, in a sum according to proof at time of trial.

25   //

26   //

27   //

28   //

28

## TENTH CLAIM FOR RELIEF

### (For Negligent Interference with Contractual Relations against All Defendants)

81.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

82.    At all relevant times mentioned herein, Defendants, and each of them, owed Plaintiff a duty to act reasonably and prudently and to refrain from injuring Plaintiff or its reputation, or interfering with its contractual relationships or prospective contractual relationships.    Upon information and belief, Defendants knew or should have that WATER had contractual agreements with retailers, consumers and wholesalers for its Ever Brands products.

83.    Defendants, and each of them, threatened to withheld the sale of their products unless plaintiff's customers agreed not to do business with plaintiff.    At all relevant times, Defendants knew, or had reason to know, that its conduct would prevent WATER from selling its products to its customers, and further result in the termination of  WATER'S contractual relationships with its business partners and customers.

//

//

//

29

84.    Upon information and belief, Defendants negligently and without justification or good cause, notified plaintiff's customers that they should not do business with plaintiff, and as a result of this notification,   WATER'S contractual relationships with its retailers, wholesalers and consumers have been impaired or terminated.

85.    As a direct and proximate cause of the negligence of defendants as alleged herein, WATER has suffered the loss of sales from its retailers, wholesalers and consumers, and damage to its business reputation and goodwill in an amount to be proven at time of trial.

## ELEVENTH CLAIM FOR RELIEF

### (For Negligent Interference with Prospective Economic Advantage against All Defendants)

86.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

87.    Defendants, and each of them, knew or should have known of the economic relationships between WATER and its retailers, wholesalers and consumers, for EVERPURE water filtration products. Defendants knew or should have known that WATER could not make sales of the Ever Brands products to its retailers, wholesalers

and consumers after Defendants threatened not to do business with them if they sold plaintiff's products. Upon information and belief, negligently and without due cause or justification notified third parties, including WATER'S retailers, wholesalers and consumers, not to do business with WATER, or face the consequences.

88.    As a direct and proximate result of the negligence of Defendants, WATER has been denied the benefits of its economic relationships developed for the sale of its Ever Brands products, and WATER has suffered damages in an amount to be determined prior to or at the time of trial.

## TWELFTH CLAIM FOR RELIEF

## (For Intentional Interference with Prospective Economic Advantage against All Defendants)

89.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

90.    Defendants, and each of them, knew or should have known of the economic relationships between WATER and its retailers, wholesalers and consumers, for its Ever Brands products. Defendants knew or should have known that WATER could not make sales of the Ever Brands products to its retailers, wholesalers and consumers after

31

Defendants threatened these businesses not to sell plaintiff's products. Upon information and belief, Defendants intentionally and willfully notified third parties, including WATER'S retailers, wholesalers and consumers, that they must not do business with plaintiff or face the consequences.

91.    As a direct and proximate result of the intentional conduct of Defendants, WATER has been denied the benefits of its economic relationships developed for the sale of its Ever Brands products, and WATER has suffered damages in an amount to be determined prior to or at the time of trial.

92.    Upon information and belief, Defendants, and each of them, have acted maliciously, and upon information and belief have maliciously notified third parties and business contacts of WATER that they should not do business with WATER or face economic penalties. WATER is informed, and believes, and thereon alleges that each of the acts hereinabove alleged to have been committed by Defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of CHARTER as defined by California Civil Code Section 3294. WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing Defendants, and deterring future conduct by them as hereinbefore alleged, in a sum according to proof at time of trial.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## THIRTEENTH CLAIM FOR RELIEF

### (For Preliminary and Permanent Injunction against All Defendants)

93.   Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

94.   WATER changed its position to its detriment in reliance upon the conduct and representations of Defendants as alleged herein.   Based upon Defendants' conduct and representations, WATER had the exclusive license to sell the EVERPURE filtration device under the mark "Everpure" as part of a package of its Ever Brands products.

95.   Therefore, Defendants must be enjoined and estopped from suddenly changing course and using the "Everpure" mark to selling products likely to cause confusion among the public with respect to competing or substantially similar products as plaintiff has done for almost 30 years in the Western states.   An injunction is necessary to protect Plaintiff's Ever Brands marks.

96.   Upon information and belief, Defendants, and each of them, are using or intend to use the trademark "Everpure" in the Western states in association with substantially similar or competing products that WATER had marketed under the trademark "Everpure" for thirty years.   Upon information and belief, these products are

33

inferior in design and function to products WATER has sold under the trademark "Everpure." As a direct and proximate result of the unlawful conduct of defendants, and each of them, Defendants sale of water chillers and instant hot product under the trademark "Everpure" has the potential of creating confusion in the marketplace, and damage WATER'S reputation and goodwill. Unless restrained and enjoined, WATER will be irreparably harmed.

97.    In reliance on its right to use the "Everpure" mark as part of a package of WATER'S products, WATER established markets for the products, developed marketing plans, and expended substantial resources all based upon its ability to offer the package of products in the marketplace with its Ever Brands marks.

98.    The California Unfair Competition Law, California, Business & Professions Code, Section 17200 *et seq.,* forbids unlawful, unfair or fraudulent business practices. The conduct of Defendants, as alleged herein, is unlawful in that said conduct violates implied-in-fact exclusive license agreement, and federal and state anti-trust laws, as alleged herein.

99.    The conduct of Defendants is unfair in that Defendants led WATER to believe, all to the detriment of WATER, that it had the exclusive right to use the "Everpure" mark with the EVERPURE water filtration device as part of a package of

34

products offered by WATER.  WATER requests an injunction under the authority of Section 17203 of the California, Business & Professions Code, and the federal and state anti-trust statutes.

100.    Unless Defendants are restrained and enjoined by this court, WATER will not only suffer loss of immediate revenue, but will also suffer irreparable injury to its reputation and good will.

101.    WATER faces the imminent threat of irreparable injury for which it cannot be adequately compensated in damages.  WATER requests that a preliminary and permanent injunction issue to prevent such injury, and shall enjoin defendants and their employs, agents, representatives, subsidiary and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from 1) interfering with its ability to sell its Ever Brands products to its customers and 2) violating its exclusive license agreement and creating confusion in the market place by selling in the same market under the same mark competing products to plaintiff's Ever Brands; and 3) creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities

alleged herein.  WATER has no adequate remedy at law to prevent the irreparable harm described above, which is not readily ascertainable by any legal measure of damages.

102.   The issuance of an injunction would not be adverse to the public interest because it would preserve competition in the market place.  In fact, the public interest overwhelmingly supports the issuance of this injunction.

103.   Moreover, a preliminary and permanent injunction would prevent further derogation of WATER'S rights, and the threatened interference with WATER'S contractual relations, and the loss of prospective business advantage with customers.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff WATER, INC. requests the entry of judgment against EVERPURE, LLC, EVERPURE, INC. and PENTAIR, INC and DOES 1 TO 10 as follows:

## **AS TO THE FIRST CLAIM FOR RELIEF**

1.   For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.   Treble Damages

3.   For attorney's fees and costs

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

4.    For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

## AS TO THE SECOND CLAIM FOR RELIEF

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.    Treble Damages

3.    For attorney's fees and costs

4.    For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

## AS TO THE THIRD CLAIM FOR RELIEF

1.    For a preliminary and permanent injunction enjoining defendants and their employees, agents, representatives, subsidiaries and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years in the Western states.

2.    For consequential and/or statutory damages.

3.    For attorney's fees.

## AS TO THE FOURTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      For punitive and exemplary damages.

3.      For attorney's fees and costs

4.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

5.      For treble damages.

## AS TO THE FIFTH CLAIM FOR RELIEF

1.      For general, special and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      Attorney's fees and costs

3.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

4.      For treble damages.

## AS TO THE SIXTH CLAIM FOR RELIEF

1.      For restitution of all amounts paid; together with pre-judgment interest thereon at the legal rate.

//

38

2.      For an order enjoining defendants, and each of them, from engaging in the unlawful, fraudulent, unfair and deceptive business activities alleged,

## AS TO THE SEVENTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

## AS TO THE EIGHTH CLAIM FOR RELIEF

1.      For a judicial declaration that Defendants may not use of the mark "Everpure" when used in association with products that will create a likelihood of confusion in the marketplace with WATER'S Ever Brands products that plaintiff has offered for sale in the Western states for almost 30 years under the mark "Everpure."

## AS TO THE NINTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      For exemplary and punitive damages.

## AS TO THE TENTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## AS TO THE ELEVENTH CLAIM FOR RELIEF

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

## AS TO THE TWELFTH CLAIM FOR RELIEF

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.    For exemplary and punitive damages.

## AS TO THE THIRTEENTH CLAIM FOR RELIEF

1.    For a preliminary and permanent injunction enjoining defendants and their employees, agents, representatives, subsidiaries and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from 1) withholding for sale its products or any other  coercive acts in order to prevent or prohibit WATER'S existing customers from doing business with WATER;   2) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers; and 3) creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years in the Western states.

2.    For attorney's fees available under Federal and State statutes alleged herein.

40

## AS TO ALL CAUSES OF ACTION

1.      Costs of suit;

2.      Such other relief as the Court may deem proper.

3.      For any and all other and further relief as this Court deems just and proper.

DATED: June __2__, 2008                    CLARK, GOLDBERG & MADRUGA


By: __/S/ Robert D. Goldberg_____
      ROGER W. CLARK
      ROBERT D. GOLDBERG
      Attorneys for Plaintiff
      WATER, INC.

F:\WORK\07-1782\PLEADINGS\1ST_AMENDED_COMPLAINT_001_VERSION4.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

41

## REQUEST FOR TRIAL BY JURY

Plaintiff WATER, INC. hereby requests trial by jury in the above caption action.

DATED: June __2__, 2008                CLARK, GOLDBERG & MADRUGA


By: ___/S/ Robert D. Goldberg_____
ROGER W. CLARK
ROBERT D. GOLDBERG
Attorneys for Plaintiff
WATER, INC.

F:\WORK\07-1782\PLEADINGS\1ST_AMENDED_COMPLAINT_001_VERSION4.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

42

# Exhibit "1"

## SETTLEMENT AND LICENSE AGREEMENT

This Settlement and License Agreement ("Agreement") is entered into this 20th day of March, 2007 by and between Bradford White Corporation., a Delaware corporation with its principal place of business at 725 Talamore Drive, Ambler, Pennsylvania 19002 ("BWC/Licensor"), and Water, Inc., a California corporation with its principal place of business at 1044 East Del Amo Boulevard, Carson, California 90746 ("Water/Licensee"). BWC/Licensor and Water/Licensee are referred to jointly as the "Parties" and individually as the "Party."

### PREAMBLE

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

CONFIDENTIAL

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

NOW, THEREFORE,

- 2 -

CONFIDENTIAL

**44**

## 2.0   LICENSE

### Definitions

2.1.1   LICENSED MARKS: The trademark EVERHOT and U.S. Trademark Registration No. 500,197 for EVERHOT® for use in connection with GAS WATER HEATERS; U.S. Trademark Registration No. 1,056,545 for EVERHOT® for use in connection with WATER HEATERS; and U.S. Trademark Registration No. 2,989,441 for EVERHOT® for use in connection with RESIDENTIAL AND COMMERCIAL WATER HEATERS.

2.1.2   LICENSED PRODUCTS:   Instant hot drinking water systems (as exemplified in Exhibit B and including any updated, improved and enhanced models of such instant hot drinking water systems).

2.1.3   TERRITORY: The United States of America and throughout the world.

### Obligations

2.2.1   **Grant of License**

BWC/Licensor hereby grants to Water/Licensee and Water/Licensee accepts a paid-up, exclusive, non-transferable license to use the LICENSED MARKS solely in connection with the LICENSED PRODUCTS in the TERRITORY, without the right to sublicense, subject to the following terms and conditions. The license granted hereunder applies to prior, current and future use of the LICENSED MARKS by Water/Licensee in connection with the LICENSED PRODUCTS.

2.2.2   **Ownership of Licensed Marks**

BWC/Licensor is the owner of the LICENSED MARKS and Water/Licensee agrees that it shall do nothing inconsistent with such ownership (e.g., Water/Licensee shall not directly or indirectly seek to oppose, object to, challenge, cancel or otherwise take any action against BWC/Licensor's past, current or future right to register, use, own, license, or transfer the LICENSED MARKS) and that all use of the LICENSED MARKS by Water/Licensee has and shall inure to the benefit of and be on behalf of BWC/Licensor. Water/Licensee agrees that nothing in this Agreement shall give Water/Licensee any right, title or interest in the LICENSED MARKS other than the right to use the LICENSED MARKS in accordance with this Agreement.

- 3 -

CONFIDENTIAL

### 2.2.3   Quality Standards, Trademark Usage Standards, Acknowledgements and Confirmation

The Parties acknowledge and agree that great value is placed on the LICENSED MARKS and the goodwill associated therewith, and that the consuming public and the industry associate the LICENSED MARKS with products of consistently high quality.  The parties acknowledge and agree that the consuming public and the industry now associate BWC/Licensor with products of consistently high quality.  The parties also acknowledge and agree that the consuming public and the industry now associate Water/Licensee with products of consistently high quality.  The "Quality Standards," "Trademark Usage Standards" and "Acknowledgements" set forth in this Section 2.2.3 are considered necessary and reasonable to assure that the LICENSED PRODUCTS of Water/Licensee in connection with which the LICENSED MARKS will be used are of a sufficient and consistently high quality and that use of the LICENSED MARKS by Water/Licensee is in accordance with acceptable trademark usage and notice requirements of BWC/Licensor's rights in the LICENSED MARKS.

#### 2.2.3.1    *Quality Standards*

(a)    BWC/Licensor acknowledges that Water/Licensee's current LICENSED PRODUCTS, as of the Effective Date, are of the requisite quality to satisfy the Quality Standards of BWC/Licensor and as set forth in this Section 2.2.3.1.  Water/Licensee shall hereafter use the LICENSED MARKS only in connection with LICENSED PRODUCTS that satisfy the Quality Standards.  Water/Licensee shall attach hereto as Exhibit C a copy of a current certification from one or more of the Standards Organizations set forth in Section 2.2.3.1(b) below for the current LICENSED PRODUCTS.

(b)    All LICENSED PRODUCTS distributed or offered by or on behalf of Water/Licensee in connection with the LICENSED MARKS shall maintain a current certification from one or more of the following Standards Organizations: (1) Underwriters Laboratories, Inc. (UL); (2) Canadian Standards Association/CSA International (while recognized in the U.S.); or (3) Intertek Testing Services.  Based on the current standards and evaluation procedures of the above-listed Standards Organizations, BWC/Licensor shall consider a certification from one or more of these Standards Organizations sufficient evidence that the LICENSED PRODUCTS of Water/Licensee which are used in connection with the LICENSED MARKS are of the requisite quality to satisfy the Quality Standards for the country(ies) in which that Standards Organization is applicable.  In the event that the standards or evaluation procedures of any of the above-listed Standards Organizations change to the extent that they no longer set recognized standards, and thus no longer satisfy BWC/Licensor's criteria for acceptable Quality Standards, then BWC/Licensor shall notify Water/Licensee of such change and BWC/Licensor shall consider a certification from one or more of the remaining above-listed Standards Organizations sufficient evidence that the LICENSED PRODUCTS of Water/Licensee which are used in connection with the LICENSED MARKS satisfy acceptable Quality Standards for the country(ies) in which that Standards Organization is applicable.

- 4 -

**CONFIDENTIAL**

### 2.2.3.2    *Trademark Usage Standards and Acknowledgements*

Water/Licensee shall use the LICENSED MARKS in connection with the LICENSED PRODUCTS, and the packaging, advertising and promotion thereof, in a manner that satisfies the Trademark Usage Standards attached hereto as Exhibit D and with one of the following acknowledgements: (a) "the EVERHOT® mark is used under license from Bradford White Corp." or (b) "the EVERHOT® mark is used with permission from Bradford White Corp." (the "Acknowledgements").

### 2.2.3.3    *Confirmation of Standards and Acknowledgments*

Water/Licensee shall furnish to BWC/Licensor, at no cost to BWC/Licensor, once per calendar year, representative samples of LICENSED PRODUCTS with which the LICENSED MARKS are used in connection, as well as specimens of the packaging, advertising and promotional materials bearing the LICENSED MARKS, and copies of current certifications from one or more of the Standards Organizations, so that BWC/Licensor may confirm that the LICENSED PRODUCTS of Water/Licensee with which the LICENSED MARKS are used in connection, and the packaging, advertising and promotional materials bearing the LICENSED MARKS, satisfy the Quality Standards, Trademark Usage Standards and the Acknowledgements. If BWC/Licensor notifies Water/Licensee that a sample, specimen, or certification does not satisfy the Quality Standards, Trademark Usage Standards or the Acknowledgements, BWC/Licensor shall give Water/Licensee a reasonable opportunity to satisfy the Quality Standards, Trademark Usage Standards and the Acknowledgements and to furnish a new sample, specimen, or certification.

2.2.4    BWC/Licensor agrees not to compete with Water/Licensee in the instant hot drinking water systems market using the LICENSED MARKS in the Territory.

2.2.5    In consideration for the license granted in Section 2.2.1 above, Water/Licensee shall pay the amount as set forth in Section 1.1 above.

### 2.2.6    **Indemnity**

2.2.6.1    BWC/Licensor assumes no liability to Water/Licensee or to third parties with respect to the performance, effectiveness, safety or other characteristics of goods or services rendered by Water/Licensee in connection with the LICENSED MARKS and Water/Licensee shall defend and indemnify BWC/Licensor and hold BWC/Licensor harmless against all costs and expenses, including attorney fees, and all losses incurred from claims of third parties against BWC/Licensor involving Water/Licensee's goods or services including, but not limited to, any product liability or tort issues arising from the design, manufacturing, marketing, selling or use of Water/Licensee's goods or services.

- 5 -

CONFIDENTIAL

2.2.7  Water/Licensee agrees not to register the domain name www.everhot.com or any confusingly similar domain name.  The license to Water/Licensee granted in Section 2.2.1 above shall include the right to use the LICENSED MARKS on the internet for LICENSED PRODUCTS, in accordance with the Trademark Usage Standards and Acknowledgments set forth in Section 2.2.3.2 above.

2.2.8  Water/Licensee shall have the right to use all of its existing LICENSED PRODUCTS and advertising in stock; however, beginning April 1, 2007 or within thirty (30) days of the execution of this Agreement, whichever comes first, Water/Licensee shall include one of the Acknowledgements set forth in Section 2.2.3.2 above on all of its LICENSED PRODUCTS and applicable advertising produced after January 1, 2007.  Further, beginning January 1, 2008, Water/Licensee shall include one of the Acknowledgements set forth in Section 2.2.3.2 above on all of its LICENSED PRODUCTS and applicable advertising.

2.2.9  BWC/Licensor shall police the market with respect to infringing third-party uses of the LICENSED MARKS, including use of the LICENSED MARKS on the LICENSED PRODUCTS, exercising its discretion in a commercially reasonable manner.  BWC/Licensor shall uphold the validity of the LICENSED MARKS and, exercising its discretion in a commercially reasonable manner, pursue infringers in the United States of the LICENSED MARKS. Water/Licensee shall promptly notify BWC/Licensor of any such unauthorized third-party use of the LICENSED MARKS, and of any third-party challenges to BWC/Licensor's rights in the LICENSED MARKS of which Water/Licensee becomes aware.  As of the date of this Agreement, Water/Licensee is not aware of any such unauthorized third-party use of the LICENSED MARKS.

2.2.10  **Transfer**

CONFIDENTIAL

- 6 -

48

### 2.2.11 **Termination, Breach**

2.2.11.1    The term of the Agreement shall commence on the Effective Date and continue until such date as Water/Licensee no longer meets the Quality Standards and/or ceases to provide LICENSED PRODUCTS under the LICENSED MARKS in the TERRITORY and/or otherwise breaches this Agreement and Water/Licensee fails to cure the breach as provided below in Sections 2.2.11.2 and 2.2.11.3, and/or until the registrations described in Section 2.1.1 are cancelled or held invalid by a court of competent jurisdiction or the U.S. Patent and Trademark Office only after the time for appeal has passed and/or until the LICENSED MARKS are ruled to be generic by a court of competent jurisdiction or the U.S. Patent and Trademark Office only after the time for appeal has passed.  In no event shall a termination by either party affect the obligation to fully pay the payments of the Paid-Up License Fee due BWC/Licensor from Water/Licensee pursuant to Sections 1.1 and 2.2.5.

2.2.11.2    If Water/Licensee fails to make any payment when due pursuant to Sections 1.1 and 2.2.5 above, BWC/Licensor may provide written notice pursuant to Section 6.0, notifying Water/Licensee of the non-payment, whereupon Water/Licensee shall have thirty (30) days from the date of the notice to make the payment (the "Cure Period").  Should Water/Licensee fail to make the required payment within the Cure Period, then Water/Licensee shall be considered to be in default and material breach of this Agreement and all payments not yet paid by Water/Licensee shall become immediately due and payable. BWC/Licensor shall, moreover, have the right to immediately terminate this Agreement by written notice to Water/Licensee.  In addition to all payments being due and payable, Water/Licensee agrees that the license granted in Section 2.2.1 above shall immediately terminate upon receipt of the written notice of termination.

2.2.11.3    If Water/Licensee fails to perform any of its obligations in the Agreement (other than the payment provided for in Section 2.2.11.2 above), BWC/Licensor shall provide written notice pursuant to Section 6.0, notifying Water/Licensee of the nonperformance, whereupon Water/Licensee shall have no more than thirty (30) days from the date of the notice to perform the obligation.  Should Water/Licensee fail to perform the obligation within that time period then Water/Licensee shall be considered to be in default and material breach of this Agreement.  BWC/Licensor shall have the right to immediately terminate this Agreement by written notice to Water/Licensee.  In addition to all payments being due and payable, Water/Licensee agrees that the license granted in Section 2.2.1 above shall immediately terminate upon receipt of the written notice of termination.

2.2.11.4    BWC/Licensor's failure to provide notice of a breach shall not be considered a waiver of its rights, and BWC/Licensor shall have the right to pursue a cure and/or remedy for such a breach at a later time should Water/Licensee still be in breach or not cure such a breach.

- 7 -

CONFIDENTIAL

2.2.11.5    Upon expiration or termination of this Agreement, Water/Licensee shall immediately cease all use of the LICENSED MARKS and any term confusingly similar thereto, destroy all printed materials bearing any of the LICENSED MARKS, and all rights in the LICENSED MARKS and the goodwill connected therewith shall remain the property of BWC/Licensor.  Furthermore, the expiration or termination of the Agreement shall not negate or otherwise change or extinguish Water/Licensee's obligation to make full payment of the Paid-Up License Fee under Section 1.1.

**3.0    COMPROMISE**

**4.0    RELEASE**

CONFIDENTIAL

- 8 -

## 5.0    CONFIDENTIALITY

CONFIDENTIAL

- 9 -

## 6.0   NOTICE

Any notices or other communications required under this Agreement shall be served upon the Parties via Facsimile and overnight priority mail as follows:

For Bradford White Corporation:

Herbert F. Foster
Vice President Administration
Bradford White Corporation
725 Talamore Drive
Ambler, PA 19002
Facsimile: 215.641.1612

With a copy to:

Joshua L Cohen, Esq.
RatnerPrestia
1235 Westlakes Drive, Suite 301
Berwyn, PA 19312
Facsimile: 610.407.0701

For Water, Inc.:

Major Avignon
President
Water, Inc.
1044 East Del Amo Boulevard
Carson, California 90746
Facsimile:

With a copy to:

Roger W. Clark, Esq.                     Christopher Rolin, Esq.
Clark & Goldberg                         Christopher Rolin Law Offices
Suite 1150                               5707 Corsa Avenue
11400 Olympic Boulevard                  Westlake, Village, California 91362
Facsimile: 310.314.8662                  Facsimile: 818.735.9992

- 10 -

CONFIDENTIAL

## 7.0    GENERAL TERMS

This Agreement constitutes the entire agreement of the Parties, superseding any and all previous oral or written representations, communications, understandings or agreements relating to the subject matter hereof. Any amendment to this Agreement must be in writing specifically referring to this Agreement signed by duly authorized representatives of the Parties.

This Agreement is the result of negotiations between the Parties and has been prepared for the convenience of both Parties and shall not be construed more strictly or favorably for either Party.

This Agreement shall be binding upon and inure to the benefit of the Parties, their individual principals, agents, directors, officers, employees, representatives, companies, corporations, ventures, partnerships, subsidiaries, predecessors, parents, transferees, assigns, heirs or successors of any type.

Each Party represents, warrants and agrees that it has received, or has had the opportunity to receive, independent legal advice with respect to the advisability of this Agreement.

If any part or any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part or portion shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of the Agreement.

The waiver of any breach of this Agreement by any Party will not be a waiver of any other subsequent or prior breach.

Each Party represents, warrants and agrees that the person reviewing and executing the Agreement on its behalf (whether or not a company officer) has been duly authorized and empowered by the company to do so.

The terms of this Agreement are contractual in nature. The headings are for convenience only and do not limit the described sections in any manner.

The Parties agree to perform any further acts and execute and deliver any further documents that may reasonably be necessary to carry out the provisions of this Agreement.

This Agreement may be executed and delivered in any number of counterparts or copies by the Parties hereto. When each Party has signed and delivered at least one counterpart to the other Party hereto, each counterpart shall be deemed an original and, taken together, shall constitute one and the same Agreement, which shall be binding and effective as to the Parties.

- 11 -

CONFIDENTIAL

The "Effective Date" of this Agreement shall be the last date on which this Agreement is executed by all Parties.

The Agreement is governed by and must be construed in accordance with the laws of the State of California, and the parties hereby submit to the jurisdiction of the U.S. District Court for the Central District of California for any legal action relating to enforcement of this Agreement.

IN WITNESS WHEREOF, the Parties hereto, agreeing to be legally bound, have executed this Agreement through their duly authorized representatives on the dates indicated below.

Dated: March 20, 2007

BRADFORD WHITE CORPORATION.

Name: Herbert D Foster
Title: Vice President Administration

Dated: March ____, 2007

WATER, INC.

Name: Major Avignon
Title: President

CONFIDENTIAL

The "Effective Date" of this Agreement shall be the last date on which this Agreement is executed by all Parties.

The Agreement is governed by and must be construed in accordance with the laws of the State of California, and the parties hereby submit to the jurisdiction of the U.S. District Court for the Central District of California for any legal action relating to enforcement of this Agreement.

IN WITNESS WHEREOF, the Parties hereto, agreeing to be legally bound, have executed this Agreement through their duly authorized representatives on the dates indicated below.

Dated: March ____, 2007

BRADFORD WHITE CORPORATION.

_____
Name:  Herbert F. Foster
Title:    Vice President Administration

Dated: March ___, 2007

WATER, INC.

_____
Name:  Major Avignon
Title:    President

CONFIDENTIAL

- 12 -

55

**CERTIFICATE OF SERVICE – by *Electronic Filing and Service Pursuant To General Rule Order 08-02***
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is that of Clark, Goldberg & Madruga located at 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064.

I hereby certify that on June 2, 2008, a copy of the following document was filed electronically and served on the parties identified below: **FIRST AMENDED COMPLAINT OF WATER, INC.**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Christopher Heck, Esq.                    Attorneys for Defendants,
**FOLEY & LARDNER, LLP**           **EVERPURE, INC., EVERPURE,**
555 So. Flower Street                      **LLC, and PENTAIR, INC.**
Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
Email: check@foley.com


**X** **(BY MAIL)** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary court of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on June 2, 2008 at Los Angeles, California.


**X** (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

KARLA P. GONZALEZ                    
Type or Print Name                          Signature

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX