ROGER W. CLARK, ESQ. (#108982)
Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)
Email: rgoldberg@cgold.cc
JAMES N. KAHN, ESQ. (#231062)
Email: jkahn@cgold.cc
**CLARK, GOLDBERG & MADRUGA**
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Telephone: (310) 478-0077
Facsimile: (310) 478-0099
Attorneys for Plaintiff, **WATER, INC.**

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077 (310) 478-0099 FAX

**THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES**

WATER, INC., a California corporation,

Plaintiff,

vs.

EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC. and DOES 1 to 10, inclusive,

Defendant(s)

CASE NO.: CV 08-00218 ABC (SS)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO: (1) DISMISS FOR IMPROPER VENUE PURSUANT TO RULE 12 (B) (3); OR, IN THE ALTERNATIVE, (2) TRANSFER VENUE TO THE US DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406 (A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: June 16, 2008
Time: 10:00 A.M.
Courtroom: 680

Judge: The Hon. Audrey B. Collins

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ............................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

I.    INTRODUCTION ........................................................................................ 2

The Motion to Dismiss for Improper Venue is Moot........................................ 2

The Claims of the First Amended Complaint Are Not Controlled By
Interpretation of the Distributor Agreement..................................................... 3

Paragraph 10.9 of the Distributor Agreement Does Not Control Venue ........... 4

Paragraph 10.9 is Not a "Forum Selection Clause" ........................................ 5

II.   STATEMENT OF FACTS ............................................................................. 5

Procedural History ....................................................................................... 5

Relevant Facts ............................................................................................. 7

III.  LEGAL STANDARD ................................................................................... 9

IV.   LEGAL ARGUMENT ................................................................................ 10

The First Amended Complaint Moots the Motion to Dismiss ........................ 10

Clause is Inapplicable Because No Contractual Interpretation is Required ...... 11

Any Ambiguity or Lack of Clarity Must be Construed Against Drafter........... 14

V.    CONCLUSION .......................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES                                                    PAGE(S)

*Argueta v. Banco Mexicano*
    (9th Cir. 1996) 87 F.3d 320, 324 ...............................................16, 17, 18, 19, 20

*Bense v. Interstate Battery Sys.*
    (2nd Cir. 1982) 683 F.2d 718, 720 ......................................................................21

*Carver v. Condie*
    (7th Cir. 1999) 169 F.3d 469, 472) ....................................................................11

*Coalition for ICAAN Transparency Inc. v. VeriSign, Inc.*
    (N.D.Cal.2006) 452 F.Supp.2d 924, 932 ...........................................................14

*Docksider, Ltd. v. Sea Technology, Ltd.*
    (9th Cir. 1989) 875 F.2d 762, 764) ..............................................................13, 14

*Doe v. Unocal Corp.*
    (1998) 27 F.Supp. 1174, 1180, aff'd (9th Cir. 2001) 248 F.3d 915, 920 .............11

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*
    (9th Cir. 1997) 131 F.3d 1336 .......................................................16, 18, 19, 20

*Insurance Co. of North America v. NNR Aircargo Service (USA), Inc.*
    (9th Cir. 2000) 201 F.3d 1111, 40 U.C.C. Rep. Serv. 2d 832 ............................15

*Keaty v. Freeport Indonesia, Inc.*
    (5th Cir. 1974) 503 F.2d 955, 956) ....................................................................14

*Kelso Enters. v. M/V Wisida Frost*
    (C.D. Cal. 1998) 8 F.Supp.2d 1197, 1207 ........................................16, 18, 19, 20

*King v. Dogan*
(5th Cir. 1994) 31 F.3d 344, 346 ..............................................................................11

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 Fax

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

# TABLE OF AUTHORITIES (Continued)

## FEDERAL CASES                                    PAGE(S)

*London v. Coopers & Lybrand*
    (9th Cir. 1981) 644 F.2d 811, 814..........................................................................11

*Manetti-Farrow, Inc. v. Gucci America, Inc.*
    (9th Cir. 1988) 858 F.2d 509, 513..................................................................9, 16

*Murphy v. Schneider National, Inc.,*
    (9th Cir. 2004) 362 F.3d 1133, 1139-1140  ...............................................10

*Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*
    (9th Cir. 1997) 114 F.3d. 848, 851 .............................................................9

*Sterling Forest Associates v. Barnett-Range Corp.*
    (4th Cir. 1988) 840 F.2d 249, 251-52  .......................................................13

*Stewart Organization, Inc. v. Ricoh Corporation*
    (11th Cir. 1987) 810 F.2d 1066 .............................................................20, 21

*The Breman v. Zapata Off-Shore Co.*
    (1972) 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed.2d 513 ...............................17, 18, 19

*Wallis v. Princess Cruises, Inc.*
    (9th Cir. 2002) 306 F.3d 827 ..................................................................14

1

# TABLE OF AUTHORITIES (Continued)

2

3

## FEDERAL STATUTES                                           PAGE(S)

4

5

28 U.S.C. 1391 (a) ........................................................................................22

6

28 U.S.C. 1406 (A) .........................................................................................2

7

Federal Rules of Civil Procedure § 1391 (a) ................................................6

8

Rule 12 (b) (3) ...............................................................................2, 9, 10, 23

9

10

11

12

13

F:\WORK\07-1782\MOTIONS\OPP_TOC.DOC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff, WATER, INC. (hereinafter referred to as "WATER"), hereby opposes Defendants, EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC.'s (hereinafter collectively referred to as "Defendants") Motion to (1) Dismiss for Improper Venue Pursuant to Rule 12 (B) (3), or, in the Alternative, (2) Transfer Venue to the U.S. District Court for the Northern District of Illinois pursuant to 28 U.S.C. 1406 (A), as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants premise their motion to dismiss for improper venue on the misplaced assumption that the instant action: 1) concerns the rights of the parties under the Select Master Distributor Agreement ("Distributor Agreement") between Plaintiff Water, Inc. and Defendants, and 2) the Distributor Agreement is controlled by a "forum selection clause" at paragraph 10.9.   Defendants are in error on both assertions.

### The Motion to Dismiss for Improper Venue is Moot.

Defendants rely upon the allegations in the original complaint for the arguments presented in their motion. *See* Defendants' Memorandum of Points and Authorities filed in support of the Motion to Dismiss, at 1:14-2:14.   Plaintiff has now served and filed a

2

First Amended Complaint. *See* Exhibit "A" to Goldberg Declaration. As a matter of law, the service of the First Amended Complaint supersedes the original complaint. In light of the service of the First Amended Complaint, Defendants' motion is now moot because Defendants' motion is premised upon the allegations of the original complaint, and not on the First Amended Complaint.[1]

## The Claims of the First Amended Complaint Are Not Controlled By Interpretation of the Distributor Agreement.

Moreover, the Amended Complaint addresses the change in circumstances between the parties. Following the filing of the original complaint on January 14, 2008, Defendants withdrew their notice of termination of the Distributor Agreement. *See* Declaration of Michael Madsen at 1:28 to 2:1; and Exhibit "B".   It was Defendants' notice of termination which formed the basis of Plaintiff's breach of contract claim in the original complaint. Since the filing of the complaint, plaintiff has given Defendants notice of termination of the Distributor Agreement. The First Amended Complaint addresses: (1) Defendants illegal conduct in contacting its customers and coercing them to stop purchasing plaintiff's Ever Brand or it would retaliate against them economically;

[1] Before Defendants brought their motion to dismiss, defense counsel was advised that plaintiff intended to file a First Amended Complaint, and that the amended pleading would make any motion to dismiss for improper venue moot. *See* Exhibit "B" to the Declaration of Robert D. Goldberg. Defense counsel rejected plaintiff's offer to extend Defendants' time to respond while plaintiff filed its First Amended Complaint. *See* Exhibit "C".

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

and (2) Defendants marketing of products similar to plaintiff's Ever Brands in the Western state under the trademark "Everpure" in the same manner that WATER has done for the past 29 years will create the likelihood of confusion in the marketplace.

The claims alleged in the First Amended Complaint do not arise out of the Distribution Agreement or require an interpretation of that agreement in order to adjudicate the relief requested. In fact, the First Amended Complaint does not allege any cause of action for breach of contract or seek any damages or relief of any kind arising from the Distribution Agreement. None of the claims turn on an interpretation of the Distributor Agreement.

### Paragraph 10.9 of the Distributor Agreement Does Not Control Venue.

Venue in this action is not controlled by paragraph 10.9 of the Distributor Agreement. Based upon the allegations in the First Amended Complaint, an interpretation of rights under the Distributor Agreement is not central to Plaintiff's claims. The factual allegations are premised upon Defendants unfair and anti-competitive business and trade practices in violation of the Sherman Anti-Trust Act and the Clayton Act. Moreover, the First Amended Complaint alleges a Lanham Act claim to protect Plaintiff's Ever Brand marks and prevent confusion in the market place that will likely be created if Defendants are permitted to sell competing products to the Ever

4

Brands under the name "Everpure" in the Western states as plaintiff has done for the past 29 years. *See* Exhibit "A" of Goldberg Decl. at paragraph 3.

### Paragraph 10.9 is Not a "Forum Selection Clause".

Should the Court choose to examine Defendants' argument regarding the effect of paragraph 10.9 to the Distributor Agreement over venue in this case notwithstanding the service of the First Amended Complaint, it will become apparent that the provision is not a typical "forum selection clause" which does not "exclusively" dictate venue in this action. In addition, even assuming *arguendo* it could be considered a forum selection clause, its enforcement is only permissive, not mandatory, given its ambiguity. As such, paragraph 10.9 of the Distributor Agreement is inapplicable to the instant action and Defendants' Motion to Dismiss or, in the alternative, to Transfer Venue should be denied. Venue is proper in the Central District of California.

## II.    STATEMENT OF FACTS

### Procedural History

After Defendants served plaintiff with notice of termination of the Distributor Agreement on October 31, 2007 (*See* Madsen Decl. at 1:26-27), Water filed suit against Defendants on January 14, 2008 in the Central District of California. The Central District of California is the proper district for this action because a substantial part of the

events giving rise to Water's claims occurred the Central District.  As such, venue is proper.  (See *Federal Rules of Civil Procedure* § 1391 (a)).

On January 15, 2008, after plaintiff had filed suit, Defendants withdrew their notice of termination.  *See* Madsen Decl. at 1:28-2:4.  On May 18, 2008, plaintiff gave Defendants notice of termination of the Distributor Agreement.

On May 14, 2008 defense counsel was advised that plaintiff intended to file a First Amended Complaint, and that the amended pleading would make any motion to dismiss for improper venue moot.  *See* Exhibit "B" to the Declaration of Robert D. Goldberg. Defense counsel rejected plaintiff's offer to extend Defendants' time until after plaintiff filed its First Amended Complaint.  *See* Exhibit "C".

Defendants filed their Motion to Dismiss for Improper Venue on May 21, 2008.

Plaintiff filed and served the First Amended Complaint on June 2, 2008.  The First Amended Complaint supersedes the original complaint and does not allege any breach of contract based upon any termination of the Distributor Agreement, or any anti-trust or tort claims based upon any alleged breach of the Distributor Agreement.  Rather the First Amended Complaint is directed primarily toward the future, not the past.

6

Defendants have not filed any suit against Water in Illinois.

### Relevant Facts

Although not mentioned in the Motion to Dismiss, Water and Defendants began their relationship 17 years before the parties entered the written Distributor Agreement. Water began serving as the distributor of Everpure water filtration products in California and other western territories located in the United States in 1979.  For 29 years, Water sold instant hot water makers, instant chillers, and instant brewers  under the marks EVERHOT, EVERCOLD and EVERBREW ("Ever Brands") in a package with Everpure water filtration products under the mark "Everpure".   Water owned, and is licensed to use the Ever Brands marks.  This product line of Water provided instant hot or chilled water through the use of small tanks placed under the sink.  The Everpure water filters were sold as a package and functioned to filter the water used in the operation of Water's Ever Brand products.  The package of products was sold under the "Everpure" mark for almost thirty years.

Since 1980 Defendants knew and were informed that Water was using the trademarks "Everhot," "Evercold," and "Everbrew" in commerce.  In fact, Defendants strongly encouraged Water to develop a product package that included Water owned products to ultimately increase the volume of sales of Defendants' products.  In reliance

on the business relationship Water shared with Defendants, Water shared confidential marketing plans for Water's wholly owned products to facilitate an increase in sales of Defendants' Everpure water filtration products.

However, after Defendant Pentair, Inc. acquired a controlling interest in Everpure in 2004, Pentair planned on expanding its product base. These products included inferior water chillers and water instant heaters that performed the same or similar functions as Water's "Everhot," "Evercold" and "Everbrew" products. Defendants continued to consent to plaintiff's sale of its Ever Brands under the mark Everpure in the Western states. The First Amended Complaint alleges that Defendants plan on offering these new products under the name Everpure just as Water had done for the past 29 years in the Western states. The First Amended Complaint alleges that Defendants should be enjoined from marketing any products under the mark "Everpure" that will likely cause confusion in the marketplace and damage Water's goodwill and reputation in its Ever Brands marks.

Despite knowing that Water was fully authorized and permitted to market its own products in its territory under the mark Everpure in combination with its Ever Brands, Defendants contacted Water's customers and demanded that they cease selling the Ever Brands products or face economic retaliation from Defendants.

8

No claim in Plaintiff's First Amended Complaint turns on an interpretation of the underlying distribution agreement. Rather, the dispute arises from Defendants' anticompetitive market practices that threaten to destroy Plaintiff's business and Defendants use of the mark Everpure to create a likelihood of confusion in the market place and harm plaintiff's goodwill and reputation in its Ever Brands.

Nonetheless, Defendants' instant Motion to Dismiss, or in the alternative, to Transfer Venue is based on the unsupported contention that all claims in Water's Complaint stem from a dispute between the parties over the distribution agreement. In fact, no dispute is alleged at all over the distribution agreement. The very basis of Defendant's argument that each of plaintiff's claims involved issues arising under the distribution agreement is without merit, and no support exists for enforcing the forum selection clause against Water contained in that agreement.

## III.    LEGAL STANDARD

A motion to dismiss based on a forum selection clause is treated as a motion under Rule 12 (b) (3) to dismiss for improper venue. Federal law governs the validity of a forum selection clause. (*Manetti-Farrow, Inc. v. Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509, 513; see also *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.* (9th Cir. 1997) 114 F.3d. 848, 851 – we treat dismissal based on a forum selection clause like a dismissal

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

for improper venue under Rule 12 (b) (3)).  The trial court has discretion whether to decide this issue on affidavits submitted or to allow discovery and hold an evidentiary hearing.  (*Murphy v. Schneider National, Inc.*, (9th Cir. 2004) 362 F.3d. 1133, 1139-1140).  Because a 12 (b) (3) motion has a dramatic effect on plaintiff's forum choices, the trial court must 'draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.'  (*Murphy v. Schneider National, Inc.*, (9th Cir. 2004) 362 F.3d. 1133, 1138-1139).

## IV.    LEGAL ARGUMENT

### The First Amended  Complaint Moots the Motion to Dismiss

Defendants' argument has been rendered moot by Plaintiff's filing and service of a First Amended Complaint which does away with the breach of contract cause of action. None of the claims alleged in the amended complaint turn on any interpretation of the Distributor Agreement.  Given that the events giving rise to the claims in the First Amended Complaint do not arise from the Distributor Agreement, Defendants' motion is without factual support.

It is widely accepted that an amended pleading must re-allege jurisdictional and other allegations concerning venue that are essential to the claim because the amended complaint supersedes the original complaint and renders it of no legal effect, unless the

CLARK,  GOLDBERG  &  MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

amended complaint incorporates by reference portions of the prior pleading. (See *King v. Dogan* (5th Cir. 1994) 31 F.3d 344, 346; *Carver v. Condie* (7th Cir. 1999) 169 F.3d 469, 472). In the Ninth Circuit, the original complaint is superseded when the amended complaint is properly served. (See *Doe v. Unocal Corp.* (1998) 27 F.Supp. 1174, 1180, aff'd (9th Cir. 2001) 248 F.3d 915, 920).

Additionally, the Ninth Circuit has long held that claims in the original complaint that are not re-alleged in the amended complaint are no longer before the court. (*London v. Coopers & Lybrand* (9th Cir. 1981) 644 F.2d 811, 814). Thus, by serving Defendants with the amended complaint that does not seek any damages or other remedies arising out of the parties' contractual performances under the written agreement, it is clear that this dispute does not arise out of the parties distribution agreement, and thus the forum selection clause is inapplicable.

### Clause is Inapplicable Because No Contractual Interpretation is Required

Defendants' entire argument that the Central District of California is not the proper venue for this action is undone by Defendants' admission that "the critical issue between the parties is whether or not Water's competitive activities and failures to abide by the Agreement terms constitute a breach of the agreement and grounds for termination." (See Defendants' Amended Motion to Dismiss, Memorandum of Points

11

and Authorities, page 2:16-19). Defendants' own actions have eclipsed their motion, and made it moot, insofar as Defendants have now withdrawn their notice of termination, alleviating any breach of contract claim. Moreover, the critical issue between the parties has nothing to do with whether Water's activities constituted a breach or were grounds for terminating the agreement. The issues concern defendants' anti-competitive behavior and risk of harm to plaintiff's Ever Brands marks.

Defendants seek to take advantage of what they erroneously refer to as a "forum selection clause" contained in the distributor agreement. According to Defendants, paragraph 10.9 of the distributor agreement establishes proper venue in the Northern District of Illinois. Defendants' make this argument based on Plaintiff's inclusion of a breach of contract cause of action in the original complaint that was in response to Defendants' wrongful termination of the distribution agreement, which has been subsequently fully revoked.

The express language contained in paragraph 10.0 actually supports denial of the motion to dismiss.[2] The entire rationale for this provision is purportedly based upon the

---

[2] 10.9 Governing Law, Consent to Jurisdiction, Cumulative Remedies.
This agreement is made in and will be construed under the laws of the State of Illinois, where the executive offices of Everpure are located. Since Everpure and Master Distributor have a significant interest in consistent interpretation of this Agreement, and Everpure expects to have Select Master Distributors throughout the United States, Everpure and Master Distributor

12

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

parties "significant interest in consistent interpretation of this Agreement." Because no interpretation of the agreement is required, the so-called "forum selection" clause is inapplicable.

Moreover, Defendants rely on certain phrases that they have isolated from any proper context. Many times in their Motion, Defendants argue that Water has "irrevocably submitted" to the Illinois district without any reference to the external facts. Taken in context, it is clear that "venue" is not specified with any mandatory language that normally accompanies an enforceable "forum selection" clause. There is no language that states that jurisdiction is "exclusive" in the Northern District of Illinois.

The prevailing rule in the Ninth Circuit provides that where venue is specified with mandatory language the clause will be enforced if the contract is implicated in the alleged claims. (See *Docksider, Ltd. v. Sea Technology, Ltd.* (9th Cir. 1989) 875 F.2d 762, at 764 citing *Sterling Forest Associates v. Barnett-Range Corp.* (4th Cir. 1988) 840 F.2d 249, 251-52). When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction

irrevocably submit, and waive any objection either may have, to personal jurisdiction or venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois. All remedies provided in this agreement are cumulative and, except for forum selection under this Section, are in addition to any remedy otherwise available under applicable federal, state or local law.

13

exclusive.  (See *Docksider Ltd.*, supra, 875 F.2d 762 at 764 citing *Keaty v. Freeport Indonesia, Inc.* (5th Cir. 1974) 503 F.2d 955, 956).

Rather than containing "mandatory" language or establishing "exclusive" jurisdiction, the clause is ambiguous, requiring the parties to submit disputes in Illinois, where Everpure's executive offices are located.  Similarly, the clause does not contain requisite language that would suggest that the clause was intended to be applied broadly. Courts that have examined clauses that contain broad language such as "under, arising out of, or related in any way to this Agreement" have frequently held that the forum selection clause will likely apply.  (See *Coalition for ICAAN Transparency Inc. v. VeriSign, Inc.* (N.D.Cal.2006) 452 F.Supp.2d 924, 932 – noting that forum selection clause applied "only to 'legal proceeding[s] relating to this Agreement,' " and concluding that "[t]he plain meaning of this language must involve the" agreement itself to trigger the forum selection clause).  As such, it should not be enforced.

## Any Ambiguity or Lack of Clarity Must be Construed Against Drafter

It is widely held that where uncertainty obscures the meaning of a clause or an entire contract, all doubt must be resolved in favor of the non-drafter of the clause or contract.  (See *Wallis v. Princess Cruises, Inc.* (9th Cir. 2002) 306 F.3d 827 – opaqueness, like ambiguity, obscures the meaning of a contractual instrument, so that in

14

case of doubt, it is to be taken against the party that drew it.,.; see also *Insurance Co. of North America v. NNR Aircargo Service (USA), Inc.* (9th Cir. 2000) 201 F.3d 1111, 40 U.C.C. Rep. Serv. 2d 832 – Uncertainty in writing is construed most strongly against party who caused uncertainty to exist). Thus, here because the clause is purposefully ambiguous, it must be construed against the drafter and it cannot be enforced.

In short, the clause contained in the distribution agreement should be interpreted to mean that the parties will irrevocably submit and will not object to jurisdiction or venue in the Northern District of Illinois when a suit is initiated in that District that arises out of the parties' agreement. Absent language that the parties "shall be" bound to the jurisdiction and venue of a particular district or language that the parties agree on "exclusive" jurisdiction, the clause should not be enforced.

Even assuming *arguendo* that the provision is not premature as no action has been brought in Illinois, because the instant dispute does not turn on any interpretation of the distributor agreement, there is no need to enforce this non-mandatory provision.

Based solely on the allegations of the original complaint, which has now been superseded, Defendants insist that the resolution of the claim will depend upon interpretation of the parties' agreement. (See Defendants' Amended Motion to Dismiss,

15

Memorandum of Points and Authorities, page 7:20-22).  However, these contractual

clauses are not essential in the amended complaint which does not require an analysis of

the contractual performance by Water.

It is important to note that the allegations contained in Water's First Amended

Complaint properly assert that the scope of the dispute between the parties which is not

dependant on whether Water's activities constituted a breach of the written distribution

agreement.  None of Water's enumerated claims is dependent on the existence of the

written agreement.    None of Water's enumerated claims is dependent upon an

interpretation of the written agreement.  It is widely accepted that "to determine if a

forum selection clause will apply to tort claims [or other related claims], a court must

determine if "resolution of the claims relates to interpretation of the contract."  (See

*Manetti-Farrow, Inc. v. Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509, 514).  Thus,

because resolution of Water's claims does not relate to interpretation of the contract,

clause 10.9 should not be enforced.

In support of their argument Defendants rely upon the cases of *Argueta v. Banco*

*Mexicano* (9th Cir. 1996) 87 F.3d 320, 324; *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*

(9th Cir. 1997) 131 F.3d 1336; and *Kelso Enters. v. M/V Wisida Frost* (C.D. Cal. 1998) 8

F.Supp.2d 1197, 1207.  Yet the cases are inapposite.  First the instant contract does not

require actions be filed in Illinois.  Moreover, insofar as the cases cited by Defendants all required an interpretation of the parties' agreement as the central issue in the litigation, they are also distinguishable.

In *Argueta*, a dispute arose over promissory notes executed by the parties.  When Plaintiff travelled to Mexico to attempt to resolve the dispute he was arrested and charged with criminal fraudulent activity.  Upon his return to the United States, Plaintiff filed suit in federal court in the District of Arizona, alleging breach of contract, breach of the covenant of good faith and fair dealing, and a violation of the Racketeer Influenced Corrupt Organizations Act relating to the promissory notes and loan, and Plaintiff's common law causes of action related to the contract.

The *Argueta* court relied on the United States Supreme Court holding in *The Breman v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed.2d 513, as that case established law regarding the enforceability of forum selection clauses in international agreements.  Ultimately, the *Argueta* court decided the forum selection clause at issue was enforceable because Plaintiff had failed to make the requisite showing that he would not be given a fair hearing in a foreign jurisdiction and because Plaintiff's

//

//

17

First Amended Complaint incorporated by reference allegations related to the claims involving one of the promissory notes and ultimately required contractual interpretation. Neither *Argueta* nor *Breman* is on point here.

Likewise, the other cases relied upon by Defendants, *Fireman's Fund* and *Kelso*, also concerned disputes with foreign (internationally) based Defendants. In *Fireman's Fund*, when goods shipped from France to the United States arrived damaged, the bill of lading required that any disputes be litigated in Korea. Ultimately, the forum selection clause at issue in *Fireman's Fund* was held to be enforceable because Plaintiff did not establish that litigating in Korea would represent a serious inconvenience to Plaintiff. Nevertheless, the dispute in *Fireman's Fund* concerned the parties' disagreement over a bill of lading and required contractual interpretation.

In *Kelso*, the facts again concerned oceanic shipping of perishable goods which were subject to various bills of lading that resulted in a dispute when the goods were threatened with destruction after the loss of refrigerant on the transporting vessel. The *Kelso* court stated that because the dispute concerned a forum selection clause in an

//

//

//

18

international agreement, the Supreme Court's decision in *The Breman v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed.2d 513, was controlling. Clause 37 to the bill of lading required the enforceability of an English forum selection because the dispute essentially arose over the bill of lading.

The *Kelso* Appellants also argued that because their claims included tort claims, said claims did not relate to the interpretation of the alleged contract and the forum selection clause did not cover the dispute. The *Kelso* court disagreed and found Appellant's negligence claim directly related to the bill of lading because the tort claims stemmed from the delivery of the bananas, which was the purpose of the contract. (See *Kelso Enters. V. M/V Wisida Frost* (C.D. Cal. 1998) 8 F.Supp.2d 1197, at 1207). All of the cases relied upon by Defendants are inapplicable because: (1) they included provision which specifically identified the forum where all actions must be filed; and (2) involved interpretations of the contract as to the central issues in dispute. The citations are unpersuasive because the gravamon of Water's alleged claims do not turn on contractual interpretation of the distributor agreement.

The other obvious difference between the case citations relied upon by Defendants and the facts here is the wording of the forum selection clause itself. In *Argueta*, *Fireman's Fund* and *Kelso*, the forum selection clause included mandatory language that

19

stated the contract was governed by foreign law and "shall be determined" by the courts in a foreign jurisdiction. (See *Argueta*, supra 87 F.3d at 321 – stating "for the results of some possible controversy over a cancellation, fulfillment, interpretation or scope of the present contract, the parties expressly submit themselves to the Federal Tribunals or the State Courts of [Mexico]"; see also *Fireman's Fund*, supra 131 F.3d at 1337 – stating "the contract is governed by the law of Korea and any claim or dispute arising hereunder or in connection herewith shall be determined by the Courts in Seoul [Korea]"; see also *Kelso*, supra 8 F.Supp.2d at 1201 – stating "the contract evidenced by this Bill of Lading shall be governed by English law and any dispute hereunder shall be determined in England").

Here, the governing law clause (quoted in its entirety above) is substantially different from the clauses at issue in Arueta, Fireman's Fund, or Kelso. In the instant case, rather than mandating that any dispute "shall be determined" in an "exclusive" foreign jurisdiction and/or venue, the clause merely states that the parties will "waive any objection" to and will "submit" to foreign jurisdiction in Illinois when an action is brought in that district.

Similarly, Defendants' reliance on the decision in *Stewart Organization, Inc. v. Ricoh Corporation* (11th Cir. 1987) 810 F.2d 1066 is equally inapplicable because the

clause in the Stewart matter was unambiguous insofar as it required "exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy." (See *Stewart*, supra, 810 F.2d at 1067). Again, there is no comparable language in the purported forum selection clause at issue here that would require enforcement of the clause because the dispute does not involve a case or controversy arising under or in connection with the parties' agreement.

Defendants' cite *Bense v. Interstate Battery Sys.* (2nd Cir. 1982) 683 F.2d 718, 720, as the case law authority which they contend mandates enforcement of a forum selection clause in the context of anti-trust claims. However, the forum selection clause in *Bense* expressly stated the venue where all actions must be filed. The contract stated that "the exclusive venue of any suits or causes of action arising directly or indirectly from this AGREEMENT shall be in Dallas County, Texas." (Emphasis in original). The *Bense* court enforced the forum selection clause because it was clear that the dispute arose out of the parties' agreement and "the gist of the Bense's claim is that Interstate wrongfully terminated the agreement, thereby damaging Bense." (Id. at 720). While Defendants assert that all of Water's claims arise out of the parties dispute over the distribution agreement, this is unsupported by the facts alleged in the First Amended Complaint.

//

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

1    Water's causes of action do not depend on interpreting the distributor agreement

2    or whether one or both of the parties was in material breach of the contract. There are no

3

4    allegations by Water that Defendants have breached the Distributor Agreement and

5    Defendants have now fully revoked their wrongful and premature termination notice.

6    This case is not about Water's performance and conduct pursuant to the Distributor

7

8    Agreement, but rather Defendants' actions independent of their contractual obligations

9    stated in the Distributor Agreement.

10

11

12    Water filed this action in the Central District of California because "a substantial

13    part of the events or omissions giving rise to the claim occurred" in the Central District

14    of California pursuant to 28 U.S.C. 1391 (a). The Motion to Dismiss is without merit

15

16    and should be denied.

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28

22

1

## V.    CONCLUSION

2

3    For the above stated reasons, Defendant's Motion to Dismiss for Improper

4    Venue Pursuant to Rule 12 (B) (3) Or, in the Alternative, to Transfer Venue to the

5    U.S. District Court for the Northern District of Illinois should be denied in its

6    entirety.

7

8

9                                    Respectfully Submitted,

10    Dated: June 2, 2008            CLARK, GOLDBERG & MADRUGA

11

12                                    By:  _/s/ Robert D. Goldberg_____

13                                        ROGER W. CLARK

14                                        ROBERT D. GOLDBERG

15                                        JAMES N. KAHN
                                         Attorneys for Plaintiff

16                                        WATER, INC.

17    F:\WORK\07-1782\MOTIONS\OPPOSITION TO MOTION TO TRANSFER_004.DOC

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE – by *Electronic Filing and Service Pursuant To General Rule Order 08-02***
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is that of Clark, Goldberg & Madruga located at 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064.

I hereby certify that on June 2, 2008, a copy of the following document was filed electronically and served on the parties identified below: **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO: (1) DISMISS FOR IMPROPER VENUE PURSUANT TO RULE 12 (B) (3); OR, IN THE ALTERNATIVE, (2) TRANSFER VENUE TO THE US DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406 (A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Christopher Heck, Esq.                    Attorneys for Defendants,
**FOLEY & LARDNER, LLP**                  **EVERPURE, INC., EVERPURE,**
555 So. Flower Street                     **LLC, and PENTAIR, INC.**
Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
Email: check@foley.com

__X__ **(BY MAIL)** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary court of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on  June 2, 2008  at Los Angeles, California.

__X__ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

 KARLA P. GONZALEZ
Type or Print Name                        Signature

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077  (310) 478-0099 FAX

1  ROGER W. CLARK, ESQ. (#108982)
2  Email: rclark@cgold.cc
   ROBERT D. GOLDBERG, ESQ. (#137356)
3  Email: rgoldberg@cgold.cc
   JAMES N. KAHN, ESQ. (#231062)
4  Email: jkahn@cgold.cc
5  **CLARK, GOLDBERG & MADRUGA**
   11400 W. Olympic Boulevard, Suite 1150
6  Los Angeles, California 90064
7  Telephone:  (310) 478-0077
   Facsimile:   (310) 478-0099
8  Attorneys for Plaintiff, **WATER, INC.**
9

10
           **THE UNITED STATES DISTRICT COURT**
11
12     **FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES**

13  WATER, INC., a California corporation, )     CASE NO.: CV 08-00218 ABC (SS)
                                           )
14                                         )
              Plaintiff,                   )     **DECLARATION OF ROBERT D.**
15                                         )     **GOLDBERG IN SUPPORT OF**
                                           )     **PLAINTIFF'S OPPOSITION TO**
16        vs.                              )     **DEFENDANTS' MOTION TO**
                                           )     **DISMISS OR MOTION TO**
17  EVERPURE, INC., EVERPURE, LLC, )              **TRANSFER VENUE**
    PENTAIR, INC. and DOES 1 to 10, )
18  inclusive,                             )
                                           )     Date:      June 16, 2008
19                                         )     Time:      10:00 A.M.
20            Defendant(s)                 )     Courtroom: 680
                                           )
21                                         )
22  _____ )        Judge: The Hon. Audrey B. Collins

23
24
25
26
27
28

1

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## DECLARATION OF ROBERT D. GOLDBERG

I, Robert D. Goldberg, do hereby declare as follows:

1.    I am an attorney admitted to practice law in all the courts of the State of California, and am admitted to practice law before the Central District of California. I am an attorney in the law firm of Clark, Goldberg & Madruga counsel of record for Plaintiff WATER, INC. ("PLAINTIFF"). This declaration is submitted in support of Plaintiff's Opposition to Defendants' Motion to Dismiss for Improper Venue Pursuant to Rule 12 (B)(3); Or in the Alternative, to Transfer Venue to the United States District Court for the Northern District of Illinois Pursuant to 28 U.S.C. § 1406 (A).

2.    I have personal knowledge of the following facts and if called as a witness, I could and would competently testify to the matters set forth herein.

3.    On June 2, 2008, Water filed and served its First Amended Complaint on all counsel in this matter via the electronic system and United States mail. Attached hereto as Exhibit "A" is a true and correct copy of Water's First Amended Complaint.

//

//

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

2

4.    Prior to Everpure filing the instant Motion to Dismiss on May 14, 2008, I had a conversation with Defendants' local counsel, Christopher Heck, and advised him of Plaintiff's intent to file a First Amended Complaint. During that conversation I also advised Mr. Heck that the allegations in the First Amended Complaint would make defendants' anticipated motion to dismiss for improper venue moot. Nevertheless, Defendants filed their Motion to Dismiss Pursuant to 12 (B) (3) or Motion to Transfer Venue Pursuant to 28 U.S.C. 1406 (a). Attached hereto as Exhibit "B" is a true and correct copy of my letter to Christopher Heck, Esquire that I caused to be sent to defense counsel on May 22, 2008.

5.    Attached hereto as Exhibit "C" is a true and correct copy of a letter from Christopher J. Heck to me dated May 22, 2008 that I received.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this 2nd day of June, 2008, at Los Angeles, California.

_/s/ Robert D. Goldberg_____
ROBERT D. GOLDBERG

F:\WORK\07-1782\MOTIONS\GOLDBERG DECLARATION 002.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

3

# EXHIBIT "A"

ROGER W. CLARK, ESQ. (#108982)          Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)      Email: rgoldberg@cgold.cc
JAMES N. KAHN, ESQ. (#231062)           Email: jkahn@cgold.cc
**CLARK, GOLDBERG & MADRUGA**
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Tel: (310) 478-0077  Fax: (310) 478-0099

Attorneys for Plaintiff, **WATER, INC.**

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation, )<br><br>Plaintiff, )<br><br>vs. )<br><br>EVERPURE, INC., EVERPURE, LLC, )<br>PENTAIR, INC. and DOES 1 to 10, )<br>inclusive, )<br><br>Defendant(s) ) | CASE NO.: CV08-00218 ABC (SSx)<br><br>**FIRST AMENDED COMPLAINT OF WATER, INC. FOR:**<br>1) **VIOLATION OF SHERMAN ANTI-TRUST ACT, 15 U.S.C. §1**<br>2) **VIOLATION OF CLAYTON ACT**<br>3) **VIOLATION OF THE LANHAM ACT; 15 U.S.C. SECTION 1125(A)**<br>4) **VIOLATION OF CARTWRIGHT ACT**<br>5) **VIOLATION OF THE UNFAIR PRACTICES ACT**<br>6) **VIOLATION OF UNFAIR**<br>7) **ESTOPPEL**<br>8) **DECLARATORY RELIEF**<br>9) **INTENTIONAL INTERFERENCE WITH CONTRACT**<br>10) **NEGLIGENT INTERFERENCE WITH CONTRACT**<br>11) **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>12) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>13) **INJUNCTIVE RELIEF**<br><br>**[JURY TRIAL REQUESTED]** |

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

1

Plaintiff, WATER, INC, a California corporation (hereinafter referred to as "WATER"), hereby brings this Complaint against EVERPURE, INC., EVERPURE, LLC, PENTAIR, INC. (sometimes referred to herein as "DEFENDANTS"), and DOES 1 to 10, and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action brought under the Sherman Anti-Trust Act, 15 U.S.C. §1, Clayton Act, 15 U.S.C. §14, and state claims for monetary damages and equitable relief under supplemental jurisdiction.  This Court has federal question jurisdiction over the subject matter of this action pursuant to Title 18 U.S.C. §1964 and 28 U.S.C. Section 1331.  Jurisdiction also exists under § 1332 based upon complete diversity of citizenship as WATER is a citizen of California.  WATER is a corporation organized and existing under the laws of the California with its principal place of business in the State of California.  WATER is a distributor of water filtration devices and water delivery systems located within the State of California and sell its products to consumers in California, and in the Western United States. WATER conducts its business in the State of California, generates revenues from operations in the State of California, and supervises its employees in the State of California. Defendants EVERPURE, LLC and EVERPURE, INC. are citizens of Illinois.  Defendant PENTAIR is a corporation organized and existing under the laws of Minnesota, with its principal place of business

2

located in Golden Valley, Minnesota. Defendant EVERPURE, LLC maintains its corporate headquarters at Hanover Park, Illinois, and PENTAIR, INC. maintains its corporate headquarters at Golden Valley, Minnesota. The amount in controversy exceeds $75,000.00 (Seventy-Five Thousand Dollars) exclusive of interest and costs. This court accordingly has jurisdiction of this action.

2.    Venue in this District is proper under Title 18 U.S.C. §1965 as WATER is headquartered this District. Venue in this District is also appropriate under Title 28, U.S.C., Section 1391(a) since a substantial part of the events giving rise to this action occurred within this District, including the sale of Everpure products and water delivery systems.

### THE PARTIES

3.    Plaintiff WATER is a corporation incorporated under the laws of the State of California, and which at all relevant times has had its principal place of business at 1044 E. Del Almo Blvd, Carson, California 90746.

4.    Defendant EVERPURE, LLC is a limited liability company which maintains its principal place of business at 1040 Muirfield Drive, Hanover Park, Illinois 80133. Upon information and belief, EVERPURE, LLC is the success-in-interest of

3

Exhibit A Page 6

EVERPURE, INC. Hereinafter, both companies shall be collectively referred to as "EVERPURE"

5.    WATER is informed and believes, and on that basis alleges, that EVERPURE and PENTAIR are alter egos of each other. Hereinafter, both companies shall collectively be referred to as "EVERPURE" or "Defendants". WATER is further is informed and believes that there exists a unity of interest between and among these defendants so that it would be unjust to recognize any legal distinction between them or differentiate one from another.    PENTAIR has so dominated and controlled EVERPURE that the wrongdoing of each should be imputed to the other.

6.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when same is ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that plaintiff's injuries as herein alleged are proximately caused by such defendants.

//

//

4

Exhibit _A_ Page _7_

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

7.      Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each of the defendants was the agent and/or employee and/or joint venturer and/or partner of each of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of such agency/employment/joint venture/partnership and with the permission and consent of his/her co-cross-defendants. Moreover, plaintiff alleges that defendants EVERPURE, PENTAIR and DOES 1 to 10, conspired together regarding the unlawful restraint of trade and competition as more specifically alleged herein. By entering into an agreement, express or implied, regarding the unlawful restraint of trade and competition, each defendant is liable for the acts of his co-conspirators and the resulting damages to plaintiff. Moreover, DOES 1 to 10, aided and abetted defendants regarding the unlawful restraint of trade and competition by knowingly by knowingly providing substantial assistance as more specifically alleged herein.

## FACTUAL BACKGROUND

8.      Beginning in 1979, WATER began serving as the exclusive distributor of EVERPURE water filtration products in California and other Western states, including Arizona, Colorado, Montana, Nevada, New Mexico, Utah, Wyoming and parts of Idaho and Texas (hereinafter "Western states") under a verbal "hand shake" agreement. Under the verbal agreement as reaffirmed from time to time by the conduct of the parties, WATER had the exclusive use of the trade mark "Everpure" to market and sell filtration

Exhibit _A_ Page _8_

products in the Western states, and WATER was unrestricted in its use of the "Everpure" mark in conjunction with the sale of its own proprietary product line of products. WATER'S trademarks, such as "EVER HOT", "EVER COLD" and "EVER BREW", associated with its proprietary line of products are sometimes collectively referred to herein as "Ever Brands".

9.     Since 1980, WATER has marketed in commerce products designed, among other things, to provide instant hot or chilled water to the faucet through the use of small tanks placed under the sink. These products include water systems that brew, soften and dispense water through a dedicated faucet.     WATER used the marks EVERHQT, EVERCOLD and EVERBREW, among others, to market these products in commerce.

10.     WATER first placed its products into commerce as follows: EVERHOT in 1980, EVERCOLD in September 1989, and EVERBREW in August of 1996. WATER has sold its EVERHOT, EVERCOLD and EVERBREW products continuously since they were introduced into the marketplace. WATER is the owner of these registered trademarks, or is authorized to use these trademarks in commerce. The trademark registration number of EVERCOLD with the U.S. Patent and Trademark office is 76348721 with a registration date of February 4, 2003. The trademark registration number of EVERBREW with the U.S. Patent and Trademark Office is 2695072 with a registration date of March 11, 2003. WATER a licensee of Bradford White Corporation

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

6

1   for the trademark EVERHOT, with registrations number 500,197, 1,056,545 and

2   2,989,441. *See* Exhibit "1".

3

4

5       11.    At the request of Everpure, Inc, WATER agreed to sign a written agreement

6   in July 1, 1996 with Everpure, Inc. (hereinafter "the Distributor Agreement") which

7   reduced to writing some, but not all of the business relationship between the parties.

8

9   The Distributor Agreement did not reduce to writing the verbal agreements between the

10  parties, ratified by practice and performance, of WATER'S right to the use of the

11  "Everpure" trademark to market, distribute and sell water filtration products in

12  combination with its own "Ever Brands" as it had done continuously since 1979. Water

13  gave notice of termination of the Distributor Agreement on May 22, 2008.

14

15

16

17      12.    At all relevant times alleged herein, defendant EVERPURE, INC. knew and

18  was informed that WATER was using the trademarks EVERHOT, EVERCOLD and

19  EVERBREW in commerce. At all relevant times alleged herein defendants, and each of

20  them, encouraged WATER to market, distribute and sell the EVERPURE water filtration

21  devices under the trademark "Everpure" as part of a product package of Ever Brands

22  products in order to increase the sales of Defendants' EVERPURE products, and

23

24  expressly and implicitly approved of the marketing, distribution and sale of the

25  EVERPURE water filtration device under the trademark "Everpure" as part of this

26  product package offered by WATER. At all relevant times, EVERPURE, INC. ratified

27

28

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11-400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

7

Exhibit **A** Page **10**

WATER'S use of the trademark "Everpure" to market, distribute and sell its Ever Brands products as part of a package of products with the "Everpure" filtration devices, and otherwise acquiesced in WATER'S exclusive use of the "Everpure" trademark in this manner in the Western states for almost thirty years.

13.     In reliance upon the approval, authorization and consent of Defendants, and each of them, to sell, market and distribute the EVERPURE water filtration devices under the trademark "Everpure" as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, WATER commenced selling, marketing and distributing the products in conjunction with the "Everpure" mark and has continuously and exclusively sold, marketed and distributed to the present date the EVERPURE water filtration devices under the mark "Everpure" in the Western states as part of a package with its EVERHOT, EVERCOLD and EVERBREW products.

14.     Over the years that WATER had developed its marketing plan which incorporated the "Everpure" trademark as an integral part and linchpin of its promotion and marketing of the package of Ever Brands products, Defendants, and each of them, through their statements and conduct, led WATER to understand and believe that it had the right to use of the "Everpure" mark together with the Ever Brands and that such right had been "grandfathered in" over time.

//

Exhibit A Page 11

15.    In further reliance upon the approval, authorization and consent of Defendants, and each of them, to sell, market and distribute EVERPURE water filtration devices under the trademark "Everpure" as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, and based upon the statements and conduct of EVERPURE that WATER'S right to use of the "Everpure" mark with its Ever Brands had been "grandfathered in", WATER expended millions of dollars in marketing, promotions, and advertising the "Everpure" trademark.

16.    At all relevant times, WATER continued to sell, market and distribute its EVERHOT, EVERCOLD and EVERBREW products together as part of a package with the EVERPURE water filtration devices under the trademark "Everpure" within the Western states as it had done since 1979 with the full knowledge, consent, and approval of EVERPURE.

17.    As it had done since 1979, WATER, at all times with the full knowledge, consent, and approval of EVERPURE and PENTAIR, continued to market, distribute and sell EVERPURE water filters using the trademark "Everpure" as part of a package complimenting WATER'S EVERHOT, EVERCOLD and EVERBREW products.

18.    In further reliance upon the approval, authorization and consent of Defendants, and each of them, to sell, market and distribute EVERPURE water filtration

9

Exhibit _A_ Page _12_

devices under the trademark "Everpure" as part of a package that included EVERHOT, EVERCOLD and EVERBREW products of WATER, and based upon the statements and conduct of EVERPURE that WATER'S right to use of the "Everpure" mark together with the Ever Brands had been "grandfathered in", WATER developed methods of distribution of the product and a proprietary marketing plan around which it developed its business.

19.　　In further reliance upon the statements and conduct of defendants, and each of them, which led WATER to reasonably believe that it would have the right to use the "Everpure" mark as long as it wanted in association with its package of Ever Brands products, and in order to coordinate the sale of EVERPURE filtration products, WATER shared with EVERPURE and PENTAIR its proprietary marketing plan for its EVERHOT, EVERCOLD and EVERBREW products.　　WATER disclosed its confidential marketing plan to EVERPURE solely to assist other EVERPURE residential distributors marketing of EVERPURE water filtration products. Defendants, and each of them, induced WATER to share its proprietary marketing plan, through its statements and conduct intended to lead WATER to believe that it would have the right to the indefinite use of the "Everpure" trademark in association with the package of Ever Brands products.

//

//

10

Exhibit _A_ Page _13_

20.     In further reliance upon its reasonable belief that it would have the right to the use of the "Everpure" trademark as long as it wanted, WATER entered into a license agreement with Bradford White for the use of the trademark EVER HOT for a substantial and material sum.   WATER would not have entered into the license agreement if it had know it would not be able to use the "Everpure" mark.

21.     Through WATER'S use of the trademark "Everpure" in commerce over the past 29 years in the Western states, the trademark has come to be associated in the market place with Water, Inc. and Water, Inc's Ever Brands products.

22.     Upon information and belief, EVERPURE and PENTAIR have misappropriated WATER'S marketing plan to distribute new products that it has begun to sell under the EVERPURE mark in direct competition with WATER'S "Ever Brands" products.   These products, which compete directly with EVERHOT and EVERCOLD are not manufactured by EVERPURE, but have been recently added to EVERPURE'S product line.

23.     After PENTAIR, INC. acquired a controlling interest in EVERPURE in or around 2003-2004, it began to expand the products available for sale by its Master Distributors.  Among these products, were products that performed the same or similar function  as  WATER'S  EVERHOT  and  EVERCOLD  products.   Moreover,

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

notwithstanding the addition of these products to its product line, PENTAIR and EVERPURE implicitly and expressly authorized, encouraged and consented to WATER'S marketing, distribution and sale of EVERPURE water filtration devices under the mark "Everpure" as part of a package with EVERHOT, EVERCOLD, and EVERBREW.

24.    EVERPURE and PENTAIR attempted to compel and coerce WATER to abandon its sales of its EVERHOT, EVERCOLD and EVERBREW products in exchange for payments worth only a small fraction of the value of these products in the marketplace, and in this way attempted to unlawfully suppress competition and vastly increase its sales volume and market share.

25.    Upon information and belief, Defendants, and each of them, have contacted WATER'S established customers, and attempted to coerce and threaten these customers not to do business with WATER or it would not sell its products to them.

26.    Upon information and belief, Defendants, and each of them, are using or intend to use the trademark "Everpure" in the Western states in association with similar products that WATER had marketed under the trademark "Everpure" for thirty years. Upon information and belief, these products are inferior in design and function to products WATER has sold under the trademark "Everpure." As a direct and proximate

12

Exhibit _A_ Page _15_

result of the conduct of defendants, and each of them, Defendants sale of water chillers and instant hot product under the trademark "Everpure" has the likelihood of creating confusion in the marketplace, and damage WATER'S reputation and goodwill in its Ever Brands trademarks. Unless restrained and enjoined, WATER will be irreparably harmed.

27.    Upon information and belief, the threats and coercion of Defendants, and each of them, are the direct and proximate cause of damages to WATER, and the loss of revenue. Moreover, unless restrained and enjoined, these threats and coercion will likely continue, and unless restrained and enjoined will forseeably cause harm to plaintiff.

28.    WATER is informed, and believes, and thereon alleges that each of the acts hereinabove committed by defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of WATER as defined by California <u>Civil Code</u> Section 3294. WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing defendants, and deterring future conduct by them as herein alleged, in a sum according to proof at time of trial.

//

//

//

//

13

Exhibit _4_ Page _16_

## FIRST CLAIM FOR RELIEF

### (For Violations of the Sherman Anti-Trust Act, 15 U.S.C. §1 and §2

### against all Defendants)

29.     Plaintiff repeats, re-pleads and re-alleges the allegations contained in each and every preceding paragraph as though set forth in full.

30.     Defendants conduct, and each of them, threaten illegal constraints on trade in violation of Section 1 of the 15 U.S.C. §1.  Section 1 provides, *inter alia*:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

31.     Defendants, through their conduct, acts and omissions as further alleged herein have attempted to monopolize the market for water delivery systems sold by WATER through coercive tactics.

32.     Defendants have employed threats and intimidation to reduce competition and obtain an unfair advantage in commerce through monopolization of the market.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Exhibit *A* Page 17

**(Remedies)**

33.    Pursuant to 15 U.S.C. §26, WATER seeks to enjoin and restrain Defendants, and each of them,  from engaging in the illegal constraints on trade in violation of federal law; including without limitation, any interference with WATER'S sale of its Ever Brands products EVERHOT, EVERCOLD or EVERBREW to retailers or customers, or any other product.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

34.    WATER also seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. Section 15.

35.    To the extent Defendants prohibit or interefere with WATERS' ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

## SECOND CLAIM FOR RELIEF

**(For Violation of Clayton Act 15 U.S.C. § 14 against all Defendants)**

36.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

Exhibit *A* Page *18*

15

37.    15 U.S.C. Section 14 of the Clayton Act provides:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities whether patented or unpatented, for use, consumption, or resale within the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

38.    Defendants, and each of them, are in violation of the Clayton Act, 15 U.S.C §14 by refusing to sell its products to existing WATER customers unless these customers agree to stop purchasing product from WATER, and cease selling WATER'S Ever Brands in the marketplace, and instead sell only the EVERPURE water delivery

16

Exhibit _A_ Page _19_

products.    Defendant has employed coercive tactics in order to obtain competitive advantages and restrain trade.

39.    Defendants conduct threatens a constraint on trade and amounts to price fixing, in order to obtain competitive advantage for its own products.

40.    Defendants, and each of them, have tied the sales of its products to WATER'S existing customers upon WATER'S existing customers' agreement to cease purchasing WATER'S   proprietary Ever Brands products which compete in the marketplace with new products recently listed by EVERPURE.

**(Remedies)**

41.    Pursuant to 15 U.S.C. §26, WATER seeks to enjoin and restrain Defendants, and each of them, from engaging in the illegal constraints on trade in violation of federal law; including without limitation, 1) withholding for sale its products or any other coercive acts in order to prevent or prohibit WATER'S existing customers from doing business with WATER;   and 2) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

Exhibit *A* Page *20*

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

42.    WATER also seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. Section 15.

43.    To the extent Defendants refuse to do business with WATER'S existing customers in order to prevent them from doing business with WATER, or otherwise prohibit or interefere with WATERS' ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities.

## THIRD CLAIM FOR RELIEF

### (For Violation of the Lanham Act, 15 U.S.C. Section 1125(a)

### Against All Defendants)

44.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

45.    As alleged herein, WATER is the owner of the EVERCOLD and EVERBREW trademarks, and a licensee of the EVERHOT trademark. WATER has also been the exclusive licensee of the trademark "Everpure" when used in association with the Ever Brands products in the Western states for the past 29 years.

//

18

Exhibit _A_ Page _21_

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

46.   Upon information and belief, Defendants, and each of them, are using or intend to use the trademark "Everpure" in the Western states in association with products that are likely to cause confusion among the public with the Ever Brands products WATER has marketed under the trademark "Everpure" for thirty years.   Upon information and belief, these products are inferior in design and function to products WATER has sold under the trademark "Everpure." As a direct and proximate result of the unlawful conduct of defendants, and each of them, Defendants sale of water chillers and instant hot product under the trademark "Everpure" has the likelihood of creating confusion in the marketplace, and damage WATER'S reputation and goodwill.  Unless restrained and enjoined, WATER will be irreparably harmed.

47.   Plaintiff is also entitled to recover from defendants under the statute its reasonable attorneys fees and costs expended to enjoin violations of the act.

## FOURTH CLAIM FOR RELIEF

**(For Violation of the Cartwright Act, Cal. Business & Professions Code §16700**

**Against All Defendants)**

48.   Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

Exhibit _A_ Page 22

49. Defendants refusal to deal or continue to sell its line of products to WATER'S existing customers if they continue to do business with WATER is unlawful and discriminatory resulting in the restraint of trade in violation of the Cartwright Act.

50. WATER also seeks treble damages under Section 16750 of the Cartwright Act.

**(Remedies)**

51. Pursuant to Section 16750, WATER seeks to enjoin and restrain Defendants, and each of them, from any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers.

52. To the extent Defendants refuse to do business with WATER customers in order to prevent them from doing business with WATER or otherwise prohibit or interefere with WATER'S ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants' illegal activities in an amount to be proven at time of trial.

53. WATER is entitled to prejudgment interest under Section 16761 for any and all damages proximately caused by defendants, as alleged herein.

Exhibit _A_ Page _23_

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## FIFTH CLAIM FOR RELIEF

**(For Violation of the Unfair Practices Act, Cal. Business & Professions Code**

**Section 17000 Against All Defendants)**

54.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

55.    Defendants refusal to deal with WATER customers who do business with WATER is unlawful and discriminatory resulting in the restraint of trade in violation of the UPA.

56.    Defendants, through its conduct, have attempted to monopolize the market for water delivery systems sold by WATER through its coercive tactics in further violation of the UPA.

57.    Defendants, and each of them, have employed threats and intimidation to reduce competition and obtain an unfair advantage in commerce in violation of Section 17046.

58.    WATER also seeks treble damages under Section 17082 of the Cartwright Act, and the recovery of its attorney's fees and costs.

Exhibit _A_ Page _24_

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 Fax

**(Remedies)**

59.    Pursuant to Section Business & Professions Code Sections 17070 and 17078, WATER seeks to enjoin and restrain Defendants, and each of them,  from: 1) withholding for sale its products or any other  coercive acts in order to prevent or prohibit WATER'S existing customers from doing business with WATER;    2) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers; and 3) creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years.  WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities alleged herein.

60.    To the extent Defendants refuse to do business with WATER customers in order to prevent them from doing business with WATER or otherwise prohibit or interefere with WATER'S ability to supply its own EVERHOT, EVERCOLD and EVERBREW products to its customers, WATER will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants' illegal activities in an amount to be proven at time of trial.

//

//

//

Exhibit _A_ Page 25

# SIXTH CLAIM FOR RELIEF

## (For Violation of the Unfair Competition Act, Cal. Business & Professions Code Section 17200 against All Defendants)

61.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

62.    Defendants, and each of them, have engaged in a pattern and practice of unlawful, fraudulent, unfair and deceptive business activities, as further alleged herein. Defendants, and each of them, have violated the anti-trust statutes alleged herein, as well as their legal duties owed to WATER, as further alleged herein.  Moreover, without WATER'S consent and authorization, Defendants, and each of them, have misused and otherwise misappropriated WATER'S confidential and proprietary marketing plan for its own use, and sale of products directly competing with WATER'S line of products EVERHOT, EVERCOLD, and EVERBREW.

63.    As a direct and proximate result of these unlawful, fraudulent, unfair and deceitful business activities, as alleged herein, WATER is threatened with imminent harm, and likely will suffer damages as alleged herein.  WATER seeks restitution and disgorgement on behalf of itself and all others similarly situated all revenues earned by Defendants acquired by such unfair competition as described herein.

23

Exhibit _A_ Page _26_

64.     WATER is informed, and believes, and thereon alleges that the conduct of Defendants alleged herein is continuous and ongoing, and that the public in general faces harm and injury as a result of these unlawful, fraudulent, unfair and deceptive practices.

65.     On behalf of itself and others similarly situated, WATER seeks to enjoin and restrain Defendants from engaging in the unfair and fraudulent business practices alleged herein pursuant to California Business & Professions Code §17203; and obtain all other remedies available under law to prevent Defendants' unlawful, fraudulent, unfair and deceptive business practices alleged herein.

66.     On behalf of itself and others similarly situated, WATER seeks restitution and disgorgement of all money paid to Defendants related to violations of the Unfair Competition Act.

## SEVENTH CLAIM FOR RELIEF

### (For Estoppel against All Defendants)

67.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

//

//

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

Exhibit *4* Page *27*

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

68.    As alleged herein, for almost 30 years WATER used the trademark "Everpure" in association with its package sale of Ever Brands products in the Western states.  WATER was the exclusive user of the "Everpure" mark used in association with the Ever Brands products.

69.    In reliance on the right to use the "Everpure" mark in association with its Ever Brands products, WATER changed its position and expended millions of dollars promoting the mark, and entered a license agreement worth substantial sums for the right to use the mark Ever Hot.  Moreover, WATER created a proprietary marketing plan for sale of the Ever Brands products in conjunction with the "Everpure" mark.

70.    Moreover, based upon the statements and conduct of defendants, and each of them, WATER was led to believe that it had the exclusive right to use the "Everpure" mark indefinitely in association with its Ever Brands products in the Western states.

71.    WATER changed its position to its detriment in reliance upon the conduct and representations of Defendants.    Based upon Defendants' conduct and representations, WATER reasonably believed that defendants would not use the mark "Everpure" in the Western states to market products that would cause a likelihood of confusion in the marketplace with the Ever Brands.

Exhibit *A* Page *28*

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

72.     Therefore, Defendants must be estopped from creating a likelihood of confusion among the public by marketing competing and substantial similar product in the Western states under the same name, "Everpure", the same mark WATER has used for almost thirty years in relation to its Ever Brands products.    Estoppel is just and appropriate to protect WATER's Ever Brands marks.  Defendants must not be permitted to suddenly change course all to the detriment and prejudice of WATER.

## EIGHTH CLAIM FOR RELIEF

### (For Declaratory Relief against All Defendants)

73.     Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

74.     An actual controversy has arisen between the parties regarding Defendants' use of the mark "Everpure" in association with products that create a likelihood of confusion, by being substantially similar and competing with WATER'S Ever Brands products in the Western states.  WATER contends that defendants' use of "Everpure" in association with products that compete with the Ever Brands will harm WATER's Ever Brands marks and cause confusion in the marketplace, resulting in irreparable harm to WATER'S reputation and goodwill.   On the other hand, upon information and belief, Defendants deny plaintiff has any such rights.

Exhibit _4_ Page _29_

75.    WATER desires a judicial determination of the rights and liabilities of WATER and Defendants with respect to Defendants' right to use of the mark "Everpure" when used in association with products that will create a likelihood of confusion in the marketplace with WATER'S Ever Brands products that plaintiff has offered for sale in the Western states for almost 30 years under the mark "Everpure."

## NINTH CLAIM FOR RELIEF

## (For Intentional Interference with Contractual Relations against All Defendants)

76.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

77.    At all relevant times mentioned herein, Defendants, and each of them, owed Plaintiff a duty to act reasonably and prudently and to refrain from injuring Plaintiff or its reputation, or interfering with its contractual relationships or prospective contractual relationships.  Upon information and belief, Defendants knew and were made aware that WATER had contractual agreements with retailers, consumers and wholesalers for its Ever Brands products.

//

//

Exhibit *A* Page *30*

27

78.    Defendants, and each of them, have intentionally interfered with WATER'S contractual and business relationships by threatening Plaintiff's existing customers that it would not do business with them if they purchased plaintiff's Ever Brands and would prevent WATER from selling its products, and further result in the termination of WATER'S contractual relationships with its business partners and customers.

79.    As a direct and proximate cause of defendants acts and omissions as alleged herein, WATER has suffered the loss of sales from its retailers, wholesalers and consumers, and damage to its business reputation and goodwill in an amount to be proven at time of trial.

80.    WATER is informed, and believes, and thereon alleges that each of the acts hereinabove alleged to have been committed by Defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of WATER as defined by California Civil Code Section 3294.   WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing Defendants, and deterring future conduct by them as hereinbefore alleged, in a sum according to proof at time of trial.

//

//

//

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077  (310) 478-0099 FAX

Exhibit _A_ Page _31_

# TENTH CLAIM FOR RELIEF

**(For Negligent Interference with Contractual Relations against All Defendants)**

81.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

82.    At all relevant times mentioned herein, Defendants, and each of them, owed Plaintiff a duty to act reasonably and prudently and to refrain from injuring Plaintiff or its reputation, or interfering with its contractual relationships or prospective contractual relationships.  Upon information and belief, Defendants knew or should have that WATER had contractual agreements with retailers, consumers and wholesalers for its Ever Brands products.

83.    Defendants, and each of them, threatened to withheld the sale of their products unless plaintiff's customers agreed not to do business with plaintiff.  At all relevant times, Defendants knew, or had reason to know, that its conduct would prevent WATER from selling its products to its customers, and further result in the termination of WATER'S contractual relationships with its business partners and customers.

//

//

//

Exhibit _A_ Page _32_

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

84.    Upon information and belief, Defendants negligently and without justification or good cause, notified plaintiff's customers that they should not do business with plaintiff, and as a result of this notification,   WATER'S contractual relationships with its retailers, wholesalers and consumers have been impaired or terminated.

85.    As a direct and proximate cause of the negligence of defendants as alleged herein, WATER has suffered the loss of sales from its retailers, wholesalers and consumers, and damage to its business reputation and goodwill in an amount to be proven at time of trial.

## ELEVENTH CLAIM FOR RELIEF

## (For Negligent Interference with Prospective Economic Advantage against All Defendants)

86.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

87.    Defendants, and each of them, knew or should have known of the economic relationships between WATER and its retailers, wholesalers and consumers, for EVERPURE water filtration products. Defendants knew or should have known that WATER could not make sales of the Ever Brands products to its retailers, wholesalers

Exhibit _A__Page _33_

and consumers after Defendants threatened not to do business with them if they sold plaintiff's products. Upon information and belief, negligently and without due cause or justification notified third parties, including WATER'S retailers, wholesalers and consumers, not to do business with WATER, or face the consequences.

88.    As a direct and proximate result of the negligence of Defendants, WATER has been denied the benefits of its economic relationships developed for the sale of its Ever Brands products, and WATER has suffered damages in an amount to be determined prior to or at the time of trial.

## TWELFTH CLAIM FOR RELIEF

**(For Intentional Interference with Prospective Economic Advantage against All Defendants)**

89.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

90.    Defendants, and each of them, knew or should have known of the economic relationships between WATER and its retailers, wholesalers and consumers, for its Ever Brands products. Defendants knew or should have known that WATER could not make sales of the Ever Brands products to its retailers, wholesalers and consumers after

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

Exhibit _4_ Page _34_

Defendants threatened these businesses not to sell plaintiff's products. Upon information and belief, Defendants intentionally and willfully notified third parties, including WATER'S retailers, wholesalers and consumers, that they must not do business with plaintiff or face the consequences.

91.    As a direct and proximate result of the intentional conduct of Defendants, WATER has been denied the benefits of its economic relationships developed for the sale of its Ever Brands products, and WATER has suffered damages in an amount to be determined prior to or at the time of trial.

92.    Upon information and belief, Defendants, and each of them, have acted maliciously, and upon information and belief have maliciously notified third parties and business contacts of WATER that they should not do business with WATER or face economic penalties. WATER is informed, and believes, and thereon alleges that each of the acts hereinabove alleged to have been committed by Defendants were intentional and also constituted "fraud, oppression, and/or malice" and were taken in conscious disregard of the rights of CHARTER as defined by California <u>Civil Code</u> Section 3294. WATER is therefore entitled to and herein seeks an award of punitive and exemplary damages for the purposes of punishing Defendants, and deterring future conduct by them as hereinbefore alleged, in a sum according to proof at time of trial.

Exhibit __A__ Page __35__

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0177   (310) 478-0099 FAX

## THIRTEENTH CLAIM FOR RELIEF

### (For Preliminary and Permanent Injunction against All Defendants)

93.    Plaintiff repeats, repleads and realleges the allegations contained in each and every preceding paragraph as though set forth in full.

94.    WATER changed its position to its detriment in reliance upon the conduct and representations of Defendants as alleged herein.  Based upon Defendants' conduct and representations, WATER had the exclusive license to sell the EVERPURE filtration device under the mark "Everpure" as part of a package of its Ever Brands products.

95.    Therefore, Defendants must be enjoined and estopped from suddenly changing course and using the "Everpure" mark to selling products likely to cause confusion among the public with respect to competing or substantially similar products as plaintiff has done for almost 30 years in the Western states.  An injunction is necessary to protect Plaintiff's Ever Brands marks.

96.    Upon information and belief, Defendants, and each of them, are using or intend to use the trademark "Everpure" in the Western states in association with substantially similar or competing products that WATER had marketed under the trademark "Everpure" for thirty years.  Upon information and belief, these products are

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 Fax

Exhibit _4_ Page_36_

inferior in design and function to products WATER has sold under the trademark "Everpure." As a direct and proximate result of the unlawful conduct of defendants, and each of them, Defendants sale of water chillers and instant hot product under the trademark "Everpure" has the potential of creating confusion in the marketplace, and damage WATER'S reputation and goodwill. Unless restrained and enjoined, WATER will be irreparably harmed.

97.    In reliance on its right to use the "Everpure" mark as part of a package of WATER'S products, WATER established markets for the products, developed marketing plans, and expended substantial resources all based upon its ability to offer the package of products in the marketplace with its Ever Brands marks.

98.    The California Unfair Competition Law, California, Business & Professions Code, Section 17200 *et seq.*, forbids unlawful, unfair or fraudulent business practices. The conduct of Defendants, as alleged herein, is unlawful in that said conduct violates implied-in-fact exclusive license agreement, and federal and state anti-trust laws, as alleged herein.

99.    The conduct of Defendants is unfair in that Defendants led WATER to believe, all to the detriment of WATER, that it had the exclusive right to use the "Everpure" mark with the EVERPURE water filtration device as part of a package of

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

34

Exhibit *A* Page *37*

products offered by WATER. WATER requests an injunction under the authority of Section 17203 of the California, Business & Professions Code, and the federal and state anti-trust statutes.

100.    Unless Defendants are restrained and enjoined by this court, WATER will not only suffer loss of immediate revenue, but will also suffer irreparable injury to its reputation and good will.

101.    WATER faces the imminent threat of irreparable injury for which it cannot be adequately compensated in damages. WATER requests that a preliminary and permanent injunction issue to prevent such injury, and shall enjoin defendants and their employs, agents, representatives, subsidiary and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from 1) interfering with its ability to sell its Ever Brands products to its customers and 2) violating its exclusive license agreement and creating confusion in the market place by selling in the same market under the same mark competing products to plaintiff's Ever Brands; and 3) creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years. WATER shall also request and obtain all other remedies available under law to prevent defendants' illegal activities

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

Exhibit _A_ Page _38_

alleged herein. WATER has no adequate remedy at law to prevent the irreparable harm described above, which is not readily ascertainable by any legal measure of damages.

102.   The issuance of an injunction would not be adverse to the public interest because it would preserve competition in the market place. In fact, the public interest overwhelmingly supports the issuance of this injunction.

103.   Moreover, a preliminary and permanent injunction would prevent further derogation of WATER'S rights, and the threatened interference with WATER'S contractual relations, and the loss of prospective business advantage with customers.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff WATER, INC. requests the entry of judgment against EVERPURE, LLC, EVERPURE, INC. and PENTAIR, INC and DOES 1 TO 10 as follows :

## AS TO THE FIRST CLAIM FOR RELIEF

1.   For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.   Treble Damages

3.   For attorney's fees and costs

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Exhibit *A* Page *39*

4.    For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

## AS TO THE SECOND CLAIM FOR RELIEF

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.    Treble Damages

3.    For attorney's fees and costs

4.    For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

## AS TO THE THIRD CLAIM FOR RELIEF

1.    For a preliminary and permanent injunction enjoining defendants and their employees, agents, representatives, subsidiaries and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years in the Western states.

2.    For consequential and/or statutory damages.

3.    For attorney's fees.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Exhibit _A_ Page _40_

## AS TO THE FOURTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      For punitive and exemplary damages.

3.      For attorney's fees and costs

4.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

5.      For treble damages.


## AS TO THE FIFTH CLAIM FOR RELIEF

1.      For general, special and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      Attorney's fees and costs

3.      For an order enjoining defendants, and each of them, from engaging in the unlawful restraint of trade.

4.      For treble damages.


## AS TO THE SIXTH CLAIM FOR RELIEF

1.      For restitution of all amounts paid; together with pre-judgment interest thereon at the legal rate.

//

38

Exhibit _A_ Page _41_

2.      For an order enjoining defendants, and each of them, from engaging in the unlawful, fraudulent, unfair and deceptive business activities alleged,

## AS TO THE SEVENTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

## AS TO THE EIGHTH CLAIM FOR RELIEF

1.      For a judicial declaration that Defendants may not use of the mark "Everpure" when used in association with products that will create a likelihood of confusion in the marketplace with WATER'S Ever Brands products that plaintiff has offered for sale in the Western states for almost 30 years under the mark "Everpure."

## AS TO THE NINTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.      For exemplary and punitive damages.

## AS TO THE TENTH CLAIM FOR RELIEF

1.      For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

39

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## AS TO THE ELEVENTH CLAIM FOR RELIEF

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

## AS TO THE TWELFTH CLAIM FOR RELIEF

1.    For general, special, consequential and incidental damages in excess of the subject matter jurisdiction of the court, together with the interest thereon at the legal rate.

2.    For exemplary and punitive damages.

## AS TO THE THIRTEENTH CLAIM FOR RELIEF

1.    For a preliminary and permanent injunction enjoining defendants and their employees, agents, representatives, subsidiaries and parent corporations, and all those acting on their behalf, under their control or acting in concert with them from 1) withholding for sale its products or any other  coercive acts in order to prevent or prohibit WATER'S existing customers from doing business with WATER;   2) any interference with WATER'S sale of its proprietary products EVERHOT, EVERCOLD or EVERBREW to retailers or customers; and 3) creating the likelihood of confusion among purchasers through the sale of competing and substantially similar products to the Ever Brands under the "Everpure" trademark in the same manner that WATER has done for the past 29 years in the Western states.

2.    For attorney's fees available under Federal and State statutes alleged herein.

40

Exhibit 4 Page 43

## AS TO ALL CAUSES OF ACTION

1.      Costs of suit;

2.      Such other relief as the Court may deem proper.

3.      For any and all other and further relief as this Court deems just and proper.

DATED: June __2__, 2008          CLARK, GOLDBERG & MADRUGA

By: ___/S/ Robert D. Goldberg_____
         ROGER W. CLARK
         ROBERT D. GOLDBERG
         Attorneys for Plaintiff
         WATER, INC.

F:\WORK\07-1782\PLEADINGS\1ST_AMENDED_COMPLAINT_001_VERSION4.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

41

1

## <u>REQUEST FOR TRIAL BY JURY</u>

2

3

Plaintiff WATER, INC. hereby requests trial by jury in the above caption action.

4

5

6   DATED: June __2__, 2008                  CLARK, GOLDBERG & MADRUGA

7

8

9

10                                          By: ___/S/ Robert D. Goldberg_____
11                                               ROGER W. CLARK
                                                 ROBERT D. GOLDBERG
12                                               Attorneys for Plaintiff
13                                               WATER, INC.

14   F:\WORK\07-1782\PLEADINGS\1ST_AMENDED_COMPLAINT_001_VERSION4.DOC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit __4__ Page__45__

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

# Exhibit "1"

## SETTLEMENT AND LICENSE AGREEMENT

This Settlement and License Agreement ("Agreement") is entered into this 20th day of March, 2007 by and between Bradford White Corporation., a Delaware corporation with its principal place of business at 725 Talamore Drive, Ambler, Pennsylvania 19002 ("BWC/Licensor"), and Water, Inc., a California corporation with its principal place of business at 1044 East Del Amo Boulevard, Carson, California 90746 ("Water/Licensee"). BWC/Licensor and Water/Licensee are referred to jointly as the "Parties" and individually as the "Party."

### PREAMBLE

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

CONFIDENTIAL

Exhibit _A_ Page_47_

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

WHEREAS,

NOW, THEREFORE,

CONFIDENTIAL

- 2 -

44

Exhibit 4  Page 48

## 2.0    LICENSE

### Definitions

2.1.1    LICENSED MARKS: The trademark EVERHOT and U.S. Trademark Registration No. 500,197 for EVERHOT® for use in connection with GAS WATER HEATERS; U.S. Trademark Registration No. 1,056,545 for EVERHOT® for use in connection with WATER HEATERS; and U.S. Trademark Registration No. 2,989,441 for EVERHOT® for use in connection with RESIDENTIAL AND COMMERCIAL WATER HEATERS.

2.1.2    LICENSED PRODUCTS:    Instant hot drinking water systems (as exemplified in Exhibit B and including any updated, improved and enhanced models of such instant hot drinking water systems).

2.1.3    TERRITORY: The United States of America and throughout the world.

### Obligations

2.2.1    Grant of License

BWC/Licensor hereby grants to Water/Licensee and Water/Licensee accepts a paid-up, exclusive, non-transferable license to use the LICENSED MARKS solely in connection with the LICENSED PRODUCTS in the TERRITORY, without the right to sublicense, subject to the following terms and conditions. The license granted hereunder applies to prior, current and future use of the LICENSED MARKS by Water/Licensee in connection with the LICENSED PRODUCTS.

2.2.2    Ownership of Licensed Marks

BWC/Licensor is the owner of the LICENSED MARKS and Water/Licensee agrees that it shall do nothing inconsistent with such ownership (e.g., Water/Licensee shall not directly or indirectly seek to oppose, object to, challenge, cancel or otherwise take any action against BWC/Licensor's past, current or future right to register, use, own, license, or transfer the LICENSED MARKS) and that all use of the LICENSED MARKS by Water/Licensee has and shall inure to the benefit of and be on behalf of BWC/Licensor. Water/Licensee agrees that nothing in this Agreement shall give Water/Licensee any right, title or interest in the LICENSED MARKS other than the right to use the LICENSED MARKS in accordance with this Agreement.

- 3 -

CONFIDENTIAL

### 2.2.3  Quality Standards, Trademark Usage Standards, Acknowledgements and Confirmation

The Parties acknowledge and agree that great value is placed on the LICENSED MARKS and the goodwill associated therewith, and that the consuming public and the industry associate the LICENSED MARKS with products of consistently high quality.  The parties acknowledge and agree that the consuming public and the industry now associate BWC/Licensor with products of consistently high quality.  The parties also acknowledge and agree that the consuming public and the industry now associate Water/Licensee with products of consistently high quality.  The "Quality Standards," "Trademark Usage Standards" and "Acknowledgements" set forth in this Section 2.2.3 are considered necessary and reasonable to assure that the LICENSED PRODUCTS of Water/Licensee in connection with which the LICENSED MARKS will be used are of a sufficient and consistently high quality and that use of the LICENSED MARKS by Water/Licensee is in accordance with acceptable trademark usage and notice requirements of BWC/Licensor's rights in the LICENSED MARKS.

#### 2.2.3.1    Quality Standards

(a)    BWC/Licensor acknowledges that Water/Licensee's current LICENSED PRODUCTS, as of the Effective Date, are of the requisite quality to satisfy the Quality Standards of BWC/Licensor and as set forth in this Section 2.2.3.1.  Water/Licensee shall hereafter use the LICENSED MARKS only in connection with LICENSED PRODUCTS that satisfy the Quality Standards.  Water/Licensee shall attach hereto as Exhibit C a copy of a current certification from one or more of the Standards Organizations set forth in Section 2.2.3.1(b) below for the current LICENSED PRODUCTS.

(b)    All LICENSED PRODUCTS distributed or offered by or on behalf of Water/Licensee in connection with the LICENSED MARKS shall maintain a current certification from one or more of the following Standards Organizations: (1) Underwriters Laboratories, Inc. (UL); (2) Canadian Standards Association/CSA International (while recognized in the U.S.); or (3) Intertek Testing Services.  Based on the current standards and evaluation procedures of the above-listed Standards Organizations, BWC/Licensor shall consider a certification from one or more of these Standards Organizations sufficient evidence that the LICENSED PRODUCTS of Water/Licensee which are used in connection with the LICENSED MARKS are of the requisite quality to satisfy the Quality Standards for the country(ies) in which that Standards Organization is applicable.  In the event that the standards or evaluation procedures of any of the above-listed Standards Organizations change to the extent that they no longer set recognized standards, and thus no longer satisfy BWC/Licensor's criteria for acceptable Quality Standards, then BWC/Licensor shall notify Water/Licensee of such change and BWC/Licensor shall consider a certification from one or more of the remaining above-listed Standards Organizations sufficient evidence that the LICENSED PRODUCTS of Water/Licensee which are used in connection with the LICENSED MARKS satisfy acceptable Quality Standards for the country(ies) in which that Standards Organization is applicable.

CONFIDENTIAL

- 4 -

46

### 2.2.3.2 *Trademark Usage Standards and Acknowledgements*

Water/Licensee shall use the LICENSED MARKS in connection with the LICENSED PRODUCTS, and the packaging, advertising and promotion thereof, in a manner that satisfies the Trademark Usage Standards attached hereto as Exhibit D and with one of the following acknowledgements: (a) "the EVERHOT® mark is used under license from Bradford White Corp." or (b) "the EVERHOT® mark is used with permission from Bradford White Corp." (the "Acknowledgements").

### 2.2.3.3 *Confirmation of Standards and Acknowledgments*

Water/Licensee shall furnish to BWC/Licensor, at no cost to BWC/Licensor, once per calendar year, representative samples of LICENSED PRODUCTS with which the LICENSED MARKS are used in connection, as well as specimens of the packaging, advertising and promotional materials bearing the LICENSED MARKS, and copies of current certifications from one or more of the Standards Organizations, so that BWC/Licensor may confirm that the LICENSED PRODUCTS of Water/Licensee with which the LICENSED MARKS are used in connection, and the packaging, advertising and promotional materials bearing the LICENSED MARKS, satisfy the Quality Standards, Trademark Usage Standards and the Acknowledgements. If BWC/Licensor notifies Water/Licensee that a sample, specimen, or certification does not satisfy the Quality Standards, Trademark Usage Standards or the Acknowledgements, BWC/Licensor shall give Water/Licensee a reasonable opportunity to satisfy the Quality Standards, Trademark Usage Standards and the Acknowledgements and to furnish a new sample, specimen, or certification.

2.2.4   BWC/Licensor agrees not to compete with Water/Licensee in the instant hot drinking water systems market using the LICENSED MARKS in the Territory.

2.2.5.  In consideration for the license granted in Section 2.2.1 above, Water/Licensee shall pay the amount as set forth in Section 1.1 above.

### 2.2.6   Indemnity

2.2.6.1   BWC/Licensor assumes no liability to Water/Licensee or to third parties with respect to the performance, effectiveness, safety or other characteristics of goods or services rendered by Water/Licensee in connection with the LICENSED MARKS and Water/Licensee shall defend and indemnify BWC/Licensor and hold BWC/Licensor harmless against all costs and expenses, including attorney fees, and all losses incurred from claims of third parties against BWC/Licensor involving Water/Licensee's goods or services including, but not limited to, any product liability or tort issues arising from the design, manufacturing, marketing, selling or use of Water/Licensee's goods or services.

CONFIDENTIAL

47

Exhibit **A** Page **51**

2.2.7   Water/Licensee agrees not to register the domain name www.everhot.com or any confusingly similar domain name. The license to Water/Licensee granted in Section 2.2.1 above shall include the right to use the LICENSED MARKS on the internet for LICENSED PRODUCTS, in accordance with the Trademark Usage Standards and Acknowledgments set forth in Section 2.2.3.2 above.

2.2.8   Water/Licensee shall have the right to use all of its existing LICENSED PRODUCTS and advertising in stock; however, beginning April 1, 2007 or within thirty (30) days of the execution of this Agreement, whichever comes first, Water/Licensee shall include one of the Acknowledgements set forth in Section 2.2.3.2 above on all of its LICENSED PRODUCTS and applicable advertising produced after January 1, 2007.  Further, beginning January 1, 2008, Water/Licensee shall include one of the Acknowledgements set forth in Section 2.2.3.2 above on all of its LICENSED PRODUCTS and applicable advertising.

2.2.9   BWC/Licensor shall police the market with respect to infringing third-party uses of the LICENSED MARKS, including use of the LICENSED MARKS on the LICENSED PRODUCTS, exercising its discretion in a commercially reasonable manner.  BWC/Licensor shall uphold the validity of the LICENSED MARKS and, exercising its discretion in a commercially reasonable manner, pursue infringers in the United States of the LICENSED MARKS. Water/Licensee shall promptly notify BWC/Licensor of any such unauthorized third-party use of the LICENSED MARKS, and of any third-party challenges to BWC/Licensor's rights in the LICENSED MARKS of which Water/Licensee becomes aware. As of the date of this Agreement, Water/Licensee is not aware of any such unauthorized third-party use of the LICENSED MARKS.

2.2.10  Transfer

CONFIDENTIAL

- 6 -

Exhibit A   Page 52

### 2.2.11 Termination, Breach

2.2.11.1     The term of the Agreement shall commence on the Effective Date and continue until such date as Water/Licensee no longer meets the Quality Standards and/or ceases to provide LICENSED PRODUCTS under the LICENSED MARKS in the TERRITORY and/or otherwise breaches this Agreement and Water/Licensee fails to cure the breach as provided below in Sections 2.2.11.2 and 2.2.11.3, and/or until the registrations described in Section 2.1.1 are cancelled or held invalid by a court of competent jurisdiction or the U.S. Patent and Trademark Office only after the time for appeal has passed and/or until the LICENSED MARKS are ruled to be generic by a court of competent jurisdiction or the U.S. Patent and Trademark Office only after the time for appeal has passed.  In no event shall a termination by either party affect the obligation to fully pay the payments of the Paid-Up License Fee due BWC/Licensor from Water/Licensee pursuant to Sections 1.1 and 2.2.5.

2.2.11.2     If Water/Licensee fails to make any payment when due pursuant to Sections 1.1 and 2.2.5 above, BWC/Licensor may provide written notice pursuant to Section 6.0, notifying Water/Licensee of the non-payment, whereupon Water/Licensee shall have thirty (30) days from the date of the notice to make the payment (the "Cure Period"). Should Water/Licensee fail to make the required payment within the Cure Period, then Water/Licensee shall be considered to be in default and material breach of this Agreement and all payments not yet paid by Water/Licensee shall become immediately due and payable. BWC/Licensor shall, moreover, have the right to immediately terminate this Agreement by written notice to Water/Licensee.  In addition to all payments being due and payable, Water/Licensee agrees that the license granted in Section 2.2.1 above shall immediately terminate upon receipt of the written notice of termination.

2.2.11.3     If Water/Licensee fails to perform any of its obligations in the Agreement (other than the payment provided for in Section 2.2.11.2 above), BWC/Licensor shall provide written notice pursuant to Section 6.0, notifying Water/Licensee of the nonperformance, whereupon Water/Licensee shall have no more than thirty (30) days from the date of the notice to perform the obligation. Should Water/Licensee fail to perform the obligation within that time period then Water/Licensee shall be considered to be in default and material breach of this Agreement.  BWC/Licensor shall have the right to immediately terminate this Agreement by written notice to Water/Licensee.  In addition to all payments being due and payable, Water/Licensee agrees that the license granted in Section 2.2.1 above shall immediately terminate upon receipt of the written notice of termination.

2.2.11.4     BWC/Licensor's failure to provide notice of a breach shall not be considered a waiver of its rights, and BWC/Licensor shall have the right to pursue a cure and/or remedy for such a breach at a later time should Water/Licensee still be in breach or not cure such a breach.

- 7 -

CONFIDENTIAL

Exhibit _A_ Page_53

2.2.11.5    Upon    expiration    or    termination    of    this    Agreement, Water/Licensee shall immediately cease all use of the LICENSED MARKS and any term confusingly similar thereto, destroy all printed materials bearing any of the LICENSED MARKS, and all rights in the LICENSED MARKS and the goodwill connected therewith shall remain the property of BWC/Licensor. Furthermore, the expiration or termination of the Agreement shall not negate or otherwise change or extinguish Water/Licensee's obligation to make full payment of the Paid-Up License Fee under Section 1.1.

**3.0    COMPROMISE**

**4.0    RELEASE**

CONFIDENTIAL

- 8 -

Exhibit **A** Page **54**

**5.0    CONFIDENTIALITY**

CONFIDENTIAL

- 9 -

## 6.0   NOTICE

Any notices or other communications required under this Agreement shall be served upon the Parties via Facsimile and overnight priority mail as follows:

For Bradford White Corporation:

Herbert F. Foster
Vice President Administration
Bradford White Corporation
725 Talamore Drive
Ambler, PA 19002
Facsimile: 215.641.1612

With a copy to:

Joshua L Cohen, Esq.
RatnerPrestia
1235 Westlakes Drive, Suite 301
Berwyn, PA 19312
Facsimile: 610.407.0701

For Water, Inc.:

Major Avignon
President
Water, Inc.
1044 East Del Amo Boulevard
Carson, California 90746
Facsimile:

With a copy to:

Roger W. Clark, Esq.                     Christopher Rolin, Esq.
Clark & Goldberg                         Christopher Rolin Law Offices
Suite 1150                               5707 Corsa Avenue
11400 Olympic Boulevard                  Westlake, Village, California 91362
Facsimile: 310.314.8662                  Facsimile: 818.735.9992

- 10 -

CONFIDENTIAL

52

Exhibit _A_ Page _56_

**7.0    GENERAL TERMS**

This Agreement constitutes the entire agreement of the Parties, superseding any and all previous oral or written representations, communications, understandings or agreements relating to the subject matter hereof. Any amendment to this Agreement must be in writing specifically referring to this Agreement signed by duly authorized representatives of the Parties.

This Agreement is the result of negotiations between the Parties and has been prepared for the convenience of both Parties and shall not be construed more strictly or favorably for either Party.

This Agreement shall be binding upon and inure to the benefit of the Parties, their individual principals, agents, directors, officers, employees, representatives, companies, corporations, ventures, partnerships, subsidiaries, predecessors, parents, transferees, assigns, heirs or successors of any type.

Each Party represents, warrants and agrees that it has received, or has had the opportunity to receive, independent legal advice with respect to the advisability of this Agreement.

If any part or any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part or portion shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of the Agreement.

The waiver of any breach of this Agreement by any Party will not be a waiver of any other subsequent or prior breach.

Each Party represents, warrants and agrees that the person reviewing and executing the Agreement on its behalf (whether or not a company officer) has been duly authorized and empowered by the company to do so.

The terms of this Agreement are contractual in nature. The headings are for convenience only and do not limit the described sections in any manner.

The Parties agree to perform any further acts and execute and deliver any further documents that may reasonably be necessary to carry out the provisions of this Agreement.

This Agreement may be executed and delivered in any number of counterparts or copies by the Parties hereto. When each Party has signed and delivered at least one counterpart to the other Party hereto, each counterpart shall be deemed an original and, taken together, shall constitute one and the same Agreement, which shall be binding and effective as to the Parties.

- 11 -

CONFIDENTIAL

53

The "Effective Date" of this Agreement shall be the last date on which this Agreement is executed by all Parties.

The Agreement is governed by and must be construed in accordance with the laws of the State of California, and the parties hereby submit to the jurisdiction of the U.S. District Court for the Central District of California for any legal action relating to enforcement of this Agreement.

IN WITNESS WHEREOF, the Parties hereto, agreeing to be legally bound, have executed this Agreement through their duly authorized representatives on the dates indicated below.

Dated: March 20, 2007

BRADFORD WHITE CORPORATION.

Name: Herbert D. Foster
Title: Vice President Administration

Dated: March ___, 2007

WATER, INC.

Name: Major Avignon
Title: President

CONFIDENTIAL

- 12 -

54

Exhibit A Page 58

The "Effective Date" of this Agreement shall be the last date on which this Agreement is executed by all Parties.

The Agreement is governed by and must be construed in accordance with the laws of the State of California, and the parties hereby submit to the jurisdiction of the U.S. District Court for the Central District of California for any legal action relating to enforcement of this Agreement.

IN WITNESS WHEREOF, the Parties hereto, agreeing to be legally bound, have executed this Agreement through their duly authorized representatives on the dates indicated below.

Dated: March _____, 2007

BRADFORD WHITE CORPORATION.

Name: Herbert F. Foster
Title:   Vice President Administration

Dated: March 2 6, 2007

WATER, INC.

Name:   Majon Avignon
Title:   President

CONFIDENTIAL

- 12 -

**CERTIFICATE OF SERVICE – by** *Electronic Filing and Service Pursuant To*
*General Rule Order 08-02*
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is that of Clark, Goldberg & Madruga located at 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064.

I hereby certify that on June 2, 2008, a copy of the following document was filed electronically and served on the parties identified below: **FIRST AMENDED COMPLAINT OF WATER, INC.**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Christopher Heck, Esq.
**FOLEY & LARDNER, LLP**
555 So. Flower Street
Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
Email: check@foley.com

Attorneys for Defendants,
**EVERPURE, INC., EVERPURE,
LLC, and PENTAIR, INC.**

**X  (BY MAIL)** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary court of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on  June 2, 2008  at Los Angeles, California.

**X**   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

KARLA P. GONZALEZ
Type or Print Name

Signature

# EXHIBIT "B"

Law Offices
# CLARK, GOLDBERG & MADRUGA
A Partnership Including Professional Corporations
SUITE 1150
11400 W. OLYMPIC BOULEVARD
LOS ANGELES, CALIFORNIA 90064
Telephone: (310) 478-0077
Facsimile: (310) 478-0099

ROBERT D. GOLDBERG
A Professional Law Corporation
Rgoldberg@cgold.cc

www.clarkgoldberg.com

May 22, 2008

## VIA FACSIMILE AND U.S. MAIL

Christopher Heck, Esquire
**FOLEY & LARDNER LLP**
555 S. Flower Street
Suite 3500
Los Angeles, CA 90071

RE:    **WATER INC. v. EVERPURE, INC.**
United States District Court – Central District – Los Angeles
CASE No.: CV08-00218 ABC (SSx)

Dear Chris,

Several weeks ago, prior to Everpure filing its motion to dismiss, I advised you that Water, Inc., intended to file a First Amended Complaint. I further advised that in my estimation the allegations in the First Amended Complaint would materially impact any motion that your client intended to file relating to the pleadings. I offered to extend the time for your client to respond while we drafted the First Amended Complaint. Subsequently, your client has filed a motion to dismiss the Complaint. Please be advised that Water, Inc. shall be filing a First Amended Complaint within the next few days. The filing of the amended complaint will make the Everpure motion moot.

Sincerely,

ROBERT D. GOLDBERG

RDG:kg
F:\WORK\07-1732\CORRESPONDENCE\HECK_001.DCC

Exhibit __B__ Page __61__

# EXHIBIT "C"


**FOLEY**

FOLEY & LARDNER LLP

ATTORNEYS AT LAW

555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2300
213.972.4500 TEL
213.486.0665 FAX
www.foley.com

WRITER'S DIRECT LINE
213.972.4642
check@foley.com EMAIL

CLIENT/MATTER NUMBER
065215-0156

May 22, 2008

Via Facsimile 310-478-0099 and U.S. Mail

Robert D. Goldberg
Clark, Goldberg & Madruga
11400 W. Olympic Blvd., Ste. 115-
Los Angeles, CA 90064

      Re:   *Water, Inc. v. Everpure, Inc.*
           Case No.: CV 08-00218 ABC

Dear Robert:

      I received your letter relating to Water's proposed First Amended Complaint. Unless you plan to file that complaint in Illinois, we don't see how an amendment could make the motion moot. As the contract governing the relationship between our clients makes clear, venue must be in Illinois, and we would again ask you to voluntarily agree to transfer venue there.

                        Sincerely,

                        Christopher J. Heck

BOSTON
BRUSSELS
CHICAGO
DETROIT
JACKSONVILLE

LOS ANGELES
MADISON
MILWAUKEE
NEW YORK
ORLANDO

SACRAMENTO
SAN DIEGO
SAN DIEGO/DEL MAR
SAN FRANCISCO
SILICON VALLEY

TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.

Exhibit _C_ Page _62_

LACA_1738519.1

**CERTIFICATE OF SERVICE – by *Electronic Filing and Service Pursuant To General Rule Order 08-02***
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is that of Clark, Goldberg & Madruga located at 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064.

I hereby certify that on June 2, 2008, a copy of the following document was filed electronically and served on the parties identified below: **DECLARATION OF ROBERT D. GOLDBERG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR MOTION TO TRANSFER VENUE.**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Christopher Heck, Esq.          Attorneys for Defendants,
**FOLEY & LARDNER, LLP**        **EVERPURE, INC., EVERPURE,**
555 So. Flower Street           **LLC, and PENTAIR, INC.**
Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
Email: check@foley.com

**X  (BY MAIL)** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary court of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on  June 2, 2008  at Los Angeles, California.

**X**  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.



KARLA P. GONZALEZ                 _____
Type or Print Name                Signature

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX