**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CALIFORNIA 90071-2300
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

CHRISTOPHER J. HECK, BAR NO. 174647
CHECK@FOLEY.COM

**OF COUNSEL**
BRIAN W. MCGRATH
KELLI A. TAFFORA
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
TELEPHONE:    414.271.2400
FACSIMILE:    414.297-4900
BMCGRATH@FOLEY.COM
KTAFFORA@FOLEY.COM

ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC.,<br><br>Defendants. | CASE NO:  CV 08-00218 ABC (SS)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO:  (1) DISMISS AMENDED COMPLAINT FOR IMPROPER VENUE PURSUANT TO RULE 12(B)(3); OR, IN THE ALTERNATIVE, (2) TRANSFER VENUE TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406(A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[Declaration Of Michael Madsen And Exhibits Filed And Served Concurrently]**<br><br>Date:       July 7, 2008<br>Time:       10:00 A.M.<br>Courtroom:  680<br><br>Judge:  The Hon. Audrey B. Collins |

///

///

///

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 7, 2008, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 680 of the above-entitled court, located at 255 E. Temple Street, Los Angeles, California, 90012, defendants Everpure, Inc., Everpure, LLC and Pentair, Inc. ("Everpure"), will move for an order:

(1) dismissing the Amended Complaint and this action, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(3) for improper venue; or

(2) in the alternative, transferring venue of this action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Northern District of Illinois, where Everpure's executive offices are located and the parties contractually agreed to resolve all disputes pursuant to a forum selection clause.

This motion will be made pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, 28 U.S.C. § 1406(a), on the ground that the distribution agreement governing the relationship between Water and Everpure contains an express forum-selection clause providing that the exclusive jurisdiction for any disputes between the parties is in the State of Illinois. Despite Water's efforts to artfully plead around this agreement, its claims are premised on and require a determination of the effect of various terms of the agreement.

This motion will be based upon this notice, the attached memorandum of points and authorities, the declaration of Michael Madsen and exhibits thereto, the entire file in this action, and such other argument and evidence as may be presented at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place, via telephone on May 12, 2008, between Roger W. Clark of Clark, Goldberg & Madruga (counsel for Water) and Christopher J. Heck, of Foley & Lardner LLP (counsel for Everpure). During that telephone

conference, counsel for the parties were not able to reach a resolution of the issue presented by this motion (namely, whether venue of this case is proper here or in the Northern District of Illinois) that would eliminate the need for a hearing. Subsequently, the parties exchanged correspondence where they again failed to agree on the issues presented by this motion. And, in a follow-up telephone conference held between Messrs. Clark and Heck held after Water filed its amended complaint and the Court struck Everpure's initial motion, the parties were, once again, unable to reach a resolution of the issues presented in this motion.

Dated: June 12, 2008

FOLEY & LARDNER LLP
CHRISTOPHER J. HECK


By:    /s/
       CHRISTOPHER J. HECK

OF COUNSEL:

BRIAN W. MCGRATH
KELLI A. TAFFORA
FOLEY & LARDNER LLP
777 EAST WISCONSIN AVENUE
MILWAUKEE, WISCONSIN 53202
PHONE: 414.271.2400
FACSIMILE: 414.297.4900

Attorneys for Defendants
Everpure, Inc., Everpure, LLC and
Pentair, Inc.

MILW_7119168.1

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..........................................................................1

II.   FACTS ........................................................................................2

III.  LEGAL STANDARD ...................................................................3

IV.   ARGUMENT ...............................................................................4

    A.    The Amended Complaint is an Attempt at Artful Pleading to    Avoid the Forum Selection Clause..........................................................5

    B.    The Claims in the Amended Complaint Arise Directly from the Contractual Relationship Between the Parties And Are Subject to the Forum Selection Clause. ...............................................................10

    C.    Water's Abandoning of Its Breach of Contract Claims Does not Invalidate the Forum Selection Clause. ....................................................14

    D.    The Forum Selection Clause is Mandatory........................................16

    E.    Water Cannot Meet the Burden of Proof Necessary to Defeat This Forum Selection Clause. ...............................................................18

    F.    In The Alternative, This Case Should Be Transferred To The Northern District Of Illinois Pursuant To 28 U.S.C. §1406(A) For Improper Venue. 19

V.    CONCLUSION ...........................................................................20

MILW_7119168.1

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Argueta v. Banco Mexicano,*
    87 F.3d 320 (9th Cir. 1996) ................................................................... 4

*B & B Trucking, Inc.*, 406 F.3d 766 (6th Cir. 2005) ............................. 10

*Belfiore v. Summit Fed. Credit Union,*
    452 F. Supp. 2d 629 (D. Md. 2006) ...................................................... 9

*Bense v. Interstate Battery Sys. of Am., Inc.,*
    683 F.2d 718 (2d Cir. 1982) ................................................................. 15

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F. 2d 190 (3d Cir. 1983) ................................................................. 9

*Crescent Int'l, Inc. v. Avatar Communities, Inc.,*
    857 F. 2d 943 (3d Cir. 1988) ............................................................... 15

*Dist. No. 1, Pac. Coast Dist., M.E.BA. v. State of Alaska,*
    682 F.2d 797 (9th Cir. 1982) ................................................................. 4

*Doe v. Network Solutions,*
    No. C 07-05115 JSW, 2008 U.S. Dist. LEXIS 7397 (N.D. Cal. Jan. 22,
    2008) ................................................................................................ 3-4, 10

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.,*
    131 F.3d 1336 (9th Cir. 1997) ............................................................... 4

*GMAC/Residential Funding Corp. v. Infinity Mortgage, Inc.,*
    2003 U.S. Dist. LEXIS 10289 (D. Minn. 2003) ............................ 16-17

*Gutermuth Investments, inc. v. Coolbrands Smoothies Franchise, L.L.C.,*
    No. SA-06-CA-0471, 2006 U.S. Dist. LEXIS 76459 (W.D. Tex. Oct. 11,
    2006) ..................................................................................................... 16

*Heller Fin., Inc. v. Midwhey Powder Co.,*
    883 F.2d 1286 (7th Cir. 1989) ............................................................. 18

*Hope Cancer Treatment Found., Inc. v. Mountaineer Park, Inc.,*
    No. CIVA 06-1671, 2007 WL 184820 (W.D. Pa. Jan. 19, 2007) ........ 9

MILW_7119168.1

*Kelso Enters. v. M/V Wisida Frost*,
  8 F. Supp. 2d 1197 (C.D. Cal. 1998)......................................................4

*Lambert v. Kysar*,
  983 F.2d 1110 (1st Cir. 1993) ...........................................................10

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) .........................................................................18-19

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) .....................................................Passim

*Melanson v. United Air Lines, Inc.*,
  931 F.2d 558 (9th Cir. 1991) ...............................................................9

*Multimin USA, Inc. v. Walco, Int'l*, No. CV F 06-0226 AWI SMS, 2006 U.S.
  Dist. LEXIS 33624, 16-17 (E.D. Cal. Apr. 7, 2006)............................4

*Murphy v. Schneider Nat'l., Inc.*,
  362 F.3d 1133 (9th Cir. 2004) .............................................................4

*Nat'l Micrographics Sys. v. Canon U.S.A. Inc.*,
  825 F. Supp. 671 (D.N.J. 1993)..........................................................19

*Ne. Data Sys., Inc.*, 986 F.2d 607 (1st Cir. 1993) ....................................10

*Polk County v. Prison Health Servs., Inc.*,
  170 F.3d 1081 (11th Cir. 1999).........................................................17

*Rini Wine Co. v. Guild Wineries & Distilleries*,
  604 F. Supp. 1055 (N.D. Ohio 1985) ................................................15

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993) ...........................................................10

*Stewart Org., Inc. v. Ricoh Corp.*,
  810 F.2d 1066 (11th Cir. 1987) (en banc).........................................15

*TAAG Linhas Aereas de Angola v. Transamerica Airlines*,
  915 F.2d 1351 (9th Cir. 1990).............................................................4

*Turner v. Thorworks Indus.*,
  No. CIV. No. S-05-02653, 2006 U.S. Dist. LEXIS 21668 (E.D. Cal.
  March 28, 2006) ...............................................................................19

iii

*Weingrad v. Telepathy, Inc.*,
    No. 05 Civ. 2024 2005 U.S. Dist. LEXIS 26952 ................................................. 9

*YWCA v. Nat'l Bd.*,
    No. 91 Civ. 7943, 1992 U.S. Dist. LEXIS 14713 (S.D. N.Y. Sept. 23,
    1992) ............................................................................................................... 15


**FEDERAL STATUTES**

28 U.S.C. § 1406(a) ..............................................................................Passim


**RULES**

Fed. R. Civ. P. 12(b)(3) ........................................................................Passim

Fed. R. Civ. P. 12(b)(3) .............................................................................. 1, 3

Local Rule 7-3 ............................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Water, Inc.'s ("Water") First Amended Complaint is an attempt at artful pleading to avoid the forum selection clause in its contract with Everpure.  Under the terms of the forum selection clause in the written agreement, this case should be dismissed, or, alternatively, transferred to the Northern District of Illinois.[1] Water is the master distributor for Everpure in ten western states under the terms of a written agreement entitled the Select Master Distributor Agreement (the "Agreement").  (Madsen Decl. ¶ 3; Ex. A at Sched. B.).  Water would have no relationship with Everpure and no basis for a lawsuit, period, if it were not for the Agreement, and the Agreement is the lynchpin of the parties' respective rights. Water, thus, cannot avoid the application of the forum selection clause simply by dropping the breach of contract action it originally alleged against Everpure.[2]

In section 10.9 of the parties' Agreement, the forum selection clause states that Water and Everpure **irrevocably submit to** and waive any objection either may have to **venue in state and federal courts of Illinois**.  (Madsen Decl. ¶ 3; Ex. A at § 10.9.).Venue in Los Angeles is thus improper.  Water has not met, and cannot meet, its heavy burden of invalidating the mandatory forum selection clause, and the Amended Complaint must be dismissed.

---

[1] Not only does Water's Amended Complaint attempt to plead around the forum selection clause, it also completely eviscerates any claims Water otherwise might have been able to state.  As matters stand, Water's complaint makes no sense, and if a Court was to allow it the relief it seeks here, Water would be permitted to terminate its contract with Everpure, Everpure would be prohibited from competing with Water in this territory, and Everpure would be prohibited from using or enforcing its own trademark.

[2] Everpure's references to the original complaint in this motion are used merely to highlight the artful pleading, not to bind Water to any of the actual facts alleged as judicial admissions.  "[A superseded pleading], while not a conclusive judicial admission, is nevertheless competent evidence of the facts stated."  *Tiana Corp. v. Hartley*, 99 F. Supp. 670, 672 (S.D.N.Y. 1951); *see also Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) (holding that contradictory statements in an original complaint may be used to address credibility issues).

MILW_7119168.1

## II.    FACTS

Water, Inc. ("Water") has been an Everpure distributor since 1979.  The most recent Agreement between the parties was entered into on July 1, 1996.  (Am. Compl. ¶¶ 8, 11.)  Water's rights to distribute Everpure water filtration devices and water delivery systems are created only by the Agreement.  (*See, e.g.* Madsen Decl. ¶ 3; Ex. A at §§ A-C, 1.1-1.3.)  Water must purchase all of its water treatment products from Everpure, and it is prohibited from engaging in any business that competes with or involves distribution of products substantially similar to the products manufactured by Everpure.  (*See id.* at §§ 5.2, 5.3.)  Among other things, the Agreement also requires Water to operate in compliance with all applicable laws and to conform its sales practices to the highest standards of honesty, integrity and fair dealing; to respect the validity and ownership by Everpure of the registered trademarks of Everpure; and, to refrain from engaging in conduct that is likely to deceive the public as to the source, nature or quality of products or services offered by Water, or that is likely to impair the name, trademark or reputation of Everpure.  (*Id.* at §§ 5.2, 5.3, 5.5, 5.8, 6 and 9.1(b)(2).).  The Agreement also prevents Water from terminating the relationship except for the specific reasons enumerated in Sections 9.1(a) and 9.1(c).  (*Id.*).

Water originally filed this suit in January 2008, but did not cause the Complaint to be served until April 29, 2008.  On May 19, 2008, Everpure responded with a motion to dismiss for improper venue, or in the alternative, to transfer venue to the United States District Court for the Northern District of Illinois.  Water responded to Everpure's motion by filing an Amended Complaint in which Water attempts to plead its claims in a way that can somehow avoid the forum selection clause in its contract.  Water's attempt to plead around its contractual obligation should be rejected by the Court.

The Agreement unequivocally provides that the parties "**irrevocably**

**submit**, and waive any objection either may have, **to** personal jurisdiction or **venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois**." (*Id*. at § 10.9) (emphasis added).)  The Amended Complaint correctly alleges that Everpure's offices are in Hanover Park, Illinois.  (Am. Compl. at ¶ 1.)  Those offices are within the Northern District of Illinois.  *See* http://pacer.psc.uscourts.gov/psco/cgi-bin/district.pl.

The forum selection clause further states that "[a]ll remedies provided in this Agreement are cumulative and, **except for forum selection under this Section**, are in addition to any remedy otherwise available under applicable federal, state or local law".  (Madsen Decl. ¶ 3; Ex. A at § ¶ 10.9 (emphasis added).)  Water is located in Southern California while the defendants are located in Illinois and Minnesota.  Water's reason for filing in Los Angeles is apparent:  to attempt to gain a tactical advantage and to drive up the defendants' litigation costs.  Water should not be permitted to forum-shop, nor should it be rewarded for its artful pleading to avoid its contractual obligations, because it previously agreed that Illinois was the only proper venue.

In sum, the parties' forum selection clause mandates that venue for the parties' dispute is Illinois.  This Court should therefore:

- Dismiss the Amended Complaint and this action because of improper venue, pursuant to Federal Rule of Civil Procedure, Rule 12(b)(3); or
- Transfer venue of this action to the Northern District of Illinois, pursuant to 28 U.S.C. § 1406(a).

## III.    LEGAL STANDARD

"A motion to dismiss for improper venue based on the enforcement of a forum selection clause is governed by Rule 12(b)(3)."  *See Doe v. Network Solutions,* No. C 07-05115 JSW, 2008 U.S. Dist. LEXIS 7397, at *11-12 (N.D.

Cal. Jan. 22, 2008) (citing *Argueta v. Banco Mexicano,* 87 F.3d 320, 324 (9th Cir. 1996)).  "[A] motion under Rule 12(b)(3) does not require that the pleadings be accepted as true, and the Court can consider facts outside the pleadings."  *Id*. at *12.  The Court "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party."  *Id*. (citing *Murphy v. Schneider Nat'l., Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).  This Court has the authority to either dismiss the improperly-filed action; or "if it be in the interest of justice" transfer the case to the proper district.  28 U.S.C. § 1406(a); *see also Dist. No. 1, Pac. Coast Dist., M.E.BA. v. State of Alaska*, 682 F.2d 797, 799 (9th Cir. 1982).

# IV.  **ARGUMENT**

Federal courts in this circuit have held that when parties to a contract have agreed on a specific venue, that agreement cannot be avoided, and an action filed in a venue other than the one specified in the contract must be dismissed.  *See, e.g., Argueta*, 87 F.3d at 324-26 (dismissing action pursuant to 12(b)(3) because a forum selection clause dictated another venue); *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336 (9th Cir. 1997) (dismissing action based on a "prima facie valid" forum selection clause);  *Kelso Enters. v. M/V Wisida Frost*, 8 F. Supp. 2d 1197, 1207 (C.D. Cal. 1998) (dismissing pursuant to 12(b)(3) because of forum selection clause); *Doe*, 2008 U.S. Dist. LEXIS 7397, at *12 (stating that "[f]orum selection clauses are *prima facie* valid.") (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988)); *TAAG Linhas Aereas de Angola v. Transamerica Airlines,* 915 F.2d 1351 (9th Cir. 1990); *Multimin USA, Inc. v. Walco, Int'l*, No. CV F 06-0226 AWI SMS, 2006 U.S. Dist. LEXIS 33624, at *16-17 (E.D. Cal. Apr. 7, 2006) (enforcing forum selection clause in a distribution relationship).

Water's Amended Complaint should similarly be dismissed, because it is an artful but transparent attempt to plead around the Agreement and evade the

contractual forum selection clause.  The claims in the Amended Complaint arise directly from the contractual relationship between the parties, and the forum selection clause thus mandates that this action be dismissed or transferred.

### A.    The Amended Complaint is an Attempt at Artful Pleading to Avoid the Forum Selection Clause.

In Everpure's motion to dismiss the original complaint, Everpure demonstrated that each of Water's 14 claims were dependent on the Agreement and that the forum selection clause applied to all of those claims and is valid and enforceable.  In response, Water all but conceded Everpure's motion, choosing instead to file an Amended Complaint that palpably contorts itself to avoid mention of the very contract that has governed the parties' relationship for years. Among other things, Water entirely abandons its breach of contract claims (Compl. ¶¶ 71-76), recasts its Declaratory Relief Claims as a claim about rights to use the "Everpure" mark rather than as a claim about whether the Agreement remains in full force and effect (although it is the Agreement which is the source of Water's right to use the Everpure trademark (*see* Agreement §§ 6, 9.1(b)(2), 9.2)), and drops its Franchise Relations Act claim (Compl. ¶¶ 48-51).

Water's Amended Complaint is in basically the same format as the original, but, in keeping with its rhetorical gymnastics exercise, it now asserts that Everpure should be prohibited from ceasing sale of Everpure products *to Water's customers* instead of being prohibited from ceasing sale of Everpure products *to Water* under the Agreement.  This claim makes no sense in light of Water's assertion that it gave notice of termination of its agreement with Everpure on May 22, 2008 (Am. Compl. ¶ 11).  Water has notified Everpure that, effective July 1, 2008, Water no longer desires to be, or intends to be, a master distributor for Everpure.  Thus, it is not anything that Everpure is doing that would prohibit sales of Everpure products to Water's customers.  In fact, Everpure strongly desires to sell its products not

only to Water's customers, but to all other consumers in this geographic market. (Madsen Decl. ¶ 4.)  Nowhere in the Amended Complaint does Water ever explain what Everpure is doing to allegedly prohibit sales of Everpure products to Water's customers, or explain how Water's own decision to terminate the Agreement can possibly be squared with the claims Water is making in this case.

In a further attempt to plead around the Agreement, Water even adds the absurd argument that Everpure should not be allowed to use or enforce its own "Everpure" trademark.  The following comparisons are just a few of the examples that highlight Water's attempt at creative pleading to avoid the forum selection clause:

| ORIGINAL COMPLAINT | FIRST AMENDED COMPLAINT |
|---|---|
| "Water seeks to enjoin and restrain Defendants, and each of them, from engaging in the illegal constraints on trade in violation of federal law; including without limitation, 1) ***withholding for sale Everpure products under the Distribution Agreement***."  (Compl. ¶ 45) (emphasis added). | "Water seeks to enjoin and restrain Defendants, and each of them, from engaging in the illegal constraints on trade in violation of federal law; including without limitation, 1) ***withholding for sale its products or any other coercive acts in order to prevent or prohibit Water's existing customers from doing business with Water***."   (Am. Compl. ¶ 41) (emphasis added). |
| "***To the extent Defendants refuse to sell products to Water*** . . . Water will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities." (Compl. ¶ 47) (emphasis added). | "***To the extent Defendants refuse to do business with Water's existing customers in order to prevent them from doing business with Water*** . . . Water will suffer a loss of revenues, goodwill and reputations as a direct and proximate result of Defendants illegal activities."  (Am. Compl. ¶ 43) (emphasis added). |

MILW_7119168.1

| ORIGINAL COMPLAINT | FIRST AMENDED COMPLAINT |
|---|---|
| "***Defendants refusal to deal or continue to sell Everpure filtration products to Water*** . . . is unlawful and discriminatory resulting in the restraint of trade in violation of the Cartwright Act." (Compl. ¶ 53) (emphasis added). | "***Defendants refusal to deal or continue to sell its line of products to Water's existing customers*** if they continue to do business with Water is unlawful and discriminatory resulting in the restraint of trade in violation of the Cartwright Act." (Am. Compl. ¶ 49) (emphasis added). |
| "***Defendants refusal to deal and to continue to sell Everpure filtration products to Water*** as long as Water continues to offer for sale its own proprietary water delivery systems, . . . is unlawful and discriminatory resulting in the restraint of trade in violation of the UPA." (Compl. ¶ 59) (emphasis added). | "***Defendants refusal to deal with Water customers*** who do business with Water is unlawful and discriminatory resulting in the restraint of trade in violation of the UPA." (Am. Compl. ¶ 55) (emphasis added). |
| "Water seeks to enjoin and restrain Defendants, and each of them, from: 1) ***withholding for sale Everpure products under the Distribution Agreement***." (Compl. ¶ 63) (emphasis added). | "Water seeks to enjoin and restrain Defendants, and each of them, from: 1) ***withholding for sale its products or any other coercive acts in order to prevent or prohibit Water's existing customers from doing business with Water***." (Am. Compl. ¶ 59) (emphasis added). |
| "Therefore, ***Defendants must be estopped from asserting any breach of the Distributor Agreement by Water*** based upon Water's sale of its Everhot, Evercold, and Everbrew products . . . .". (Compl. ¶ 117) (emphasis added). | "Therefore, ***Defendants must be estopped from creating a likelihood of confusion among the public by marketing competing and substantial similar product in the Western states under the same name, "Everpure,"*** the same mark Water has used for almost thirty years in relation to its Ever Brands products." (Am. Compl. ¶ 72) (emphasis added). |

| ORIGINAL COMPLAINT | FIRST AMENDED COMPLAINT |
|---|---|
| "*An actual controversy has arisen between the parties to the Distributor Agreement in that plaintiff contends that the Distributor Agreement remains in full force and effect, that it has complied with the terms and conditions of the Distributor Agreement and that the Distributor Agreement has not been properly terminated by Defendants*.  On the other hand, Defendants have given plaintiff written notice claiming that plaintiff has breached the Distributor Agreement, which plaintiff denies, and claiming improperly that they have terminated the Distributor Agreement as of January 1, 2008, before the expiration of the full contract term, and without one year's notice prior to the end of the renewal term."  (Compl. ¶ 78) (emphasis added). | "*An actual controversy has arisen between the parties regarding Defendants' use of the mark 'Everpure' in association with products that create a likelihood of confusion, by being substantially similar and competing with Water's Ever Brands products in the Western States.*  Water contends that defendants' use of 'Everpure' in association with products that compete with the Ever Brands will harm Water's Ever Brands marks and cause confusion in the marketplace, resulting in irreparable harm to Water's reputation and goodwill.  On the other hand, upon information and belief, Defendants deny plaintiff has any such rights."  (Am. Compl. ¶ 74) (emphasis added). |
| "Defendants, and each of them, *have withheld the sale of Everpure water filtration products under the terms of the Distributor Agreement*."  (Compl. ¶ 89) (emphasis added). | "Defendants, and each of them, *threatened to withheld [sic] the sale of their products unless plaintiff's customers agreed not to do business with plaintiff*."  (Am. Compl. ¶ 83) (emphasis added). |

MILW_7119168.1

1    It is a fair question to ask why Water has made the amendments that it made
2  other than as an attempt to avoid the forum selection clause.  As a matter of law,
3  courts steadfastly refuse to permit a party like Water to evade a forum selection
4  clause through such exercises in pleading.  *Coastal Steel Corp. v. Tilghman*
5  *Wheelabrator Ltd.*, 709 F. 2d 190, 203 (3d Cir. 1983) ("If forum selection clauses
6  are to be enforced as a matter of public policy, that same public policy requires that
7  they not be defeated by artful pleading . . . Where the relationship between the
8  parties is contractual, the pleading of alternate non-contractual theories of liability
9  should not prevent enforcement of such a bargain."); *Belfiore v. Summit Fed.*
10 *Credit Union*, 452 F. Supp. 2d 629, 632 (D. Md. 2006) (in a case where the
11 plaintiff sued for beach of contract in the original Complaint then dropped the
12 breach claim in the amended complaint and included several non-contractual
13 claims instead, the court stated, "[t]he host of non-contract claims [plaintiff] now
14 asserts are little more than a desperate attempt to plead around the choice of forum
15 clause.  Such a clause however, cannot be defeated by 'artful pleading'.");
16 *Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024 2005 U.S. Dist. LEXIS 26952, at *
17 13 (S.D. N.Y. Nov. 3, 2005) (stating that "artful pleading" around a forum
18 selection clause must be rejected when the claims involved "the same operative
19 facts as a parallel clam for breach of contract."); *Melanson v. United Air Lines,*
20 *Inc.*, 931 F.2d 558, 561 (9th Cir. 1991) (in disapproving the plaintiff's artful
21 pleading, the court stated that "[n]early any contract claim can be restated as a tort
22 claim."); *Hope Cancer Treatment Found., Inc. v. Mountaineer Park, Inc.,* No.
23 CIVA 06-1671, 2007 WL 184820 at *1 (W.D. Pa. Jan. 19, 2007) (in refusing to
24 allow a plaintiff to avoid a forum selection clause by pleading non-contractual
25 theories of liability that depended on the existence of a contractual relationship, the
26 court stated "[i]f forum selection clauses are to be enforced as a matter of public
27 policy, that same public policy requires that they not be defeated by artful
28

9

pleading."); *B & B Trucking, Inc.*, 406 F.3d 766, 768 (6th Cir. 2005) ("'The classification of a particular action as one which is or is not [essentially contractual] depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate).  'The plaintiff's title or characterization of its claims is not controlling.'") (citations omitted); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("We refuse to allow a party's solemn promise to be defeated by artful pleading."); *Ne. Data Sys., Inc.*, 986 F.2d 607, 610 (1st Cir.  1993) ("Such reasoning would undermine the parties' choice of law agreement by permitting one of them, through artful pleading, to bring what is little more than a breach of contract claim, under law that both parties have agreed would not apply."); *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) ("We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute.").

**B.      The Claims in the Amended Complaint Arise Directly from the Contractual Relationship Between the Parties And Are Subject to the Forum Selection Clause.**

Under Ninth Circuit law, a forum selection clause applies to claims other than contract claims when the claims relate to the rights and duties arising out of the parties' contractual relationship.  *See Manetti-Farrow,* 858 F.2d at 514; *see also Doe*, 2008 U.S. Dist. LEXIS 7397, at *13.  As will be shown below, Water's claims clearly fall within the ambit of the forum selection clause and relate to the relationship created from the parties' contractual relationship.

In *Manetti-Farrow*, the plaintiff's complaint alleged that the Gucci defendants committed several tortious acts arising from the termination of Manetti-Farrow's dealership agreement with Gucci.  In addition to raising claims for interference with contractual relations and unfair business practices — as Water

does here — Manetti-Farrow also alleged that the Gucci defendants engaged in "price-squeezing" practices. Although the alleged anticompetitive conduct did not arise within the four corners of the dealership agreement, the Court held that the forum selection clause applied to all disputes between the parties because these claims related "in some way to rights and duties enumerated in the exclusive dealership contract." *Manetti-Farrow*, 858 F.2d at 514.

Here, as was the case in *Manetti-Farrow*, Water's new pleading cannot hide this simple fact: each of Water's claims is still entirely dependent on the Agreement which governed the relationship between the parties for years.

Nowhere is this more clear than in Water's allegations regarding its alleged rights to use the "Everpure" mark, on which many of its claims are premised. Throughout its Amended Complaint, Water claims, among other things, that it has the exclusive right to use the "Everpure" mark "indefinitely," that Everpure's conduct violates an "implied-in-fact exclusive license agreement," and even that Everpure should be estopped from using the name "Everpure." (*See e.g.* Am. Compl. ¶¶ 11-14, 70, 72, 98; *see also* Water's Brief in Opposition to Everpure's original motion to dismiss at p. 8 where Water states that "Defendants should be enjoined from marketing any products under the mark 'Everpure' that will likely cause confusion in the marketplace and damage Water's goodwill and reputation in its Ever Brands marks.").

It is safe to say that, at the very least, Water's first (Am. Compl. ¶ 33), third (*id.* ¶ 45), fifth (*id.* ¶ 59), seventh (*id.* ¶¶ 68-72), eighth (*id.* ¶¶ 74-75), and thirteenth (*id.* ¶¶ 94-99) claims for relief are premised in part or entirely on Water's claims that it has some license or other rights in the "Everpure" mark. Despite this, Water neglects to mention that the Agreement expressly defines Water's rights of use of the Everpure trademark, specifically prohibits Water from using the Everpure trademarks in any way not authorized by Everpure and validates the

DEFENDANTS' MOTION TO DISMISS OR TRANSFER AMENDED COMPLAINT
CASE NO.: CV-08-00218ABC

MILW_7119168.1

ownership of the mark by Everpure.  Section 6 of the Agreement states as follows:

> [Water] acknowledges the validity and ownership by Everpure of the registered trademarks 'Everpure' and the wavy 'E' design, and will respect the rights of Everpure and its related companies in their other trademarks, trade names and other designations, patents, copyrights and trade secrets.  [Water] will use such intellectual property only as authorized by Everpure.  [Water] will not use separate trademarks or other trade dress on Products, except as authorized by Everpure.

(Madsen Decl. ¶ 3; Ex. A at Agreement at § 6.)

The Agreement also goes on to specifically permit Everpure to terminate Water if Water "[e]ngages in conduct that is likely to deceive the public as to the source, nature or quality of products or services offered … is likely to impair the name, trademark or reputation of Everpure." (*Id*. at  § 9.1(b)(2).)  The Agreement finally states that, upon termination, Water "will also no longer represent itself as an Everpure distributor, discontinue the use of any material using Everpure trade marks or other trade identification and notify [sic] publishers of telephone directories where it has listed or advertised the Everpure name or marks." (*Id*. at § 9.2.)

These are enforceable rights possessed by Everpure based on the Agreement, and if Water indeed terminates the Agreement, as it asserts, the merits of its claims must be construed in light of these rights.  In any case, it is clear that the Agreement defines the relationship between Water and Everpure, the scope of the permissible use of the Everpure trademarks by Water, and the parties' post-termination rights.

Water's antitrust and unfair competition claims (First, Second, Fourth, Fifth

and Sixth Claims in the Amended Complaint) are conclusory at best, and they fail to include necessary elements.   They are also mostly incoherent, particularly when considered in the context of Water's other allegations.   Nevertheless, as explained herein, these claims are likewise inextricably intertwined with the parties' contractual relationship.

Essentially, Water accuses Everpure of  monopolistic conduct for allegedly refusing to sell products to existing Water customers if they continue to do business with Water (Am. Compl. ¶¶ 31, 38, 49, 55) , even though Water claims it has terminated its relationship with Everpure (*id.* ¶ 11) (which would presumably permit Everpure to seek a new exclusive distributor in this region), and even though Water also claims that Everpure's *selling* of products in this region under Everpure's own trademark will, *unless restrained and enjoined*,  create confusion in the marketplace and damage Water's reputation and goodwill in its own trademarks (*id.* ¶ 26).   In any case, Water would not be able to bring these claims, such as they are, if it had never been in a distribution agreement with Everpure.

In addition, while Water's allegations are not true,  even if one takes them at face value and assumes that they are true, determining whether Everpure had the right to, among other things, sell through competing distributorships, to refuse use of its trademarks, or to refuse to sell to Water's customers, will invariably require an interpretation of the Agreement between the parties and a determination of whether  that Agreement is still in effect.   After all, the Agreement defines Water's territory (Madsen Decl. ¶ 3; Ex. A at § 1.2 & Sched. A),  contains an exclusivity provision (*id*. § 1.3), restricts Water from engaging in activities with companies whose business conflicts with Everpure (*id.* § 5.3), and allows limited use of Everpure's trademark.  (*Id.* § 6).  Even Water's unfair competition claim, where it suggests that Everpure misused its marketing plan (Am. Compl. ¶ 62), implicates the contract, which expressly gives Everpure the right to approve all promotion

practices, advertising or literature.  (Madsen Decl. ¶ 3; Ex. A at § 5.5).  Like the unfair competition and antitrust claims in *Manetti-Farrow* discussed above, these claims, at the very least, relate "in some way to rights and duties enumerated in" the Master Distribution Agreement.  They are, thus, equally subject to the forum selection clause in that agreement.

Moreover, Water could never have entered into the contracts it references in its Ninth and Tenth Claims  for Interference with Contract (Am. Compl. ¶¶ 77, 82), nor have had the economic relationships it alleges in Counts Eleven and Twelve for Intentional and Negligent Interference with Prospective Economic Advantage (*Id.* ¶¶ 87, 90), without Water having been a party to the Agreement with Everpure in the first place.  Any expectancy or contract Water alleges it has with its customers arose entirely through its distribution of Everpure products under the Agreement.  Therefore, the issue of whether Water had a reasonable expectation of business with its customers cannot be adjudicated without first analyzing Water's and Everpure's rights under the Agreement and that Agreement's status.  In sum, an examination of the Amended Complaint demonstrates that Water's newly-minted claims are inextricably linked to the parties' contractual relationship and must therefore be dismissed or transferred to the appropriate venue.  *See Manetti-Farrow, Inc.,*  858 F.2d at 514.

**C.**    **Water's Abandoning of Its Breach of Contract Claims Does not Invalidate the Forum Selection Clause.**

Water will no doubt argue that because the Amended Complaint no longer alleges any cause of action for breach of contract, the forum selection clause does not apply, but this argument is without merit.  As discussed above, in the Ninth Circuit, a forum selection clause applies to claims other than contract claims when the claims relate to the rights and duties arising out of a contract.

This Ninth Circuit rule is consistent with the holdings of other federal circuits where a forum selection clause was enforceable even where no breach of contract claim was stated. *See e.g. Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982); *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070-71 (11th Cir. 1987) (en banc)). In *Bense*, the Second Circuit enforced a forum selection clause that specified Texas as "the exclusive venue of any suits or causes of action arising directly or indirectly from" the contract. (*Bense, supra,* 683 F.2d at 720). The Second Circuit held that the complaint, although couched in terms of antitrust violations, actually arose in connection with the defendant's termination of plaintiff's distributor agreement. *Id*; *see also Rini Wine Co. v. Guild Wineries & Distilleries*, 604 F. Supp. 1055, 1059 (N.D. Ohio 1985) ("The incident from which this dispute arises is indeed the termination of the distributor agreement . . . The question is whether plaintiff's mere characterization of this dispute as an antitrust matter should override the clause in the agreement which it freely entered. The Court thinks not."); *YWCA v. Nat'l Bd.*, No. 91 Civ. 7943, 1992 U.S. Dist. LEXIS 14713, at *9-10 (S.D. N.Y. Sept. 23, 1992) (stating that plaintiff's claims with respect to unfair competition, trademark infringement, misappropriation and implied contract claims involved rights arising out of the contract and that "[p]laintiff's entire business relation with defendant . . . . stemmed from the contract between the two parties. . . Therefore, it is clear that plaintiff's action arises pursuant to the contract."); *Crescent Int'l, Inc. v. Avatar Communities, Inc.,* 857 F. 2d 943, 944 (3d Cir. 1988) ('pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms.").

In this case, Water has enjoyed a distribution relationship with Everpure for almost thirty years. There can be no dispute that the lawsuit between Everpure and

15

MILW_7119168.1

Water flows from that distribution relationship that is codified in the Agreement. The dispute between Everpure and Water centers on the Agreement, and in particular, the interpretation of Sections 5.2, 5.3, 5.5, 5.8, 6, 9.1 and 9.2 of the Agreement,  regardless of the fact that Water has artfully omitted a breach of contract claim.

### D.    The Forum Selection Clause is Mandatory.

In this case, the forum selection clause contained in the agreements states that the parties "**irrevocably submit,** and **waive any objection** either may have, **to** personal jurisdiction or **venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois.**"  (Madsen Decl. ¶ 3; Ex. A at § ¶ 10.9 (emphasis added).)  This exact language of "irrevocably submit" has been found to be mandatory.  *See e.g. Gutermuth Investments, inc. v. Coolbrands Smoothies Franchise, L.L.C.*, No. SA-06-CA-0471, 2006 U.S. Dist. LEXIS 76459, at *7 (W.D. Tex. Oct. 11, 2006) ("Because the forum selection clause in each of the agreements provides that plaintiffs irrevocably submit to the specified jurisdiction and waive any objection to venue in the specified courts, the forum selection clause is exclusive and mandatory."); *GMAC/Residential Funding Corp. v. Infinity Mortgage, Inc.*, 2003 U.S. Dist. LEXIS 10289, at *8-9 (D. Minn. 2003) ("Here, the clause provides that the parties 'irrevocably submit' to the jurisdiction of the Minnesota courts and 'irrevocably waive' any defense of inconvenient forum. . . The language is more than sufficient to support a finding of exclusivity.  Thus, the court finds that the contract in the instant matter is mandatory.").  Indeed, the *GMAC* court went on to state as follows:

> The Court must enforce [a forum selection clause with the language 'irrevocably submit'], even when one party now desires to be released from its agreement.  To hold

16

1
2
3
4

> otherwise promotes uncertainty in business relationships, because it implies that a contract containing language as plan as the language in this contract can be overlooked when it is convenient to do so.

5  *GMAC*, 2003 U.S. Dist. LEXIS 10289, at *9.

6   If this Court were to hold that the parties' forum selection clause does not

7  mandate that venue be had in Illinois, the word "irrevocable" would become mere

8  surplusage.  *See Polk County v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1085

9  (11th Cir. 1999) ("It is a venerable principle of contract law that the provisions of a

10 contract should be construed so as to give every provision meaning.").  A merely

11 permissive forum selection clause would have stated that the parties "submit, and

12 waive any objection either may have to venue in Illinois."  There would be no need

13 for the word "irrevocably."  *See e.g. GMAC*, 2003 U.S. Dist. LEXIS 10289, at *8-9

14 (comparing a permissive clause that merely stated that the "parties consent to

15 jurisdiction," with the mandatory clause that stated that the "parties irrevocably

16 submit" to jurisdiction.").  Instead, by including the word "irrevocably," the

17 parties' forum selection clause became mandatory and indicated that neither party

18 could revoke its submission, and must agree to jurisdiction in Illinois.[3]

19   Having consented to exclusive jurisdiction and venue in the Illinois forum

20 when it signed the Agreement, Water cannot now avoid the clear language of the

21 forum selection clause.  A party cannot attempt to "change the bargain" of the

22 contract and "contradict the policy of enforcing forum selection clauses" by

23

24 [3] In a last ditch effort to evade the forum selection clause, Water argued in opposition to the
25 earlier motion that any ambiguity must be construed against the drafter.  (Water Br. at p. 14-15).
   Such a contractual interpretation argument does not hold true when the other party was
26 represented by counsel, as was Water.  *See Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F. 3d
   981, 989, fn. 3 (7th Cir. 1999) ("The principal that ambiguity should be construed against the
27 drafter does not control because we deal with a negotiated contract between sophisticated
   commercial clients 'advised by counsel and having equal bargaining power.'"); *see also* See
28 Madsen Decl. ¶ 5.

DEFENDANTS' MOTION TO DISMISS OR TRANSFER AMENDED COMPLAINT
CASE NO.: CV-08-00218ABC

objecting to venue after entering into a contract. *See Manetti-Farrow,* 858 F.2d at 515. A forum selection clause waives a party's right to complain about its own inconvenience in litigating in the designated venue. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). As such, Illinois is the only proper venue for disputes between Water and Everpure, and the Court should dismiss this case.

> **E.    Water Cannot Meet the Burden of Proof Necessary to Defeat This Forum Selection Clause.**

Forum selection clauses are presumed valid. They will be enforced unless it clearly would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Manetti-Farrow,* 858 F.2d at 512. As such, the party opposing enforcement of the forum selection clause bears a "heavy burden of proof" and, in order to avoid the forum selection clause, must demonstrate that the contractually-chosen forum is so "gravely difficult" and inconvenient that, for all practical purposes, the party will be deprived of his or her day in court. *M/S Bremen,* 407 U.S. at 18; *Manetti-Farrow,* 858 F.2d at 514-15.

The standards set forth by the Supreme Court in *Bremen* for invalidating a forum selection clause are intentionally strict. When the choice of forum is made after arms' length negotiation by experienced and sophisticated businessmen, it should be enforced except in the most egregious of circumstances. *See M/S Bremen,* 407 U.S. at 12. Water cannot even hope to present sufficient evidence that dismissal of this action or transfer of this action to the Northern District of Illinois would be so "gravely difficult" and "inconvenient" that it would be deprived of its day in court. Nor would enforcement of the clause be "unreasonable and unjust." To the contrary, Water is a sophisticated enterprise that sells throughout the Western United States. Water contractually agreed to

have any disputes between it and Everpure resolved in Illinois and should not be permitted to escape its contractually agreed upon obligations.

Indeed, for Water to now claim that the forum selection clause is unfair would be highly disingenuous, especially as it has, for many years, reaped the benefits of other provisions of the Agreement. *See Turner v. Thorworks Indus.,* No. CIV. No. S-05-02653, 2006 U.S. Dist. LEXIS 21668 (E.D. Cal. March 28, 2006), at *13 (holding that a party should be equitably estopped from claiming the benefits of the contract while simultaneously attempting to avoid the burden of a forum selection clause). The selected forum is logical. Everpure is located in Illinois, and the Agreement is to be construed according to Illinois state law. As a company that transacts business nationwide, Everpure has a legitimate interest in knowing exactly what law would govern its disputes and the location where those disputes would be resolved, and it entered into a contract with Water vindicating that interest. *See Id.* at 13-14. The Court should not disturb the parties' agreement in this regard.

**F.    In The Alternative, This Case Should Be Transferred To The Northern District Of Illinois Pursuant To 28 U.S.C. §1406(A) For Improper Venue.**

If the Court declines to dismiss Water's Amended Complaint, it should, alternatively, transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a). 28 U.S.C. § 1406(a) and Rule 12(b)(3) are essentially interchangeable, except insofar as section 1406(a) gives the court the option to transfer venue in lieu of dismissal. *See Nat'l Micrographics Sys. v. Canon U.S.A. Inc.*, 825 F. Supp. 671, 680 n.14 (D.N.J. 1993). Everpure's executive offices are located in the Northern District of Illinois. (Madsen Decl. ¶ 5.) Therefore, should the Court not dismiss this action, the Court should transfer it to the Northern District of Illinois, the venue the parties voluntarily agreed to in their Agreement.

## V.    **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Amended Complaint and this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  In the alternative, the Court should transfer venue of this action to the Northern District of Illinois, pursuant to 28 U.S.C. § 1406(a).


Dated:  June 12, 2008                     FOLEY & LARDNER LLP
                                          CHRISTOPHER J. HECK



                                          By:  /s/
                                          _____
                                          CHRISTOPHER J. HECK

                                          OF COUNSEL:

                                          BRIAN W. MCGRATH
                                          KELLI A. TAFFORA
                                          FOLEY & LARDNER LLP
                                          777 EAST WISCONSIN AVENUE
                                          MILWAUKEE, WISCONSIN 53202
                                          PHONE: 414.271.2400
                                          FACSIMILE: 414.297.4900

                                          Attorneys for Defendants
                                          Everpure, Inc., Everpure, LLC and Pentair, Inc.

MILW_7119168.1

1  **FOLEY & LARDNER LLP**
   555 SOUTH FLOWER STREET, SUITE 3500
2  LOS ANGELES, CALIFORNIA 90071-2300
   TELEPHONE: 213.972.4500
   FACSIMILE: 213.486.0065
3
   CHRISTOPHER J. HECK, BAR NO. 174647
   CHECK@FOLEY.COM
4
   **OF COUNSEL**
5  BRIAN W. MCGRATH
   KELLI A. TAFFORA
6  **FOLEY & LARDNER LLP**
   777 EAST WISCONSIN AVENUE
   MILWAUKEE, WI 53202-5306
7  TELEPHONE:    414.271.2400
   FACSIMILE:    414.297-4900
   BMCGRATH@FOLEY.COM
8  KTAFFORA@FOLEY.COM

   ATTORNEYS FOR DEFENDANTS
9

10               **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES**

12  | WATER, INC., a California corporation, | Case No: CV 08-00218 ABC (SS) |

13  Plaintiff,                    **DECLARATION OF MICHAEL**
                                  **MADSEN IN SUPPORT OF**
14  vs.                          **DEFENDANTS' MOTION TO**
                                  **DISMISS OR TRANSFER THE**
15  EVERPURE, INC., EVERPURE, LLC,  **AMENDED COMPLAINT**
    and PENTAIR, INC.,
16                                [FRCP Rule 12(b)(3); 28 U.S.C. §
                                  1406(a)]
17      Defendants.
                                  [Moving Papers Filed and Served
18                                Concurrently]

19                                Date:      July 7, 2008
                                  Time:      10:00 a.m.
20                                Courtroom: 680
                                  Judge:     Hon. Audrey B. Collins
21

22      1. I am Michael Madsen, the Vice President and General Manager for

23  Pentair, Inc. and Everpure LLC. I have personal knowledge of the facts set forth

24  herein, and if called as a witness, could and would competently testify thereto.

25      2. I am filing this declaration in support of defendants' motion to dismiss

26  the amended complaint or alternatively, to transfer.

27      3. Attached hereto as Exhibit A is a true and correct copy the Select Master

28  Distributor Agreement.

        4. Everpure strongly desires to sell its products, not only to Water's

1  customers, but to all other consumers in this geographic market.

2       5. Water was represented by counsel when the Agreement was executed.

3       6. Everpure's executive offices are located in Hanover Park, Illinois.

4  ///

5  ///

6       I declare under penalty of perjury that the foregoing is true and

7  correct.

8       Executed this 12 day of June, 2008 at *Hanover Park, IL.*

9

10

11                                    **MICHAEL MADSEN**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLEY & LARDNER
ATTORNEYS AT LAW
Error! Reference source not found.

MILW_7115740.1

DECLARATION OF MICHAEL MADSEN IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR TRANSFER
AMENDED COMPLAINT –CV 08-00218 JSL

3108054385    'TER INC./PPD                905 P02/13 SEP 07 '99 10:24



Everpure, Inc.
660 Blackhawk Drive
Westmont, Illinois 60559-0005
708 654 4000
FAX 708 654 1115

## SELECT MASTER DISTRIBUTOR AGREEMENT
## RESIDENTIAL PRODUCTS

**MASTER DISTRIBUTOR:**   Water, Inc.

**ADDRESS:**   321 Coral Circle

El Segundo, CA  90245-4681

**FORM OF ORGANIZATION:**   A California Corporation

**EFFECTIVE DATE:**   July 1, 1996

3108854385    TER INC./PPD    905 P03/13 SEP 07 '99  10:24

## PREMISES

A. Everpure, Inc. ("Everpure") manufactures and sells water treatment systems for residential consumer use primarily through a nationwide system of specially selected master distributors ("Select Master Distributor(s)"). It appoints Select Master Distributors based on their capability to perform the functional role of inventorying product and selection, training and management of distribution outlets to sell to residential consumers and provide after-sale service.

B. Everpure authorizes its Select Master Distributors to cover defined geographic territories and, generally, to purchase all their requirements for water treatment products from Everpure, for the purpose of assuring effective competition against the products of other manufacturers and to protect the performance and reputation of its products.

C. Master Distributor desires to obtain a continuing source of supply of Everpure, water treatment products at a functional discount consistent with its distribution responsibilities and to enter into this Select Master Distributor Agreement, Residential Products ("Agreement").

## TERMS OF AGREEMENT

### Section 1  Appointment.

1.1  Authorization/Products.  By this Agreement, Everpure appoints Master Distributor to the benefits and responsibilities of a Select Master Distributor for the Everpure, brand consumer products identified on Schedule A ("Products").

1.2  Authorized Territory/Channels of Distribution.  Master Distributor is authorized to promote, resell, otherwise distribute and arrange service for Products only in the geographic territory ("Territory") and only to the channels of distribution identified on Schedule A for sale to residential consumers in the Territory.

1.3  Exclusive Appointment.  Except for programs described in Section 4.3 (Multiple Territory Programs), Everpure will not appoint any other Select Master Distributor to be responsible for the promotion, resale or servicing of Products through authorized channels of distribution in the Territory.

1.4  Reservation of Rights.  Everpure reserves all rights not expressly granted by this Agreement.

### Section 2  Term.

This Agreement will begin on the Effective Date and continue for the initial term identified on Schedule B. Thereafter, it will renew automatically for successive renewal terms also identified on Schedule B, unless either party gives the other prior notice of non-renewal within the period set forth on Schedule B.

### Section 3  Order Administration.

3.1  Prices, Terms and Conditions of Sale.  Prices applicable to purchases under this Agreement will be as set forth in Everpure's Select Master Distributor price list, as it is in effect from time to time.  Everpure may not increase prices except upon 30 days prior written notice.  Order acceptance, payment requirements and other terms and conditions of sale are set forth on Schedule C.  If purchase orders submitted by Master Distributor contain conflicting terms, this Agreement will supersede and control.

3.2  Quarterly Orders.  At least 15 days prior to the start of each three month period designated by Everpure, Master Distributor will place a firm order for its expected requirements of Products to be shipped during such period.

3.3  Forecasts.  Distributor will submit to Everpure a nonbinding forecast of its expected twelve month Product purchase requirements at the time it places its quarterly order.

3.4  Inventory. Master Distributor will maintain an inventory of Products sufficient to fill the

2

expected demand for immediate and regular purchases from potential residential consumers in its Territory. Everpure may establish minimum inventory levels under Section 5.1(d) (Minimum Purchase Requirements).

### Section 4  Certain Obligations of Everpure.

4.1  Sale of Everpure Products.  Everpure will fill Master Distributor's requirements for Products to at least forecasted levels, in accordance with the terms of this Agreement, as long as Master Distributor is in full compliance with its obligations under this Agreement.

4.2  Multiple Territory/National Account Programs.  From time to time, Everpure will review and assist in developing opportunities for its Select Master Distributors to assist on a local basis with the promotion, order fulfillment or service of multiple territory accounts. Master Distributor acknowledges that from time to time Everpure may sell products through other channels, different brands or multiple territory or national accounts who distribute Everpure products into the Territory separately from participation by Master Distributor.

4.3  Compliance with Laws Regulating Product Performance.  Everpure will take full responsibility for complying with any applicable federal or state product registration, testing or certification requirements for Products that it makes available for distribution in the Territory. Upon request, Everpure will provide Master Distributor with documentation of such compliance.

4.4  Manufacturer Warranty.  Everpure will warrant Products as described in its standard residential consumer warranty.

4.5  Distribution Policies.  From time to time, Everpure will issue policies ("Distribution Policies") covering the details of the ongoing relationship established by this Agreement, among which are requirements relating to minimum order and shipment quantities, warranty administration, trademark identification and usage, credit and collections, insurance and merchandising programs.

### Section 5  Certain Obligations of Master Distributor.

5.1  Sales and Service Efforts.

(a)  Development of Channels of Distribution.  Master Distributor will exercise vigorous and diligent efforts to establish and train distribution outlets to sell Products in its authorized channels of distribution to residential consumers in its Territory.

(b)  Distribution Controls.  Master Distributor will take full responsibility, subject to consultation with Everpure, for control of distribution outlets that it appoints, for consistency with this Agreement.

(c)  Post-sale Service.  Master Distributor will take full responsibility for arranging any required installation, warranty labor and preventive and remedial maintenance of Products purchased under this Agreement.

(d)  Minimum Purchase Requirements.  In consultation with Master Distributor, Everpure will establish "Minimum Purchase Requirements" for purchases and inventory based on its estimate of the anticipated demand for Products in the Territory.  While Minimum Purchase Requirements are not purchase commitments, they are notice to Master Distributor of the minimum performance Everpure expects. Failure to meet Minimum Purchase Requirements may serve as cause for early termination under Section 9 (Termination).

(e)  Reports.  From time to time, Everpure may require Master Distributor to provide written reports of its sales and service efforts within its Territory.

5.2  Purchase Requirements.  Master Distributor will purchase from Everpure all its requirements for water treatment products that it distributes in the Territory, except as otherwise approved in writing by Everpure

5.3  Restriction on Conflicting Activities.  During the term of this Agreement, Master

3

EXHIBIT A; PAGE 5

Distributor will keep free from interests in or activities of enterprises whose business conflicts or interferes with the supply or service of Everpure products in the United States. Master Distributor will not have any interest in or engage in any business, directly or indirectly, selling water filtration products that are competitive or substantially similar to products manufactured by Everpure or in servicing such competitive or similar products, except for interest of less than 5% in a publicly traded company. Master Distributor will require that its employees, partners (if a partnership), and officers, directors and principal shareholders (if a corporation) also observe obligations at least as restrictive as the restrictions of this Section 5.3.

5.4  Insurance. Master Distributor will maintain comprehensive general, product and contractual liability insurance policies with responsible carriers for at least the policy limits defined in the applicable Everpure Distribution Policy. Master Distributor will arrange to name Everpure as an additional insured.

5.5  Compliance with Laws/Good Business Practices. Master Distributor will operate in full compliance with all applicable laws and conform its promotion, sale and service practices to the highest standards of honesty, integrity and fair dealing. Everpure reserves the right to approve all promotion practices, advertising or literature, and to require Master Distributor to comply with any applicable industry or trade association review guidelines or approval process relating to advertising or promotional materials.

5.6  Consumer Affairs/Legal Proceedings. Master Distributor will take full responsibility for residential consumer and distribution outlet inquiries and complaints in its Territory, and will notify Everpure promptly of any threatened or commenced legal proceeding or government investigation relating to Products or to Master Distributor or Everpure.

5.7  Confidentiality. Master Distributor will not use or disclose any information identified by Everpure as confidential, except in accordance

with the prior written directions of Everpure, and will use best efforts to prevent any unauthorized use or disclosure by any of its channels of distribution. Master Distributor's obligations under this paragraph will survive any termination of this Agreement.

5.8  Distribution Policies. Master Distributor will comply with the Distribution Policies issued by Everpure under Section 4.8 (Distribution Policies). However, it will not be obligated to any change in Distribution Policies except upon 30 days prior written notice and an opportunity during that period to terminate this Agreement under Section 9.1 (Early Termination).

## Section 6  Intellectual Property.

Master Distributor acknowledges the validity and ownership by Everpure of the registered trademarks "Everpure" and the wavy "E" design, and will respect the rights of Everpure and its related companies in their other trademarks, trade names and other designations, patents, copyrights and trade secrets. Master Distributor will use such intellectual property only as authorized by Everpure. Master Distributor will not use separate trademarks or other trade dress on Products, except as authorized by Everpure.

## Section 7  Relationship of the Parties/Indemnification.

7.1  Independent Contractor/Acknowledgements. Master Distributor is an independent contractor and agrees to identify itself as independently owned and operated in all dealings with the public.. It is not authorized to act or create liability on behalf of Everpure. Each party acknowledges that it is not relying on any representations of the other and that its business success is dependent largely on its own business abilities and efforts; that this Agreement is not intended to create a franchise or business opportunity venture regulated under any federal or state law; that the business conducted by each party may evolve and change over time; and that its obligations under

4

EXHIBIT A; PAGE 6

this Agreement are essential and reasonable requirements to achieve the intention of the parties.

7.2 Indemnification.

(a) By Everpure. Everpure will defend, indemnify and hold Master Distributor and its agents, officers and directors harmless from all loss and liability arising from legal proceedings instituted against them alleging that Master Distributors sale or distribution of Products in accordance with this Agreement infringes any third party's patent or trademark rights or copyright, provided Master Distributor promptly notifies and tenders the defense to Everpure.

(b) By Master Distributor. Master Distributor will indemnify and hold Everpure and its related companies, agents, officers and directors harmless from all loss, liability and costs (including attorney's fees) arising from any breach by Master Distributor of its obligations under this Agreement, or from improper application, installation or servicing of Products by its channels of distribution.

7.3 Limitation of Liability. Except as required by Section 7.2 (Indemnification), neither party will be liable to the other for incidental, consequential, special, or punitive damages of any nature. In no event will either party be liable for compensation, reimbursement or other damages for loss of prospective profits or anticipated sales or service revenue resulting from termination of this Agreement.

Section 8 Assignment, Change in Control/Management.

Since this Agreement requires personal services from Master Distributor, it may not be assigned in any manner by operation of law or otherwise by Master Distributor without the prior written consent of Everpure. Master Distributor will notify Everpure in advance in the event of any sale of its business or change in control or general management. Everpure may assign this Agreement and be released from liability to Master Distributor upon notice, provided the as-

signee is financially responsible and capable of performing under the Agreement and expressly assumes Everpure's obligations.

Section 9 Termination.

9.1 Early Termination.

(a) By Master Distributor. During its term, this Agreement may be terminated by Master Distributor if it notifies Everpure within 30 days of receiving notice of a Distribution Policy change that it does not accept, provided it has consulted with Everpure and Everpure insists on the change.

(b) By Everpure. During its term, this Agreement may be terminated by Everpure upon notice if Master Distributor:

(1) Fails to make any payment when due after notice from Everpure and 10 days opportunity to cure;

(2) Engages in conduct that is likely to deceive the public as to the source, nature or quality of products or services offered by Master Distributor or is likely to impair the name, trademark or reputation of Everpure.

(3) Makes a transfer not in compliance with Section 8 (Assignment) or undergoes a change in ownership, capitalization or general management that Everpure reasonably believes impairs its interest under this Agreement; or

(4) Fails to meet Minimum Purchase Requirements;

(c) By Either Party. During its term, this Agreement may be terminated by either party upon notice if the other party:

(1) Has become insolvent because it is unable to pay its debts as they become due in the ordinary course of business or because its current liabilities exceed its current assets, or if proceedings are initiated by or against such party under any bankruptcy or insolvency laws or for reorganization, receivership, dissolution,

5

EXHIBIT A; PAGE 7



liquidation or if it makes an assignment for the benefit of creditors; or

(2) Fails to cure any breach of this Agreement not more particularly described in this Section 9.1, after notice from the other party and 30 days opportunity to cure.

9.2  Return of Confidential Information/Trade Information.  Upon any termination or expiration of this Agreement, Master Distributor will return to Everpure all confidential materials it has received from Everpure.  Except as approved by Everpure in writing, it will also no longer represent itself as an Everpure distributor, discontinuing the use of any material using Everpure trade marks or other trade identification and notifying publishers of telephone directories where it has listed or advertized the Everpure name or marks.

### Section 10  General Provisions.

10.1    Notices.  Notices pertaining to this Agreement must be in writing and given in a manner to confirm acceptance. Notices must and be delivered in person or by U.S. mail, courier service or facsimile transmission, to the President of the other party at the address set forth in this Agreement.  When this Agreement requires Master Distributor to notify Everpure, a copy must be sent to Everpure's Law Department at the same address.

10.2    Excusable Delays.  Except for Master Distributor's obligation to pay Everpure, neither party will be liable for delays or non-performance caused by fire, flood, inclement weather, explosion, accident, energy shortage, labor disputes, war, riots, sabotage, terrorism or government law or regulation, or for other causes beyond its control, but the delaying party will exercise all reasonable efforts to cure and minimize the extent of the delay.

10.3    Entire Agreement.  This Agreement includes all referenced Schedules and Distribution Policies and constitutes the entire agreement between the parties. Any oral or other written understandings relating to the subject matter of

this Agreement are no longer effective and are superseded by this Agreement.

10.4  Changes in Distribution Policies/Amendments.  Everpure may revise Distribution Policies upon 30 days prior notice to Master Distributor.  Otherwise, this Agreement may not be amended, modified or supplemented except in writing and signed by an authorized officer of each party.

10.5  No Third Party Beneficiary.  Nothing in this Agreement confers any rights or remedies on any person or legal entity not a party to this Agreement.

10.6  Waiver.  The observation or performance of any condition or obligation imposed upon a party under this Agreement may be waived only in writing by an authorized officer and only to the extent stated in such writing.

10.7  Severability.  If any term or provision of this Agreement is declared invalid by a court of competent jurisdiction in a final ruling from which no appeal is taken, it will be severable if the operation of the remaining terms and provisions are unimpaired or if the court replaces the invalid term or provision by such valid term or provision as comes closest to the intention of the parties.

10.8  Successors and Assignees.  This Agreement is binding upon the respective, permitted successors in interest, assignees, executors, administrators and heirs of the parties.

10.9  Governing Law, Consent to Jurisdiction, Cumulative Remedies.  This Agreement is made in and will be construed under the laws of the State of Illinois, where the executive offices of Everpure are located.  Since Everpure and Master Distributor have a significant interest in consistent interpretation of this Agreement, and Everpure expects to have Select Master Distributors throughout the United States, Everpure and Master Distributor irrevocably submit, and waive any objection either may have, to personal jurisdiction or venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located

6

EXHIBIT A; PAGE 8

3108854385   WATER INC./PPD                905 P08/13 SEP 07 '99  10:26

in Illinois. All remedies provided in this Agree-
ment are cumulative and, except for forum
selection under this Section, are in addition to
any remedy otherwise available under appli-
cable federal, state or local law.


ACKNOWLEDGED AND AGREED:

EVERPURE                                MASTER DISTRIBUTOR

By:_____             By:_____

Printed Name:_____              Printed Name:__MAJOR AVIGNON__

Title:_____              Title:__PRESIDENT_____

Date of Signature:__7/8/96__            Date of Signature:__7-1-96__


7

310885438    ..RTER INC./PPD                905 P09/13 SEP 07 '99  10:26

## SCHEDULE A

### TO

### SELECT MASTER DISTRIBUTOR AGREEMENT
### RESIDENTIAL PRODUCTS

MASTER DISTRIBUTOR: __Water, Inc.__ _____

_____

EFFECTIVE DATE
OF AGREEMENT:        __July 1, 1996__ _____

Products/Prices:          Identified in Everpure's currently effective Master Price List - Residential
                          Markets

Authorized Channels of Distribution:

> Plumbing Wholesalers
> Independent Plumbers*
> Independent Kitchen Remodelers*
> Builder Suppliers
> Builders
> Independent Appliance Stores*
> Independent Hardware Stores*
> Water Treatment Dealers
> Independent Bottled Water Purveyors*

*    This channel identifies single outlets, individual outlets of larger chains, and regional chains
whose outlets are entirely within the Territory.

Schedule Date:          __February 10, 1996__ _____

EXHIBIT A; PAGE 10

## SCHEDULE B

### to

### SELECT MASTER DISTRIBUTOR AGREEMENT
### RESIDENTIAL PRODUCTS

MASTER DISTRIBUTOR:     **Water, Inc.**

EFFECTIVE DATE
OF AGREEMENT:          **July 1, 1996**

Territory:  **Entire states of Arizona, California, Colorado, Montana, Nevada,
New Mexico, Utah, and Wyoming.**

**All of Idaho except for these 9 counties:**  **Benewah        Latah
                                                Bonner         Lewis
                                                Boundary       Nez Perce
                                                Clearwater     Shoshone
                                                Kootenai**

**The following 3 counties of Texas:  El Paso
                                       Hudspeth
                                       Culberson**

**Initial Term:  5 Years**

**Renewal Term:  5 Years**

**Notice Period for Non-Renewal:  1 Year**

Schedule Date:          **February 10, 1996**

EXHIBIT A; PAGE 11

310885438'    WATER INC./PPD                905 P11/13 SEP 07 '99  10:27

## SCHEDULE C

### TO

### SELECT MASTER DISTRIBUTOR AGREEMENT
### RESIDENTIAL PRODUCTS

MASTER DISTRIBUTOR:      Water , Inc.


EFFECTIVE DATE
OF AGREEMENT:            July 1, 1996

**Shipping Terms:**      F.O.B. Westmont, IL, for Everpure supplied merchandise.
                         F.O.B. point of origin for Companion Products supplied
                         directly by participating manufacturers.

**Payment Terms:**       All invoicing for any given month will be paid by the end
                         of the month following, i.e., July, 1996 invoices will be
                         paid by the end of August, 1996.

**Returned Goods:**      All returns must be approved by Everpure, Inc. in advance.
                         Restocking charges may apply.  Everpure's most current
                         Returned Goods Policy is available upon request from the
                         Everpure Technical Service Department.

**Limited Warranties:**  Everpure warrants its residential products against
                         manufacturer's defects for one year from date of purchase
                         by the end user, or to its distributors for 18 months
                         from date of manufacture.  For complete warranty statements,
                         refer to the Everpure consumer warranty supplied with each
                         product, or the Everpure commercial warranty available
                         upon request from the Everpure Technical Service Department.


Schedule Date:    July 1, 1996


FORM\DISTR\SELECTRD.EVP

EXHIBIT A; PAGE 12



Everpure, Inc.
660 Blackhawk Drive
Westmont, Illinois 60559-9005
708 864 4000
FAX 708 854 1115

May 10, 1996

Mr. Major Avignon
Water, Inc.
321 Coral Circle
El Segundo, CA 90245

Re: Supplement to Water, Inc. Select Master Distribution Agreement

Dear Major:

This letter will confirm the supplemental agreements we have reached to our Agreement for Water, Inc. Everpure recognizes that given the historically successful performance of Water, Inc., its comparatively large Territory, and the extended initial term of your Agreement, it is appropriate to supplement our standard form in certain respects as it applies to Water, Inc.

Section 4.2        **Multiple Territory/National Account Programs** (Supplemental)
Everpure will consult in advance with Distributor before introducing any Everpure brand program into the Territory through channels other than Distributor. We will endeavor to include Water, Inc. in any such program, and if Water Inc. reasonably believes its sales opportunities will be adversely impacted, adjust Minimum Purchase Requirements accordingly.

Section 5.1(a)    **Development of Channels of Distribution** (Supplemental)
As between Everpure and Distributor, Distributor will take responsibility for conducting or arranging education of sales and installation personnel as required for the proper application of Products for their general intended use.

Section 8          **Assignment** (Supplemental)
Everpure will not unreasonably withhold its consent to assignment of this Agreement to a successor enterprise.    Change in ownership of Water, Inc. will not affect this Agreement, provided Major Avignon or other manager reasonably acceptable to Everpure, continues to own a controlling interest and the requirements of Section 5.3 are maintained.

3108854385  'WATER INC./PPD                905 P13/13 SEP 07 '99  10:27

Section 9.1(b)(4)    Early Termination by Everpure (Supplemental)
Everpure will not have a right to terminate this Agreement for failure to meet Minimum Purchase Requirements unless it has given Distributor notice and at least a 30 day period to bring its purchases up to the required levels.

Section 10.3    Entire Agreement (Supplemental)
This Agreement also includes the provisions of this Supplement.

If you agree to the above supplemental provisions, please sign and return a copy of this letter to me with the signed Agreement.

Very truly yours,

Jim Bove

Everpure, Inc.

By _____

Title _____

Date ___7/8/96___

Water, Inc.

By _____

Title ___PRES/ADM't___

Date ___7-1-96___

**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE:    213.972.4500
FACSIMILE:    213.486.0065

CHRISTOPHER J. HECK, BAR NO. 174647
CHECK@FOLEY.COM

OF COUNSEL
BRIAN W. MCGRATH
KELLI A. TAFFORA
FOLEY & LARDNER LLP
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
TELEPHONE:    414.271.2400
FACSIMILE:    414.297.4900

BMCGRATH@FOLEY.COM
KTAFFORA@FOLEY.COM

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC.,<br><br>Defendants. | Case No: CV 08-00218 ABC (SS)<br><br>[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(3)<br><br><br>Judge:        Hon. Audrey B. Collins |

///

///

///

///

///

///

///

///

///

[PROPOSED] ORDER
CV08-00218abc (SS)

LACA_1825803.1

1
2
3
4
5
6
7
8

This matter came on for hearing on July 7, 2008 on Defendants Everpure, Inc., Everpure, LLC and Pentair, Inc.'s Motion to Dismiss Amended Complaint for Improper Venue Pursuant to Rule 12(b)(3); or, in the alternative, to Transfer Venue to the U.S. District Court for the Northern District of Illinois Pursuant to 28 U.S.C. § 1406(A). Oral arguments were heard by the Court on July 7, 2008. Plaintiff was represented by its counsel, Roger W. Clark of Clark, Goldberg & Madruga. Defendants were represented by their counsel, Christopher J. Heck of Foley & Lardner LLP.

9
10
11
12
13

Based upon all the files, records and proceedings herein, including all the pleadings, briefs and other documents filed with the Court, as well as the arguments of counsel, and good cause appearing, IT IS ORDERED that Defendants' Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3) is Granted in all respects and that Plaintiff's case is dismissed.

14
15

Dated: July      , 2008

16
17
18
19
20
21
22
23
24
25
26
27
28

_____

Hon. Audrey B. Collins, District Court Judge

2

[PROPOSED] ORDER
CV08-00218ABC (SS)