ROGER W. CLARK, ESQ. (#108982)
Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)
Email: rgoldberg@cgold.cc
JAMES N. KAHN, ESQ. (#231062)
Email: jkahn@cgold.cc
**CLARK, GOLDBERG & MADRUGA**
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Telephone:   (310) 478-0077
Facsimile:   (310) 478-0099
Attorneys for Plaintiff, **WATER, INC.**

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| WATER, INC., a California corporation, )<br><br>Plaintiff, )<br><br>vs. )<br><br>EVERPURE, INC., EVERPURE, LLC, )<br>PENTAIR, INC. and DOES 1 to 10, )<br>inclusive, )<br><br>Defendant(s) )<br>_____ ) | CASE NO.: CV 08-00218 ABC (SS)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO: (1) DISMISS AMENDED COMPLAINT FOR IMPROPER VENUE PURSUANT TO RULE 12 (B) (3); OR, IN THE ALTERNATIVE, (2) TRANSFER VENUE TO THE US DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406 (A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      July 7, 2008<br>Time:      10:00 A.M.<br>Courtroom: 680<br><br>Judge: The Hon. Audrey B. Collins |

*(left margin, vertical text)* CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD   SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

1

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff, WATER, INC. (hereinafter referred to as "WATER"), hereby opposes Defendants, EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC.'s (hereinafter collectively referred to as "Defendants") Motion to (1) Dismiss Amended Complaint for Improper Venue Pursuant to Rule 12 (B) (3), or, in the Alternative, (2) Transfer Venue to the U.S. District Court for the Northern District of Illinois pursuant to 28 U.S.C. 1406 (A) as set forth in the attached Memorandum of Points and Authorities.

Respectfully Submitted,

Dated: June 23, 2008                 CLARK, GOLDBERG & MADRUGA

By:  _/s/ James N. Kahn_____
       ROGER W. CLARK
       ROBERT D. GOLDBERG
       JAMES N. KAHN
       Attorneys for Plaintiff
       **WATER, INC.**

F:\WORK\07-1782\MOTIONS\MOTION TO DISMISS-TRANSFER IN\CAPTION_INTRO-OPPOSITION.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

2

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.     INTRODUCTION ................................................................... 1

     A.    The Claims of the First Amended Complaint Are Not
         Controlled By Interpretation of the Distributor Agreement ................ 3

     B.    Paragraph 10.9 of the Distributor Agreement Does Not
         Control Venue ................................................................... 4

     C.    Paragraph 10.9 is Not a "Forum Selection Clause" ....................... 5

     D.    Reference to the Original Complaint is Irrelevant
         and Misleading ................................................................ 5

II.    STATEMENT OF FACTS ............................................................ 6

     A.    Procedural History ............................................................ 6

     B.    Relevant Facts ................................................................. 7

         1.     No Claim Based Upon the Distributor
             Agreement is Alleged ...................................................... 7

         2.     Plaintiff's Trademark and Related Claims .............................. 8

         3.     Plaintiff's Anti-Trust, Unfair Competition
             and Tort Claims ........................................................... 10

III.   LEGAL STANDARD ............................................................... 11

IV.    LEGAL ARGUMENT ............................................................... 12

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

# TABLE OF CONTENTS (Continued....)

PAGE(S)

A.    The FAC Establishes Claims Independent of the Terminated
      Distribution Agreement, and is not a product of "Artful Pleading" ........12

B.    The Distribution Agreement Does Not Control Plaintiff's
      Rights or Remedies ..................................................................................18

C.    Defendants Misinterpret the Purported
      "Forum Selection Clause"........................................................................22

V.    CONCLUSION........................................................................................25

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

# TABLE OF AUTHORITIES

<u>**FEDERAL CASES**</u>                                                **PAGE(S)**

*Belfiore v. Summit Federal Credit Union*
    (D. Md., 2006) 452 F.Supp.2d 629 ..................................................................15

*Bense v. Interstate Battery Sys.*
    (2nd Cir. 1982) 683 F.2d 718, 720 .................................................................21

*B&B Trucking, Inc. v. U.S. Postal Service*
    (6th Cir. 2005) 406 F.3d 766...........................................................................16

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*
    (3rd Cir. 1983) 709 F.2d ...........................................................................14, 15

*Coalition for ICAAN Transparency Inc. v. VeriSign, Inc.*
    (N.D.Cal.2006) 452 F.Supp.2d 924, 932 .....................................................23, 24

*Crescent Intern., Inc. v. Avatar Communities, Inc.,*
    (3d Cir.1988) 857 F.2d 943, 945................................................................17, 21

*Docksider, Ltd. v. Sea Technology, Ltd.*
    (9th Cir. 1989) 875 F.2d 762, at 764...............................................................23

*Fleet Mgt. Systems, Inc. v. Archer-Daniels-Midland Co., Inc.*
    (C.D. Ill. 1986) 627 F.Supp.550 .....................................................................16

*GMAC/Residential Funding Corp. v. Infinity Mortg., Inc.*
    (D.Minn.,2003) 2003 WL 21406189 ...............................................................24

*Gutermuth Investments, Inc. v. Coolbrands Smoothies Franchise, LLC*
    (E.D.N.Y.,2007) 2007 WL 2128835................................................................24

*Hope Cancer Treatment Foundation, Inc. v. Mountaineer Park, Inc.*
    (W.D. Pa., 2007) 2007 WL 184820 .................................................................15

1
2

## TABLE OF AUTHORITIES (Continued)

3
4

**FEDERAL CASES**                                                           **PAGE(S)**

*Insurance Co. of North America v. NNR Aircargo Service (USA), Inc.*
(9th Cir. 2000) 201 F.3d 1111, 40 U.C.C. Rep. Serv. 2d 832.............................25

*Keaty v. Freeport Indonesia, Inc.*
(5th Cir. 1974) 503 F.2d 955, 956) .......................................................23

*Lambert v. Kysar*
(1st Cir., 1993) 983 F.2d 1110 ..........................................................17

*London v. Coopers & Lybrand*
(9th Cir. 1981) 644 F.2d 811, 814) .....................................................14

*Manetti-Farrow, Inc. v. Gucci America, Inc.*
(9th Cir. 1988) 858 F.2d 509, 513.............................................11, 18, 19

*Melanson v. United Air Lines, Inc.*
(9th Cir. 1991) 931 F.2d 558.............................................................16

*Murphy v. Schneider National, Inc.,*
(9th Cir. 2004) 362 F.3d. 1133, 1139-1140).............................................12

*Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Company,*
(1st Cir., 1993) 986 F.2d 607 .......................................................16, 17

*Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*
(9th Cir. 1997) 114 F.3d. 848, 851.....................................................12

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

1

## TABLE OF AUTHORITIES (Continued)

2

3 **<u>FEDERAL CASES</u>**                                                      **PAGE(S)**

4 *Rini Wine Co., v. Guild Wineries & Distilleries*
5     (N.D. Ohio 1985) 604 F.Supp. 1055.................................................21

6 *Schering Corp. v. First DataBank Inc.*
7     (N.D. Cal., 2007) 2007 WL 1176627 ................................................17

8 *Sterling Forest Associates v. Barnett-Range Corp.*
9     (4th Cir. 1988) 840 F.2d 249, 251-52).................................................23

10 *Stewart Organization, Inc. v. Ricoh Corporation*
11     (11th Cir. 1987) 810 F.2d 1066.................................................21

12 *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,*
13     971 F.2d 401, 407 (9th Cir. 1992).................................................15

14 *The Breman v. Zapata Off-Shore Co.*
15     (1972) 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed.2d 513 .............................18

16 *Turner v. Thorworks Industries, Inc.*
17     (E.D.Cal.,2006) 2006 WL 829142 .................................................18

18 *Wallis v. Princess Cruises, Inc.*
19     (9th Cir. 2002) 306 F.3d 827.................................................25

20 *Weingrad v. Telepathy, Inc.*
21     (S.D. N.Y, 2005) 2005 WL 2990645 .................................................16

22

23

24

25

26

27

28

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077  (310) 478-0099 FAX

# TABLE OF AUTHORITIES (Continued)

## FEDERAL STATUTES                                                                    PAGE(S)

28 U.S.C. 1391 (a) ............................................................................................................. 22
28 U.S.C. 1404 (a) ........................................................................................... 15, 16, 24
28 U.S.C. 1406 (a) ........................................................................................... 14, 15, 16


Contract Dispute Act, 41 U.S.C. §§601-613 ................................................................ 16


Rule 12 (b) (3) ............................................................................................... 11, 12, 25

.

F:\WORK\07-1782\MOTIONS\MOTION TO DISMISS-TRANSFER II\OPP_TOC.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants completely misconstrue the allegations of the First Amended Complaint which are premised upon distinct operative facts alleged in the original complaint.[1]  The original complaint was premised upon Defendant's sudden termination of the Select Master Distributor Agreement ("Distributor Agreement"), and use of that termination for anti-competitive and coercive affect.  However, Defendants withdrew their illegal termination after this lawsuit was filed.  (Declaration of James N. Kahn, ¶ 3, Exhibit "A").  Subsequently, plaintiff terminated the Distributor Agreement.  *See* First Amended Complaint ("FAC" at ¶ 11).  Therefore, plaintiff is no longer master distributor of Defendants, and plaintiff does not assert any claims which arise out of the Select Master Distributor Agreement. [2]

Instead, the First Amended Complaint is directed to ***protecting plaintiff's proprietary rights*** in plaintiff's trademarks EVERHOT, EVERCOLD and EVERBREW ("Ever Brands") in the future, and Defendants' illegal anti-trust activities intended to coerce plaintiff's customers ***from not purchasing Ever Brands products from plaintiff*** in the future.  Pentair is a global economic powerhouse doing over $3 billion in sales

---

1 Defense counsel states that the allegations of the First Amended Complaint "make no sense" or are "incoherent" based upon its complete misinterpretation of the substance of the allegations. The First Amended Complaint does not concern plaintiff's claim to any right to use the Everpure mark in the future, but Plaintiff's rights and protection of its own "Ever Brands" marks. *See* FAC at ¶¶ 9, 10, 26 and 45. The anti-trust violations concerns Plaintiff's right to supply its own "Ever Brands" products to its customers. *See* ¶¶ 35, 43, 52, 60, 78, 83, 87, and 90.
2 In Defendants brief, it states that "Water is the master distributor for Everpure...." This statement is not correct. Plaintiff is no longer the master distributor.

1

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

annually. [3]  Its refusal to deal with any customers who do business with plaintiff is the basis for the FAC's anti-trust claims, and have profound implications for plaintiff's very survival.  The claims alleged in FAC and the relief sought is primarily forward looking, not backward.  The FAC is not directed to plaintiff's sale of Defendants' water filtering products sold under the tradename, "Everpure."  It is directed to plaintiff's sale of its instant water chillers ("EVERCOLD"), instant water heaters ("EVERHOT") and instant water brewers ("EVERBREW"), and Defendants' use of economic intimidation and coercion to prevent plaintiff's customers from doing business with plaintiff.  The FAC does not raise claims concerning plaintiff's right to use the Everpure mark, but its own rights in its own use of its Ever Brands marks.

Defendants' entire argument rests upon the false conclusion that the FAC is simply a product of "artful pleading," and Defendants have ignored the new, operative facts supporting the FAC.  For the first time, Plaintiff alleges in the FAC that defendants have contacted plaintiff's customers of its "Ever Brands," and attempted to use their economic leverage by threatening to withhold Everpure products if these retail and wholesale customers do business with plaintiff.  *See* FAC at ¶¶ 25, 27, 32, 33, 38, 40, 41, 43, 49, 52, 59, 78, 84, 87, and 90.  Moreover, in the FAC, plaintiff is seeking to protect is own

---

3 Pentair's website describes the company as, "Pentair is a global diversified operating company serving the commercial, industrial, municipal and residential markets through innovative solutions under strong brand names. Pentair's Water Segment – including global Filtration, Flow Technologies, and Pool and Spa businesses – helps deliver safe, clean water to people who need it. Pentair's Technical Products Segment helps protect electrical and electronic equipment and the people who use it. With 16,000 employees worldwide, Pentair generated 2007 sales of $3.40 billion." *See* Exhibit "B" to Kahn Decl.

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

2

trademarks EVERHOT, EVERCOLD and EVERBREW.  *See* FAC at ¶¶ 9, 10, 26 and 45.  Plaintiff did not drop the contract claim and illegal anti-trust allegations in order avoid the Distributor Agreement or to "forum shop," as Defendants allege.  Rather, these allegations were omitted in the FAC because Defendants withdrew their termination notice of the Distributor Agreement and ceased their attempt to use the illegal termination to engage in anti-trust violations.

**A.    The Claims of the First Amended Complaint Are Not Controlled By Interpretation of the Distributor Agreement.**

Defendants maintain that the FAC involves an interpretation of Sections 5.2, 5.3, 5.5, 5.8, 6, 9.1 and 9.2 of the Distributor Agreement.  Defendants, however, have not engaged in a fair reading of the allegations of the FAC or the relief requested, and have instead grossly distorted the substance of these allegations.  These sections concern, at most, the past conduct of the parties involving plaintiff's sale of the Everpure water filtration devices pursuant to the parties' distribution agreement, which is not in dispute under the FAC.  It is the threatened injury to plaintiff's Ever Brands trademarks, and future conduct which is the sum and substance of the FAC.  For example, the issues raised in the FAC do not involve plaintiff's sale of Everpure products or any claim of Plaintiff to the right to use of the "Everpure" mark.  Moreover, the issues raised do not involve the performance of the contractual terms by either party.  The allegations concern Defendant's coercive and anti-competitive tactics directed toward plaintiff's existing customers for its "Ever Brands" products, and Plaintiff's rights in it is own trademarks

3

EVERHOT, EVERCOLD, and EVERBREW.

The FAC addresses the change in circumstances between the parties. Following the filing of the original complaint on January 14, 2008, Defendants withdrew their notice of termination of the Distributor Agreement. It was Defendants' notice of termination which formed the basis of Plaintiff's breach of contract claim in the original complaint. Since the filing of the complaint, plaintiff has given Defendants notice of termination of the Distributor Agreement. The FAC addresses: (1) Defendants illegal conduct in contacting its customers and coercing them to stop purchasing plaintiff's Ever Brand or it would retaliate against them economically; and (2) the threatened injury to plaintiff's Ever Brands trademarks caused by Defendants marketing of inferior products under the trademark "Everpure" in the same manner that WATER had done for the past 29 years which will create the likelihood of confusion with plaintiff's "Ever Brands" products in the marketplace and injure plaintiff's reputation and goodwill. None of the claims turn on an interpretation of the Distributor Agreement, or arise out of the agreement, as the FAC does not allege any cause of action for breach of contract or seek any damages or relief of any kind arising from the Distributor Agreement.

**B.     Paragraph 10.9 of the Distributor Agreement Does Not Control Venue.**

Because nothing alleged in the FAC requires contractual interpretation venue in this action is not controlled by paragraph 10.9 of the Distributor Agreement. The factual allegations are premised upon Defendants unfair and anti-competitive business and trade

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

4

practices in violation of the Sherman Anti-Trust Act and the Clayton Act. Moreover, the FAC alleges a Lanham Act claim to protect Plaintiff's Ever Brands marks and prevent confusion in the market place that will likely be created if Defendants are permitted to sell products under the name "Everpure" in the Western states as plaintiff has done for the past 29 years with the Ever Brands products.

**C.**  **Paragraph 10.9 is Not a "Forum Selection Clause".**

Paragraph 10.9 is not a typical "forum selection clause" and does not "exclusively" dictate venue in this action. In addition, even assuming *arguendo* it could be considered a forum selection clause, its enforcement is only permissive, not mandatory, given its ambiguity. As such, ¶ 10.9 of the Distributor Agreement is inapplicable to the instant action and Defendants' Motion to Dismiss or, in the alternative, to Transfer Venue should be denied. Venue is proper in the Central District of California.

**D.**  **Reference to the Original Complaint is Irrelevant and Misleading**

In an apparent attempt to mislead this court, Defendants expend three pages of their brief comparing the allegations of the original complaint with the allegations of the FAC. What Defendants fail to advise the court is that the operative factual allegations of the FAC *are different* from the original complaint. Any comparison of the allegations is a wasted and baseless exercise. Plaintiff is not alleging in the FAC that Defendants are preventing its sales of Everpure, after all, as noted by Defendants, plaintiff is no longer a master distributor. The operative facts of the FAC concern Defendants' use of its

economic power to intimidate plaintiff's customers and coerce them from doing business with Plaintiff's sale of its Ever Brand products. None of the allegations depend upon interpretation of the contract.

## II.    STATEMENT OF FACTS

### A.    Procedural History

After Defendants served plaintiff with notice of termination of the Distributor Agreement on October 31, 2007, Water filed suit against Defendants on January 14, 2008 in the Central District of California. The Central District of California is the proper district for this action because a substantial part of the events giving rise to Water's claims occurred the Central District. As such, venue is proper. (See 28 U.S.C. § 1391 (a)).

On January 15, 2008, after plaintiff had filed suit, Defendants withdrew their notice of termination. On May 18, 2008, plaintiff gave Defendants notice of termination of the Distributor Agreement.

Defense counsel was advised that Plaintiff would file a FAC, and that the amended pleading would make any motion to dismiss for improper venue moot. Nevertheless, Defense counsel refused to withdraw the motion until after Plaintiff filed its FAC. On June 2, 2008, Plaintiff filed and served the First Amended Complaint.

This court subsequently ruled that Defendants' Motion to Dismiss was moot in light of the FAC on June 5, 2008. Defendants then filed a second Motion to Dismiss on

6

June 12, 2008.

The First Amended Complaint supersedes the original complaint and does not allege any breach of contract based upon any termination of the Distributor Agreement, or any anti-trust or tort claims based upon any alleged breach of the Distributor Agreement. Rather the First Amended Complaint is directed primarily toward the future, not the past, and seeks to protect plaintiff's interests in its Ever Brands trademarks, and remedy Defendants interference with its future sales to its customers through illegal coercive conduct.

Defendants have not filed any suit against Water in Illinois.

**B.    Relevant Facts**

What becomes immediately apparent is Defendant's omission of any discussion of the substantive allegations in the First Amended Complaint.    (See Defendants' Memorandum at pp.2-3).  While on the one hand, Defendants entirely ignore plaintiff's factual allegations of the First Amended Complaint, on the other hand, they engage in a pointless comparison of the form of the First Amended Complaint with the original complaint.  Defendants feign ignorance of the basis of plaintiff's claims in order to mislead and confuse the court.

**1.    No Claim Based Upon the Distributor Agreement is Alleged.**

Most importantly, no claim in Plaintiff's FAC turns on or requires an interpretation of the underlying distribution agreement.  Rather, the dispute arises from

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

Defendants' anticompetitive market practices that threaten to destroy Plaintiff's business and Defendants use of the Everpure mark to create a likelihood of confusion in the market place and harm plaintiff's goodwill and reputation in its Ever Brands. In fact, the FAC specifically alleges detailed facts that establish that plaintiff's use of its Ever Brands in use since 1979 was not governed by the Distributor Agreement signed in 1996, and now that the Distributor Agreement is terminated, it cannot govern plaintiff's Ever Brands.

Nonetheless, Defendants' instant Motion to Dismiss, or in the alternative, to Transfer Venue is based on the unsupported contention that all claims in Water's Complaint stem from a dispute between the parties over the distribution agreement. In fact, no dispute is alleged at all over the distribution agreement. The very basis of Defendant's argument that each of plaintiff's claims involved issues arising under the distribution agreement is without merit, and no support exists for enforcing the forum selection clause against Water contained in that agreement.

## 2. Plaintiff's Trademark and Related Claims

Plaintiff, with its principal place of business in Carson, California, was the exclusive distributor of Defendant Everpure in California and other Western states beginning in 1979 under a verbal hand shake agreement. *See* FAC, ¶¶3 8. Under the verbal agreement, reaffirmed from time to time by the conduct of the parties, plaintiff had the unrestricted right to use the Everpure trademark in conjunction with the sale of

8

its proprietary product line of products sold under its trademarks EVERHOT, EVERCOLD, and EVERBREW. *See* FAC at ¶ 8. These products provide instant hot or chilled water to the faucet through the use of small tanks placed under the sink, and brew, soften and dispense water through a dedicated faucet. *See* FAC at ¶ 9.

Plaintiff first placed its products into commerce under the trademark EVERHOT in 1980, EVERCOLD in September 1989, and EVERBREW in August of 1996. *See* FAC at ¶ 10. Plaintiff has sold its EVERHOT, EVERCOLD and EVERBREW products continuously since they were introduced into the marketplace. *See Id.* Plaintiff is the owner of the trademarks EVERCOLD and EVERBREW with registrations issued by the U.S. Patent and Trademark Office, and is authorized to use the trademark EVERHOT in commerce under a license with Bradford White Corporation. *See Id.*

Plaintiff signed a distributor agreement on July 1, 1996 with Everpure which reduced to writing some, but not all of the business relationship between the parties. *See* FAC at ¶ 11. On May 22, 2008, plaintiff gave notice of termination of the Distributor Agreement. *See Id.* Plaintiff is no longer a master distributor of Defendants.

At all relevant times, in reliance upon the approval, authorization, and consent of Defendants, to sell, market and distribute the Everpure water filtration devices under the trademark "Everpure" as part of a package that included plaintiff's Ever Brands products, plaintiff has sold, marketed and distributed the products from 1979 continuously to the present date (*see* FAC at ¶¶ 12, 13, 14, 16, 17 and 23), developed and

9

shared its confidential marketing plan with defendants (*see* FAC at ¶¶ 18 and 19), spent

substantial sums for the license to use the EVERHOT trademark (*see* FAC at ¶ 20), and

spent millions of dollars in marketing, promotions and advertising the Everpure mark.

*See* FAC at ¶ 15. Over the past 29 years, plaintiff's use of the Everpure mark has come

to be associated in the market place with plaintiff's Ever Brands products. *See* FAC at ¶

21.

Defendants are using or intend to use the trademark "Everpure" in the Western

states in association with inferior water chillers and water instant heaters that performed

the same or similar functions as Water's Ever Brands products in the same way that

plaintiff had marketed its Ever Brands for thirty years. *See* FAC at ¶¶ 26, 46, 72, 74, and

96. Defendants' sale of these water chillers and instant hot water products under the

trademark "Everpure" has the likelihood of creating confusion in the marketplace, and

damage to plaintiff's reputation and good will in its Ever Brands trademarks. *See Id.*

### 3.    Plaintiff's Anti-Trust, Unfair Competition and Tort Claims

After Defendant Pentair acquired a controlling interest in Defendant Everpure,

Inc., in 2003-2004, it began to expand its product line. *See* FAC at ¶ 23. Among these

products, were products that performed the same or similar functions as plaintiff's Ever

Brands. *See Id.* Defendants attempted to compel and coerce plaintiff to abandon its sales

of its Ever Brands in exchange for only a fraction of the value of these products in the

marketplace, with the intent to suppress competition and increase its sales volume and

10

market share. *See* FAC at ¶ 24.

Defendants then contacted plaintiff's established customers of its Ever Brands products and attempted to coerce and threaten these customers not to purchase plaintiff's Ever Brands products, or in retaliation it would not sell its products to them. *See* FAC at ¶¶ 25, 33, 35, 38. The threats and coercion of Defendants caused plaintiff loss of revenue, and unless enjoined will likely continue. *See* FAC at ¶ 27. Defendants have employed these tactics, which include tying its sales of Defendants' line of products to plaintiff's existing customers upon plaintiff's customers ceasing the purchase of plaintiff's Ever Brands products, in order to obtain competitive advantages and restrain trade. *See* FAC at ¶¶ 38, 39, 40, 49, 52, 55, 60, 78, 83, 84, and 90. Plaintiff seeks to enjoin defendants from withholding sales of its products or any other coercive acts in order to prevent or prohibit plaintiff's customers from doing business with plaintiff and from interfering with plaintiff's sale of its Ever Brands products to retailers or customers. *See* FAC at ¶¶ 33, 41, 51, 59. Additionally, Defendants have misappropriated plaintiff's confidential and proprietary marketing plan without the consent or authorization of plaintiff. *See* FAC at ¶¶ 22, and 62.

### III.    LEGAL STANDARD

A motion to dismiss based on a forum selection clause is treated as a motion under Rule 12 (b) (3) to dismiss for improper venue. Federal law governs the validity of a forum selection clause. (*Manetti-Farrow, Inc. v. Gucci America, Inc.* (9th Cir. 1988) 858

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

F.2d 509, 513; see also *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.* (9th Cir. 1997) 114 F.3d. 848, 851 – we treat dismissal based on a forum selection clause like a dismissal for improper venue under Rule 12 (b) (3)). The trial court has discretion whether to decide this issue on affidavits submitted or to allow discovery and hold an evidentiary hearing. (*Murphy v. Schneider National, Inc.*, (9th Cir. 2004) 362 F.3d. 1133, 1139-1140). Because a 12 (b) (3) motion has a dramatic effect on plaintiff's forum choices, the trial court must 'draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.' (*Murphy v. Schneider National, Inc.*, (9th Cir. 2004) 362 F.3d. 1133, 1138-1139).

## IV.  LEGAL ARGUMENT

### A.  The FAC Establishes Claims Independent of the Terminated Distribution Agreement, and is not a product of "Artful Pleading"

The entire thrust of Defendants Motion to Dismiss revolves around its baseless contention that the FAC is nothing more than the product of "artful pleading" designed to frustrate the so-called "forum selection clause" in the terminated Distributor Agreement. However, what Defendants have willfully failed to recognize is that the Distributor Agreement has no bearing on the instant action now that Defendants have withdrawn their illegal termination. The original complaint was filed to prohibit defendants' wrongful termination of the Distributor Agreement as a means to prevent plaintiff from the sale of its Ever Brands.

The FAC is an entirely different action, following plaintiff's decision to terminate

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

the Distributor Agreement. The FAC is not premised upon Defendants' breach of contract and anti-trust violations resulting from their wrongful termination of the agreement. To the contrary, the FAC is premised upon plaintiff's desire to protect its continuing use of its own trademarks and prevent Defendants' illegal coercive activity designed to prevent plaintiff from selling its Ever Brands products to its established customers in the future. To be clear, Plaintiff's use of its own Ever Brands trademarks was never controlled by the Distributor Agreement.

Based upon these undeniable facts, the FAC is not a product of "artful pleading" or designed at "forum shopping", but an action to protect the very existence of plaintiff's business from defendants' blatant overreaching in the very forum where plaintiff has used its Ever Brands for the past 30 years, and where the customers of plaintiff's products are located as well as the documents and witnesses with knowledge of the facts of the case.

Defendants do not argue that the substantive allegations in the FAC are the same as the original complaint. Instead, they are left to argue only that the "format" is the same. *See* Defendants' Memo at 5:18; and 6:12-8:20. Defendants additionally feign ignorance as to the new factual allegations in the FAC, and their significance. Defendants do not and cannot cite to any authority for the proposition that the court must raise form over substance in addressing a Motion to Dismiss, and none of Defendants' authorities addressing "artful pleading" to avoid forum selection clauses has any

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

application here. The Ninth Circuit has long held that claims in the original complaint that are not re-alleged in the amended complaint are no longer before the court. (*London v. Coopers & Lybrand* (9th Cir. 1981) 644 F.2d 811, 814). Thus, by serving Defendants with the amended complaint based upon distinct facts and remedies from the original complaint, and that does not seek any damages or other remedies governed by the Distributor Agreement, the mere fact that the "format" of the FAC is similar to the original complaint is no grounds to grant the Motion to Dismiss.

Moreover, although Defendants argue that "as a matter of law courts steadfastly refuse to permit a party like Water to evade a forum selection clause through exercises in [artful] pleading," none of the cases cited by Defendants are applicable to the instant matter and the factual and legal issues addressed by those courts are readily distinguishable. For example, Defendants' reliance on *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.* (3rd Cir. 1983) 709 F.2d 190 is misplaced because it did not concern a motion to transfer venue pursuant to 28 U.S.C. 1406(a).

To the extent that Defendants' argue that *Coastal Steel* is applicable because it still may stand for the proposition that a forum selection clause can be equally applicable to contractual and tort causes of action, this is not disputed, as that premise is widely accepted. However, the determination of whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. *Coastal Steel* concluded that pleading alternate non-contractual theories is not

14

alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms. (See *Coastal Steel*, supra, 709 F.2d at 203).

Here, because no interpretation of the contract is required, the forum selection clause is inapplicable. A party cannot rely on a forum selection clause when the dispute concerns resolution of non-contractual claims, as tort claims ordinarily are not controlled by contractual choice of law provisions. See *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992).

Equally unpersuasive is Defendants reliance on *Belfiore v. Summit Federal Credit Union* (D. Md., 2006) 452 F.Supp.2d 629, a case that concerned a Motion for Change of Venue for the convenience of the parties and witnesses pursuant to 28 U.S.C. 1404(a), as opposed to a Motion for Transfer pursuant to 28 U.S.C. 1406(a). More importantly, like the other cases Defendants' rely on, ultimately the *Belfiore* court concluded that parties were covered by a choice of forum clause so long as their alleged conduct was closely related to the contract in question. (See *Belfiore*, supra, 452 F.Supp.2d at 633). Similarly, *Hope Cancer Treatment Foundation, Inc. v. Mountaineer Park, Inc.* (W.D. Pa., 2007) 2007 WL 184820, conceded that "it is true that a forum selection clause will not be binding on claims that fall outside of the [contractual] clause." (See *Hope Cancer*, supra, at 2). Here Defendants' alleged conduct is external to the contract in question making the forum selection clause inapplicable.

15

Defendants' contentions that the allegations are nothing more than "artful pleading" are certainly not supported by the other citations put forward by Defendants. For example, *Melanson v. United Air Lines, Inc.* (9th Cir. 1991) 931 F.2d 558, is inapplicable because the case did not concern a forum selection clause or analyze a motion to transfer; *B&B Trucking, Inc. v. U.S. Postal Service* (6th Cir. 2005) 406 F.3d 766, is equally inapplicable as the matter concerned the exclusive jurisdiction of the Court of Federal Claims pursuant to the statutory authority under the Contract Dispute Act, 41 U.S.C. §§601-613; *Weingrad v. Telepathy, Inc.* (S.D. N.Y, 2005) 2005 WL 2990645, is inapplicable because it concerned a motion to change venue for the convenience of the parties pursuant to 28 U.S.C. 1404(a), not 28 U.S.C. 1406(a). Even if *Weingrad* was controlling, Defendants cannot escape the Court's conclusion that "parties to a contract are bound by that contract's forum selection clause, where, as here, the plaintiff's claims involve rights arising out of the contract." (See *Weingrad*, supra, at page 3). These cases are clearly distinguishable from the instant matter.

In the other cases relied upon by Defendants, it is clear that Defendants have conveniently "cherry-picked" language from the cases and intentionally misconstrued the context. For instance, Defendants' citation from *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Company*, (1st Cir., 1993) 986 F.2d 607, is not the holding of the court, but rather the *Northeast Data* court's disagreement with the conclusions of *Fleet Mgt. Systems, Inc. v. Archer-Daniels-Midland Co., Inc.* (C.D. Ill.

1986) 627 F.Supp.550, which the *Northeast Data* court thought exalted "pleading form over fact related substance." Likewise, in *Lambert v. Kysar* (1st Cir., 1993) 983 F.2d 1110, the party attempting to evade the forum selection clause argued tortuous conduct relating to the formation of the contract, rather than the performance of the contract. Nevertheless, the parties' contention required interpretation of the contract and the Lambert court concluded that the party should not be allowed to "escape the consequences." Again, Defendants' citations are factually and legally distinguishable from the instant matter.

As such, to enforce the forum selection clause would be to inappropriately extend the parties' contractual agreement to hold that the parties contemplated that non-contractual claims wholly divorced from the existence of the agreement would also be governed by the forum selection clause. Contrary to Defendants' unsupported assertions, this is not a case where Plaintiff is avoiding a forum selection clause by simply pleading non-contractual claims in a case that involves the performance of a contract or interpretation of a contract. Thus, this action is not governed by the forum selection clause and Plaintiff did not violate it by filing the action in the Central District of California. (See *Schering Corp. v. First DataBank Inc.* (N.D. Cal., 2007) 2007 WL 1176627, citing *Crescent Intern., Inc. v. Avatar Communities, Inc.*, (3d Cir.1988) 857 F.2d 943, 945).

Defendants' also cite a number of cases that stand for the presumptive validity of a

17

forum selection clause. (See *M/S Breman v. Zapata Off Shore Co.* (1972) 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed.2d 513; *Manetti-Farrow, inc. v. Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509). However, before presuming the validity of a forum selection clause, a court must interpret whether the allegations arise out of the contract or require an interpretation of the contract.

Defendants also cite to a recent case from the Eastern District of California, again for the presumptive validity of the forum selection clause. However, in *Turner v. Thorworks Industries, Inc.* (E.D.Cal.,2006) 2006 WL 829142, the issue concerned a standard franchise agreement that included a forum selection clause. In fact, the parties in *Turner* agreed that the majority of the claims were based on the franchise agreement and necessarily relied upon the Franchise agreement and the relationships thereby created. The Court concluded that given this admission, the party could not avoid enforcement of the forum selection clause. Clearly, neither *Breman* nor *Turner* is on point here, and for these reasons the citations are unpersuasive.

**B.**    **The Distribution Agreement Does Not Control Plaintiff's Rights or Remedies**

By ignoring the facts, significance or force of the new allegations in the FAC, Defendants claim that Section 5.2, 5.3, 5.5, 6, 9.1 and 9.2 in the Distributor Agreement control plaintiff's rights. *See* Defendants' Memo at 16.3. However, the dispositive issues between the parties have nothing to do with contractual performance or formation. The issues concern defendants' anti-competitive behavior and risk of harm to plaintiff's Ever

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 Fax

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

1  Brands marks.

2  Defendants' cite *Manetti-Farrow, inc. v. Gucci America, Inc.* (9th Cir. 1988) 858

3
4  F.2d 509 for the proposition that when claims relate to the rights and duties arising out of

5  the contract, the parties forum selection clause is controlling.  But the in *Manetti-Farrow,*

6  are readily distinguishable from the allegations alleged in the FAC.  Each of the tort

7
8  claims alleged in *Manetti-Farrow* arose out of defendant's alleged illegal termination of

9  the distributorship agreement.  The Plaintiff conceded that two of its causes of action

10  involved the interpretation or fulfillment of the contract. *See Manetti-Farrow* 858 F.2d at

11  512 Fn.  1.  The court held that "because the tort causes of action alleged by *Manetti-*

12
13  *Farrow* related to 'the central conflict over the interpretation' of the contract, they are

14  within the scope of the forum selection clause." *See Id.* at 514.  Plaintiff's claims here

15
16  concern the protection of its own Ever Brands trademarks, and defendants' anti-trust

17  behavior related to the Ever Brands products.

18
19  Moreover, none of the cited sections of the Distributor Agreement deals with

20  plaintiff's right to the use of its Ever Brands trademarks.  The Distributor Agreement

21  never controlled plaintiff's sale of its Ever Brands products under Section 5 of the

22
23  agreement.  More importantly, the Distributor Agreement certainly does not control

24  plaintiff's use of its Ever Brands trademarks now that it is no longer a master distributor

25
26  of defendants.  Defendants have not offered any factual support that counter the very

27  specific factual allegations of the FAC that state the sale of the Ever Brands products was

28

not governed by the 1996 written Distributor Agreement, or any evidence that tends to show that the 1996 written Distributor Agreement was ever intended to govern plaintiff's sale of its Ever Brands products as it had done since 1979 through the end of the agreement.

Neither does the FAC challenge Defendants' ownership of the Everpure mark, or claim any right to use the Everpure trademark now that plaintiff is no longer a master distributor of Defendants. Therefore, Section 6 of the Distributor Agreement is not in dispute. The FAC does not claim any rights in the Everpure mark. The rights plaintiff seeks to protect plainly concern its own Ever Brands trademarks. Defendants do not dispute that Defendants permitted plaintiff to make use of the Everpure trademark in combination with plaintiff's Ever Brands marks for over thirty years. The issues raised by the FAC concern to what extent plaintiff's rights in its Ever Brands marks may be injured by Defendants specific use of its Everpure trademark in the future in a specific way that will cause the likelihood of confusion in the marketplace. Defendants' protestations to the contrary, plaintiff's efforts to protect its own trademark rights are not governed by the terminated Distributor Agreement.

Defendants contention that plaintiff has stated claims based upon its alleged right to a license in the Everpure mark is also incorrect. *See* Defendants' Memo at 11:21-24. While plaintiff had a license to use the Everpure mark in the past while the Distributor Agreement was in effect, none of the claims are premised upon any claim that plaintiff

20

has a current license to use the Everpure trademark following its termination of the Distributor Agreement.[4]   The claims are directed to protecting the Ever Brands trademarks.

Finally, Defendants make no effort to explain how Defendants' alleged anti-trust violations have anything to do with the provisions of the 1996 written Distributor Agreement.   Nothing in that agreement would authorize Defendants from using economic leverage to coerce plaintiff's longstanding customers from purchasing its Ever Brands products by refusing to deal with them.   Given Pentair's extensive economic power, such coercive acts threatened the very existence of plaintiff's business.

Again, Defendants' cite a litany of cases and claim where a cause of action arises directly or indirectly from the contract, a forum selection clause is enforceable. (See *Bense v. Interstate Battery Sys.* (2nd Cir. 1982) 683 F.2d 718; *Stewart Organization, Inc. v. Ricoh Corporation* (11th Cir. 1987) 810 F.2d 1066; *Rini Wine Co., v. Guild Wineries & Distilleries* (N.D. Ohio 1985) 604 F.Supp. 1055; *Crescent Int'l, Inc. v. Avatar Communities, Inc.,* (3rd Cir. 1988) 857 F.2d 943, 944).   However, in each of these cases, the Court enforced the forum selection clauses because it was clear that the dispute arose out of the parties' agreement and the gist of the claims dealt with wrongful termination of the agreement.   This is of course distinguishable from the instant matter.   This case is not

---

4 The FAC does contain an errata which is the subject of the Notice of Errata filed concurrently with the court. The one reference to "Violating its exclusive license agreement" contained in paragraph 101 should be stricken. *See* FAC at 35:19-20. This reference is an errata based upon comparison to the prayer included in the 13th claim for relief at 40:17-27 which accurately reflects the relief requested, and does not claim any breach of license. Nowhere else in the FAC does plaintiff

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

about Water's performance and conduct pursuant to the Distributor Agreement, but rather Defendants' actions independent of their contractual obligations stated in the Distributor Agreement.

Water filed this action in the Central District of California because "a substantial part of the events or omissions giving rise to the claim occurred" in the Central District of California pursuant to 28 U.S.C. 1391 (a).

## C.   Defendants Misinterpret the Purported "Forum Selection Clause"

Defendants seek to take advantage of what they erroneously refer to as a "forum selection clause" contained in the distributor agreement.  According to Defendants, paragraph 10.9 of the distributor agreement establishes proper venue in the Northern District of Illinois.  However, the express language contained in paragraph 10.9 actually supports denial of the motion to dismiss.[5] The rationale for this provision is based upon the parties "significant interest in consistent interpretation of this Agreement." Because no interpretation of the agreement would control plaintiff's rights under the FAC, the so-called "forum selection" clause is inapplicable.

Moreover, Defendants rely on certain phrases that they have isolated from any

---

claim any breach of any license in Everpure, and the FAC is not premised on any such right.

[5] 10.9 Governing Law, Consent to Jurisdiction, Cumulative Remedies.

This agreement is made in and will be construed under the laws of the State of Illinois, where the executive offices of Everpure are located.  Since Everpure and Master Distributor have a significant interest in consistent interpretation of this Agreement, and Everpure expects to have Select Master Distributors throughout the United States, Everpure and Master Distributor irrevocably submit, and waive any objection either may have, to personal jurisdiction or venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois.  All remedies provided in this agreement are cumulative and, except for forum selection under this Section, are in addition to any remedy otherwise available under applicable federal, state or local law.

22

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

proper context.    Many times in their Motion, Defendants argue that Water has "irrevocably submitted" to the Illinois district without any reference to the external facts. Taken in context, it is clear that "venue" is not specified with any mandatory language that normally accompanies an enforceable "forum selection" clause.    There is no language that states that jurisdiction is "exclusive" in the Northern District of Illinois.

The prevailing rule in the Ninth Circuit provides that where venue is specified with mandatory language the clause will be enforced if the contract is implicated in the alleged claims. (See *Docksider, Ltd. v. Sea Technology, Ltd.* (9th Cir. 1989) 875 F.2d 762, at 764 citing *Sterling Forest Associates v. Barnett-Range Corp.* (4th Cir. 1988) 840 F.2d 249, 251-52).    When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.    (See *Docksider Ltd.*, supra, 875 F.2d 762 at 764 citing *Keaty v. Freeport Indonesia, Inc.* (5th Cir. 1974) 503 F.2d 955, 956).

Rather than containing "mandatory" language or establishing "exclusive" jurisdiction, the clause is ambiguous, requiring the parties to submit disputes in Illinois, where Everpure's executive offices are located.    Similarly, the clause does not contain requisite language that would suggest that the clause was intended to be applied broadly. Courts that have examined clauses that contain broad language such as "under, arising out of, or related in any way to this Agreement" have frequently held that the forum selection clause will likely apply.    (See *Coalition for ICAAN Transparency Inc. v.*

23

*VeriSign, Inc.* (N.D.Cal.2006) 452 F.Supp.2d 924, 932 – concluding that "[t]he plain meaning of this language must involve the" agreement itself to trigger the forum selection clause). Absent language that the parties "shall be" bound to the jurisdiction and venue of a particular district or language that the parties agree on "exclusive" jurisdiction, the clause should not be enforced.

While Defendants offer case law in support of their contentions that the language is mandatory, once again the proffered legal authority is easily distinguishable. For example, in *Gutermuth Investments, Inc. v. Coolbrands Smoothies Franchise, LLC* (E.D.N.Y.,2007) 2007 WL 2128835, the issue concerned a 28 U.S.C. 1404(a) argument (transfer for convenience of the parties). Additionally, the forum selection clause was in the context of a standard franchise agreement. Factually, while the action was pending, the Defendant closed its offices in New York and then claimed the forum selection clause was inapplicable because they no longer had offices in New York. Defendant contended that the clause warranted only "consideration" from the Court given the analysis centered on the convenience of the parties pursuant to 1404 (a). The Court was not convinced and ordered enforcement of the clause.

A similar result was reached in *GMAC/Residential Funding Corp. v. Infinity Mortg., Inc.* (D.Minn.,2003) 2003 WL 21406189, a case that arose out of a dispute over the parties standard mortgage agreements. The analysis concerned a motion for the convenience of the parties pursuant to 28 U.S.C. 1404 (a), and the Court concluded that

it "must enforce the parties' agreement, even when one party now desires to be released from its agreement."

Given the ambiguity of clause 10.9, where uncertainty obscures the meaning of a clause or an entire contract, all doubt must be resolved in favor of the non-drafter of the clause or contract. (See *Wallis v. Princess Cruises, Inc.* (9th Cir. 2002) 306 F.3d 827 – opaqueness, like ambiguity, obscures the meaning of a contractual instrument, so that in case of doubt, it is to be taken against the party that drew it.,.; see also *Insurance Co. of North America v. NNR Aircargo Service (USA), Inc.* (9th Cir. 2000) 201 F.3d 1111, 40 U.C.C. Rep. Serv. 2d 832 – Uncertainty in writing is construed most strongly against party who caused uncertainty to exist).

## V.    CONCLUSION

For the above stated reasons, Defendant's Motion to Dismiss for Improper Venue Pursuant to Rule 12 (B) (3) Or, in the Alternative, to Transfer Venue to the U.S. District Court for the Northern District of Illinois should be denied in its entirety.


Dated: June 23, 2008                    CLARK, GOLDBERG & MADRUGA


By: _/s/ James N. Kahn_____
    ROGER W. CLARK
    ROBERT D. GOLDBERG
    JAMES N. KAHN
    Attorneys for Plaintiff
    **WATER, INC.**

F:\WORK\07-1782\MOTIONS\MOTION TO DISMISS-TRANSFER II\OPPOSITION TO MOTION TO TRANSFER_007.DOC

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

**PROOF OF SERVICE - by *Electronic Filing and Service Pursuant To General Rule Order 08-02***

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is that of Clark, Goldberg & Madruga located at 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064.

I hereby certify that on June 23, 2008, a copy of the following document was filed electronically and served on the parties identified below: **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO: (1) DISMISS AMENDED COMPLAINT FOR IMPROPER VENUE PURSUANT TO RULE 12 (B) (3); OR, IN THE ALTERNATIVE, (2) TRANSFER VENUE TO THE US DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406 (A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__X__ **As Indicated on the attached Service List, by Electronic Filing and Service Pursuant to General Rule Order 08-02:** I caused the document(s) listed above via the Court's Electronic Filing System which constitutes service, pursuant to General Rule Order 08-02 of the above-titled Court, upon the counsel on service the list.

# ***SEE ATTACHED SERVICE LIST***

__X__ **(BY MAIL)** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary court of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on  June 23, 2008  at Los Angeles, California.

__X__  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

__KARLA P. GONZALEZ__
Type or Print Name                                   Signature

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

**SERVICE LIST**
*Water, Inc. vs. Everpure, Inc., Everpure, LLC, Pentair, Inc.*
THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES
Case Number: CV08-00218 JSL (SSx)

Our File No.: 07-1782

*Electronic Filing and Service Pursuant To General Rule Order 08-02*

Christopher Rolin, Esq.
**LAW OFFICES OF**
**CHRISTOPHER ROLIN**
Warner Center
5707 Corsa Avenue, Suite 106
Westlake Village, CA 91362
Telephone: (818) 707-7065
Facsimile: (818) 735-9992
Email: crolin@chrisrolin.com

Attorney for Plaintiff,
**WATER, INC.**

Christopher Heck, Esq.
**FOLEY & LARDNER, LLP**
555 So. Flower Street
Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
Email: check@foley.com

Attorneys for Defendants,
**EVERPURE, INC., EVERPURE,**
**LLC, and PENTAIR, INC.**

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

ROGER W. CLARK, ESQ. (#108982)
Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)
Email: rgoldberg@cgold.cc
JAMES N. KAHN, ESQ. (#231062)
Email: jkahn@cgold.cc
**CLARK, GOLDBERG & MADRUGA**
11400 W. Olympic Boulevard, Suite 1150
Los Angeles, California 90064
Telephone:   (310) 478-0077
Facsimile:   (310) 478-0099

Attorneys for Plaintiff, **WATER, INC.**

**THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES**

| | |
|---|---|
| WATER, INC., a California corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>EVERPURE, INC., EVERPURE, LLC, )<br>PENTAIR, INC. and DOES 1 to 10, )<br>inclusive, )<br>)<br>Defendant(s) )<br>)<br>)<br>_____ ) | CASE NO.: CV 08-00218 ABC (SS)<br><br>**DECLARATION OF JAMES N. KAHN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR MOTION TO TRANSFER VENUE**<br><br>Date:      July 7, 2008<br>Time:      10:00 A.M.<br>Courtroom: 680<br><br>Judge: The Hon. Audrey B. Collins |

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

1

# DECLARATION OF JAMES N. KAHN

I, James N. Kahn, do hereby declare as follows:

1.       I am an attorney admitted to practice law in all the courts of the State of California, and am admitted to practice law before the Central District of California.  I am an associate attorney in the law firm of Clark, Goldberg & Madruga, counsel of record for Plaintiff WATER, INC. ("PLAINTIFF").  This declaration is submitted in support of Plaintiff's Opposition to Defendants' Motion to Dismiss for Improper Venue Pursuant to Rule 12 (B)(3); Or in the Alternative, to Transfer Venue to the United States District Court for the Northern District of Illinois Pursuant to 28 U.S.C. § 1406 (A).

2.       I have personal knowledge of the following facts and if called as a witness, I could and would competently testify to the matters set forth herein.

3.       After the instant lawsuit was filed, Defendants' withdrew their termination of the distributor agreement.  Attached hereto as Exhibit "A" is a true and correct copy of the Declaration of Michael Madsen in Support of Defendants' [Original] Motion to Transfer, see ¶ 4).

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

4.    Pentair is a global operating company that does over $3 billion in sales annually.  Attached hereto as Exhibit "B" is a true and correct copy of the contents of Pentair Corporation's web page found at http://www.pentair.com.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed this 23rd day of June, 2008 at Los Angeles, California.

_/s/ James N. Kahn_____
JAMES N. KAHN

F:\WORK\07-1782\MOTIONS\MOTION TO DISMISS-TRANSFER II\JNK DECLARATION.DOC

3

# EXHIBIT "A"

1

**Foley & Lardner LLP**
555 South Flower Street, Suite 3500
Los Angeles, California 90071-2300
Telephone: 213.972.4500
Facsimile: 213.486.0065

2

3

CHRISTOPHER J. HECK, BAR NO. 174647
CHECK@FOLEY.COM

4

**OF COUNSEL**
BRIAN W. MCGRATH
KELLI A. TAFFORA
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
TELEPHONE:    414.271.2400
FACSIMILE:    414.297-4900
BMCGRATH@FOLEY.COM
KTAFFORA@FOLEY.COM

5

6

7

8

ATTORNEYS FOR DEFENDANTS

9

# UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

11

12

| | |
|---|---|
| WATER, INC., a California corporation, | Case No: CV 08-00218 JSL (SSx) |
| Plaintiff, | **DECLARATION OF MICHAEL MADSEN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TRANSFER** |
| vs. | |
| EVERPURE, INC., EVERPURE, LLC, and PENTAIR, INC., | [FRCP Rule 12(b)(3); 28 U.S.C. § 1406(a)] |
| Defendants. | [Moving Papers Filed and Served Concurrently] |
| | Date:        June 9, 2008 |
| | Time:        1:00 p.m. |
| | Courtroom:   4 |
| | Judge:       Hon. J. Spencer Letts |

13

14

15

16

17

18

19

20

21

22    1.  I am Michael Madsen, the Vice President of Sales and Marketing for Pentair, Inc. and

23    Everpure LLC. I have personal knowledge of the facts set forth herein, and if called as a

24    witness, could and would competently testify thereto.

25    2.  I am filing this declaration in support of defendants' motion to dismiss or

26    alternatively, to transfer.

27    3.  Attached hereto as Exhibit A is a true and correct copy of a notice of breach and

28    termination that Everpure sent to Water on October 31, 2007.

4.  Everpure has not terminated the Distribution Agreement with Water. Everpure

rescinded its notice on or about January 15, 2008.

5. Attached hereto as Exhibit B is a true and correct copy of a January 16, 2008 letter from Water's attorney wherein it was acknowledged that Everpure rescinded its notice of termination.

6. Water purchased $2,794,471 worth of products from Everpure in 2007 and $2,419,944 in 2006.

7. Water was represented by counsel when the Agreement was executed.

8. Water does not distribute Everpure's products under a marketing plan or system prescribed in substantial part by Everpure.

9. Water was never required to pay any type of a franchise fee.

10. The vast majority of Water's advertising expenses are paid for by Water and such advertising is not subject to approval by Everpure.

11. Everpure has no involvement whatsoever with Water's pricing decisions.

12. Water may sell to any customer within the Authorized Channels of Distribution in Schedule "A" of the Agreement. In making sales, Water does not have to follow any type of sales script.

13. Water is allowed royalty-free use of Everpure's trademarks.

14. Everpure's executive offices are located in Hanover Park, Illinois.

/ / /

/ / /

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _16_ day of May, 2008 at _Hanover Park, IL_

_____

**MICHAEL MADSEN**

Everpure, LLC.
1040 Muirfield Drive
Hanover Park, IL 60133
630 307 3000 Tel
630 307 3038 Fax

**VIA UPS OVERNIGHT DELIVERY**

October 31, 2007



Mr. Major Avignon
President
Water, Inc.
1044 E. Del Amo Blvd.
Carson, CA  90746

RE:   Termination of Select Master Distributor Agreement dated July 1, 1996

Dear Major:

Over the past several years, we've engaged in numerous meetings and discussions regarding our business plans and requirements for the high-end residential market. A key element of our plans, and a focus of past discussions between you and members of the Everpure team (specifically Dick Suda, Dave Lenio and Eleni Yianas), is the expansion of our Everpure product portfolio.

Support for our product initiatives is critical to our growth strategy and, therefore, is part of our contractual requirements for our distributors. Unfortunately, we seem unable to find a path that is consistent with our contractual requirements that will satisfy both of our business models.

Thus, this letter serves as notice of the termination of Water, Inc.'s, Select Master Distributor Agreement, dated July 1, 1996 (the "Agreement"), with Everpure, LLC ("Everpure") for failure of Water, Inc. to substantially comply with essential and reasonable requirements imposed by the Agreement by, among other things:

- Violating section 5.2 of the Agreement by not purchasing all of Water, Inc.'s requirements for water treatment products from Everpure.

- Violating section 5.3 of the Agreement by engaging in business activities that conflict or interfere with the supply or service of Everpure products and by having an interest in and selling water filtration products that are competitive or substantially similar to products manufactured by Everpure.

- Violating Section 5.5 of the Agreement by not operating in compliance with all applicable laws and by failing to conform its sale and service practices to the highest standards of honesty, integrity and fair dealing.

Continued . . .

6

Exhibit A; Page 3

Mr. Major Avignon
Water, Inc.

October 31, 2007
Page 2 of 2

- Violating sections 5.8 and 6 of the Agreement and the Everpure Brand Logo Guidelines by not respecting the validity and ownership by Everpure of the registered trademarks of Everpure.

- Violating Section 9.1(b)(2) of the Agreement by engaging in conduct that is likely to deceive the public as to the source, nature or quality of products or services offered by Water, Inc. or that is likely to impair the name, trademark or reputation of Everpure.

Pursuant to Section 9.1(c)(2) of the Agreement, Water, Inc. has 30 days to attempt to cure its breaches of Sections 5.2, 5.3, 5.5, 5.8, and 6 of the Agreement. However, Water, Inc. has no right to attempt to cure its breach of Section 9.1(b)(2) of the Agreement.

The termination of the Agreement shall be effective as of January 1, 2008, as of which date Water, Inc. must comply with Section 9.2 of the Agreement and return all confidential materials to Everpure and no longer represent itself as an Everpure distributor in the marketplace.

I believe there are a number of options to explore to continue our business relationship. I have instructed Dick Suda to immediately engage in discussions with you to ascertain whether and how Water, Inc. can cure its various breaches of the Agreement and whether there is any way for us to resolve these matters and continue our relationship in some or all of Water, Inc.'s current territories. I would ask that you notify me, prior to November 15, 2007, if you desire to discuss plans for a cure. Should I not hear from you, I will instruct our team to move forward with Agreement termination plans.

If this termination is completed, we would like to make the transition as smooth as possible. To that end, if you have inventory that you would like us to consider repurchasing, please forward to me a list detailing such inventory and its location by November 30, 2007, for consideration. If there are any other transition issues you believe we need to address, please let me know. I thank you in advance for your cooperation in this matter.

Sincerely,

Michael Madsen
Vice President, Sales and Marketing
Pentair, Inc./Everpure, LLC

cc:   David Lenio
      Dick Suda
      Ted Herzog

7

Exhibit A; Page 4

01/16/2008  14:06    8187359992                    LAW OFFICE                                    PAGE  02

**LAW OFFICES**
# CHRISTOPHER ROLIN

(818) 707-7065                        5707 CORSA AVENUE,
(818) 735-9992 FAX                        SUITE 108
CROLIN@CHRISROLIN.COM

                    WESTLAKE VILLAGE, CALIFORNIA 91362

January 16, 2008


Michael Madsen, VP Sale and Marketing
**PENTAIR, INC./EVERPURE**            **VIA FAX (630) 307-3030**


Re:    Pentair/Everpure - Master Distributor Agreement


Dear Mr. Madsen:

This letter follows my prior correspondence of November 12, 2007 and December 26, 2007.

Your response through Dick Suda rescinding the Termination Letter was received yesterday, January 15, 2008. The delayed response resulted in our filing an action in the Federal Court to protect Water's business interests.

Prior to the parties engaging in a protracted legal battle, I renew the suggestion made in my initial letter of November 12, 2007, that you and Mr. Avignon and perhaps, Mr. Suda, go forward with your scheduled meeting on January 23, 2008, to see if there is a basis for the continuance of the long standing Manufacturer Master Distributorship relationship. Litigation should only result if there has been a complete breakdown in the communication between the parties.

Hopefully as business people you will be able to come to a resolution, which is acceptable to both sides. I look forward to an early response.

                    Very truly yours,

                    CHRISTOPHER ROLIN

CR:kb
cc: Water, Inc.



Water/Everpure

8

# EXHIBIT "B"

**❖ Pentair**



**Pentair** is a global diversified operating company serving the commercial, industrial, municipal and residential markets through innovative solutions under strong brand names. Pentair's Water Segment – including global Filtration, Flow Technologies, and Pool and Spa businesses – helps deliver safe, clean water to people who need it. Pentair's Technical Products Segment helps protect electrical and electronic equipment and the people who use it. With 16,000 employees worldwide, Pentair generated 2007 sales of $3.40 billion.

The Pentair Foundation



Pentair 2007 Annual Report



## PNR (Common Stock)

as of 06/23/2008 4:02 p.m. EDT

| | | | |
|---|---|---|---|
| **Exchange** | NYSE (US Dollar) | **Previous Close** | $34.44 |
| **Price** | $34.90 | **Intraday High** | $35.19 |
| **Change (%)** | 0.46 (1.32%) | **Intraday Low** | $34.45 |
| **Volume** | 1,883,558 | **52 Week High** | $39.67 |
| **Today's Open** | $34.54 | **52 Week Low** | $26.02 |

Copyright © 1998-2002 MarketWatch.com Inc. User agreement applies. Historical and current end-of-day data provided by Interactive Data Corp. Intraday data is at least 20-minutes delayed. All times are EDT. Intraday data provided by S&P Comstock and subject to terms of use.

## LATEST NEWS

More news

Pentair to Participate in Steme Agee's Green Infrastructure Conference
June 09, 2008
Pentair and GE Water & Process Technologies Announce Preliminary Discussions Regarding Formation of Global Residential Water Treatment Joint Venture
May 28, 2008
Pentair Reports First Quarter Net Income Per Share from Continuing Operations up 26 Percent to $0.53
April 22, 2008

Copyright ©2008 Pentair, Inc.
Terms and Conditions

**9**

Privacy Statement
Forward Looking Statements
Copyright Agent
For Suppliers

10



**PROOF OF SERVICE - by *Electronic Filing and Service Pursuant To General Rule Order 08-02***

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is that of Clark, Goldberg & Madruga located at 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90064.

I hereby certify that on <u>June 23, 2008</u>, a copy of the following document was filed electronically and served on the parties identified below:
**DECLARATION OF JAMES N. KAHN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR MOTION TO TRANSFER VENUE.**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**__X__ As Indicated on the attached Service List, by Electronic Filing and Service Pursuant to General Rule Order 08-02:** I caused the document(s) listed above via the Court's Electronic Filing System which constitutes service, pursuant to General Rule Order 08-02 of the above-titled Court, upon the counsel on service the list.

# ***SEE ATTACHED SERVICE LIST***

**__X__ (BY MAIL)** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary court of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on __June 23, 2008__ at Los Angeles, California.

__X__ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

KARLA P. GONZALEZ
Type or Print Name

Signature

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

**SERVICE LIST**
*Water, Inc. vs. Everpure, Inc., Everpure, LLC, Pentair, Inc.*
THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES
Case Number: CV08-00218 JSL (SSx)
Our File No.: 07-1782

*Electronic Filing and Service Pursuant To General Rule Order 08-02*

Christopher Rolin, Esq.
**LAW OFFICES OF**
**CHRISTOPHER ROLIN**
Warner Center
5707 Corsa Avenue, Suite 106
Westlake Village, CA 91362
Telephone: (818) 707-7065
Facsimile: (818) 735-9992
Email: crolin@chrisrolin.com

Attorney for Plaintiff,
 **WATER, INC.**

Christopher Heck, Esq.
**FOLEY & LARDNER, LLP**
555 So. Flower Street
Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
Email: check@foley.com

Attorneys for Defendants,
**EVERPURE, INC., EVERPURE,**
**LLC, and PENTAIR, INC.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARK, GOLDBERG & MADRUGA
ATTORNEYS AT LAW
11400 W. OLYMPIC BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX